**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION**

| | |
|---|---|
| D.N.N. *and* V.R.G., *on behalf of themselves and all others similarly situated*,<br><br>      *Plaintiffs-Petitioners*<br><br>v.<br><br>NIKITA BAKER, *in her official capacity as Field Office Director of the Immigration and Customs Enforcement, Enforcement and Removal Operations Baltimore Field Office*; JOSEPH C. BURKI, *in his official capacity as Assistant Field Office Director of the Immigration and Customs Enforcement and Removal Operations Baltimore Field Office*; KENNETH GENALO, *in his official capacity as Executive Associate Director of the Immigration and Customs Enforcement and Removal Operations*;  KRISTI NOEM, *in her official capacity as Secretary of the Department of Homeland Security*; PAMELA BONDI, *in her official capacity as Attorney General of the United States*,<br><br>      *Defendants-Respondents*. | **FIRST AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF, COMPLAINT FOR INJUNCTIVE RELIEF, AND PETITION FOR A WRIT OF HABEAS CORPUS**<br><br><br>Case No. 1:25-cv-1500 |

1

Plaintiffs-Petitioners D.N.N. ("Ms. N.N.") and V.R.G. ("Ms. R.G.") (collectively "Plaintiffs"),[1] for themselves and on behalf of all those similarly situated, by and through undersigned counsel, hereby bring suit against the Defendants-Respondents ("Defendants") named herein, and allege as follows:

## **INTRODUCTION**

1.      Ms. N.N., Ms. R.G., and putative Class members are civilly detained people confined in U.S. Immigration and Customs Enforcement ("ICE") holding cells operated by ICE's Baltimore Field Office (the "Baltimore Hold Rooms"). These holding cells are intended for temporary custody while in transit to a facility with capacity for long-term detention, or while being processed for release. Yet, Ms. N.N. has been detained at the Baltimore Hold Rooms for nearly 60 hours as of this filing, and Ms. R.G. has been detained at the Baltimore Hold Rooms for nearly 36 hours as of this filing.

2.      During their confinement, Ms. N.N., Ms. R.G., and similarly situated detained people in the putative Class have been and will be subjected to inhumane and punitive conditions.

3.      Per Defendants' own policies, holding cell use should be limited to a period of no more than twelve hours. In practice, however, Defendants have detained Ms. N.N., Ms. R.G., and putative Class members for multiple days, with previous reports of detained people being held for more than a week at a time in punitive conditions.

4.      Plaintiff Ms. N.N. has been held in the Baltimore Hold Rooms for approximately 60 hours at the time of filing. There, despite pleas from her family, ICE initially refused to provide Ms. N.N. with her required medication for Type II diabetes, even after her family gave the

---

[1] Due to the sensitivity of their case, Ms. N.N. and Ms. R.G. request permission to proceed using their initials. Undersigned counsel will imminently file a formal motion requesting the use of initials.

medication to ICE. Only after Ms. N.N.'s counsel met with her and advocated on her behalf did ICE finally allow Ms. N.N. access to some of her medications, more than 24 hours after she was initially detained.

5.     After Ms. N.N. suffered a panic attack at the Baltimore Holding Rooms, her counsel requested that ICE facilitate an exam by a medical professional. Yet ICE refused to do so, citing a lack of capacity for this at the Baltimore Holding Rooms.

6.     Plaintiff Ms. R.G. has been held in the Baltimore Hold Rooms for approximately 36 hours at the time of filing. There, despite her thyroid condition, she has not been seen by a medical professional or administered her daily prescription.

7.     ICE's arbitrary and punitive treatment of Ms. N.N. and Ms. R.G. in relation to their medical needs is just one of the ways that ICE fails to meet the basic human needs of people detained at the Baltimore Holding Rooms, for days on end.

8.     As a result of Defendants' practice of using the Baltimore Hold Rooms for confinement overnight and even multiple nights, Ms. N.N., Ms. R.G. and putative Class members are denied the ability to get adequate sleep—if any at all. Defendants do not equip holding cells with beds and generally do not provide detained people with adequate bedding. Defendants leave holding cell lights on at all hours and maintain cold temperatures, forcing individuals to attempt to sleep with the lights on and in the cold without adequate bedding.

9.     Ms. N.N., Ms. R.G. and putative Class members are also denied access to necessary medical treatment and proper care. Ms. N.N. was denied access to her critical medication to control her Type II diabetes for more than 24 hours, as well as access to a medical exam. Ms. R.G. has been denied thyroid medication for approximately 36 hours, already missing at least one daily dose.

10.     Defendants systematically deny Ms. N.N., Ms. R.G., and putative Class members basic hygiene items or privacy. With a single toilet in cells containing multiple people, detained people are forced to use the bathroom while fully exposed to strangers and ICE officers of other genders, in an unsanitary environment.  Detained people in the Baltimore Hold Rooms have no access to soap, showers, towels, toothpaste, toothbrushes, clean clothes, or laundry.

11.     Defendants have also failed to provide Ms. N.N., Ms. R.G., and other detained people with sufficient access to drinking water or food. Instead of the regular access to drinking water mandated by their own policies, Defendants provide detained people with one small bottle of water three times a day. And in place of actual meals, Defendants provide detained people with small rations of food, such as sandwiches, fruit cups, military-style food pouches, or cups of instant noodles.

12.     Defendants do not provide Ms. N.N., Ms. R.G., and other detained people with adequate access to phone calls, thereby denying them access to counsel and contact with their family members.

13.     These harsh, excessive, and punitive conditions are publicly documented and well-known to Defendants. Defendants nonetheless have been intentionally indifferent to these conditions and the risk of harm they cause to Ms. N.N., Ms. R.G., and many other vulnerable detained people like them. Defendants have not remedied these problems or ensured that they are detaining individuals at the Baltimore Holding Rooms for less than twelve hours, as required by their own policy. Court intervention is therefore required to prevent these violations.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), § 1346 (United States as defendant); 28 U.S.C. §§ 2201, § 2202 (Declaratory

Judgment Act); 8 U.S.C. § 2241 (the general grant of habeas authority to the district court); and Art. I § 9, cl. 2 of the U.S. Constitution ("Suspension Clause").

15.     Federal courts have federal question jurisdiction, through the Administrative Procedures Act ("APA"), to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" (5 U.S.C. § 706(2)(A)) and to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). APA claims are cognizable in habeas. 5 U.S.C. § 703 (providing that judicial review of agency action under the APA may proceed by "any applicable form of legal action, including actions for declaratory judgments or writs of prohibitory or mandatory injunction or habeas corpus"). The APA affords a right of review to a person who is "adversely affected or aggrieved by agency action." 5 U.S.C. § 702. Plaintiffs and putative Class members have been adversely affected and aggrieved by Defendants' actions, as set forth in the paragraphs below.

16.     Federal district courts also have jurisdiction to hear habeas claims by non-citizens challenging the lawfulness of their detention. *See*, *e.g.*, *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

17.     Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(2) and (e)(1) because a substantial part of the events or omissions giving rise to Plaintiffs' and putative Class members' claims occurred and continue to occur at the Baltimore Hold Rooms in ICE's field office on the sixth floor of the George H. Fallon Federal Building at 31 Hopkins Plaza in Baltimore, Maryland 21201 (the "Fallon Building"). Venue is proper pursuant to 28 U.S.C. § 2241(d) because Ms. N.N., Ms. R.G., and putative Class members are being detained in holding cells within this judicial district.

## PARTIES

18.     Ms. N.N. is a national and citizen of Guatemala who has resided in the United States for more than a decade. In 2012, an Immigration Judge ("IJ") granted her relief from deportation in the form of withholding of removal under the Immigration and Nationality Act, 8 U.S.C. § 1231(a). She has Type II diabetes, depression, and anxiety, which she regularly monitors and for which she takes several medications. She resides in Maryland with her two children, one of whom is a U.S. citizen and the other of whom is a Lawful Permanent Resident (colloquially known as a "green card holder"). On the morning of May 7, 2025, ICE detained Ms. N.N. when she arrived at the Baltimore Field Office for a routine check-in and locked her in the Baltimore Hold Rooms. She remains at the Baltimore Hold Rooms as of the time of this filing, having been detained there for nearly 60 hours.

19.     Ms. R.G. is a national and citizen of El Salvador who has resided in the United States for over a decade. In 2017, an IJ granted her relief from deportation in the form of withholding of removal under the Immigration and Nationality Act, 8 U.S.C. § 1231(a). She has thyroid issues that cause her pain and weight fluctuation and require a daily prescription, which she takes with her breakfast. Ms. R.G. is also anemic. She resides in Maryland with her two children, both of whom are U.S. citizens. On the morning of May 8, 2025, Ms. R.G. arrived at the Baltimore Field Office for a routine check-in, at which ICE detained her and locked her in the Baltimore Hold Rooms. She remains at the Baltimore Hold Rooms as of the time of this filing, having been detained there for approximately 36 hours.

20.     Defendant Nikita Baker is the Field Office Director ("FOD") for ICE's Enforcement and Removal Operations ("ERO") Baltimore Field Office, which has jurisdiction over the Baltimore Hold Rooms. She is responsible for enforcement and removal operations in Maryland. As far as counsel is aware, Ms. N.N. and Ms. R.G. are currently in the custody of the

Baltimore Field Office, at the Baltimore Holding Rooms. *See Ozturk v. Trump*, No. 2:25-cv-374, 2025 WL 1145250, at *8 (D. Vt. Apr. 18, 2025) (finding that Field Office Director was plausibly petitioner's immediate custodian because petitioner "was not at a prison or jail when the Petition was filed – she was in a vehicle begin transported to an ICE Field Office."). Therefore, Ms. Baker is the immediate custodian of Plaintiffs.[2] Ms. Baker is sued in her official capacity.

21.     Defendant Joseph C. Burki is the Assistant Field Office Director for ICE's ERO Baltimore Field Office, which has jurisdiction over the Baltimore Hold Rooms and is responsible for enforcement and removal operations in Maryland. He is sued in his official capacity.

22.     Defendant Kenneth Genalo is the Acting Executive Associate Director for ICE's ERO. He is sued in his official capacity.

23.     Defendant Kristi Noem is the Secretary of the U.S. Department of Homeland Security ("DHS"). She is sued in her official capacity. In that capacity, she is responsible for the administration of the immigration laws under 8 U.S.C. § 1103.

24.     Defendant Pamela Bondi is the Attorney General of the United States. She is sued in her official capacity. In that capacity, she is responsible for arranging for "appropriate" places of detention for noncitizens detained pending removal or a decision on removal under 8 U.S.C. § 1231(g)(1).

---

[2] To the extent the Government later argues that someone other than Ms. Baker was Plaintiffs' immediate custodian at the time this petition-complaint was filed, Plaintiffs argue in the alternative that this Court has jurisdiction and venue under the "unknown custodian exception." *See Demjanjuk v. Meese*, 784 F.2d 1114 (D.C. Cir. 1986).

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

### I.    Enforcement Background

25.    After taking office, the Trump administration reportedly issued new quotas requiring ICE to make between 1,200 and 1,500 arrest per day.[3]

26.    Consistent with these reports, DHS issued a press release announcing that ICE had made 32,809 "enforcement arrests" in the first 50 days of the Trump Administration, compared to 33,242 arrests in the entire fiscal year 2024.[4] In a March 4, 2025 interview, Matthew Elliston (the Baltimore Field Office Director at that time) explained  that ICE's arrest numbers were "up about 600 percent" nationwide.[5]

27.    ICE's detention infrastructure was not designed to handle this sudden and extreme increase in the number of arrested individuals.  As a result, it has been widely reported that ICE is near, if not above, its nationwide detention capacity.[6] A recent report on ICE detention levels notes that as of April, ICE has far exceeded the number of beds resulting in noncitizens "being held in

---

[3] Danielle Wallace, *Trump Officials Give ICE Goal on Number of Arrests Per Day: Report*, Fox News (Jan. 27, 2025), available at https://www.foxnews.com/politics/trump-officials-give-ice-goal-number-arrests-per-day-report (attached hereto as **Exhibit 1**).

[4] *ICE Arrests in First 50 Days of Trump Administration*, DHS Press Release (Mar. 13, 2025) available at https://www.dhs.gov/news/2025/03/13/ice-arrests-first-50-days-trump-administration (attached hereto as **Exhibit 2**)

[5] Taylor Bennet, *Maryland's ICE director reflects on growing challenges with lack of support*, WBAL NewsRadio (March 4, 2025), https://www.wbal.com/marylands-ice-director-reflects-on-growing-challenges-with-lack-of-support (attached hereto as **Exhibit 3**).

[6] Amanda Hernandez, *For-profit Immigration Detention Expands as Trump Accelerates his Deportation Plans*, Kansas Reflector (Apr. 12, 2025), available at https://kansasreflector.com/2025/04/12/for-profit-immigration-detention-expands-as-trump-accelerates-his-deportation-plans/ ("As of March 23, ICE had 47,892 people in custody, according to the government's latest detention statistics. Yet the agency requested funding for just 34,000 beds in fiscal year 2025, according to the U.S. Department of Homeland Security's budget documents. ICE, in February, released at least 160 detained people after its network of at least 107 facilities reached 109% capacity, according to internal government statistics obtained by CBS News.") (attached hereto as **Exhibit 4**).

conditions that would be unacceptable in high-security prisons."[7] Since January 2025, seven non-citizens have died in ICE custody.[8]

## II.      ICE Policies Governing Holding Facilities

28.      DHS and ICE have adopted written policies that govern the conditions at ERO holding facilities, including the Baltimore Hold Rooms.

29.      On January 31, 2024, ICE issued Directive 11087.2, which is titled "Operations of ERO Holding Facilities" (the "ICE Hold Room Policy," or the "Policy"). A true and correct copy of the Policy is attached as **Exhibit 7**.[9]

30.      The stated "Purpose/Background" of the Policy is to provide ICE ERO officers "with policy and procedures for operating *** holding facilities located within their respective field offices***." (Exh. 7, at § 1.1) (emphasis added).

31.      The Policy defines a "holding facility" as "[a] facility that contains hold rooms that are primarily used for the short-term confinement of individuals who have recently been detained, or are being transferred to or from a court, detention facility, or other holding facility, or other agency." (*Id.*, § 3.2). It notes that "short-term is defined as a period *** not to exceed 12 hours***, absent exceptional circumstances." (*Id.*, § 3.2 n.3) (emphasis added).

---

[7] Douglas MacMillan, *Immigrants forced to sleep on floors at overwhelmed ICE detention centers*, The Washington Post (April 20, 2025), available at https://www.washingtonpost.com/business/2025/04/18/immigrant-detention-overcrowding-trump-crackdown/ (attached hereto as **Exhibit 5**).

[8] Paola Nagovitch, *Lives cut short in ICE custody: Seven migrants die in Trump's first 100 days*, El Pais (May 5, 2025) available at https://english.elpais.com/usa/2025-05-05/lives-cut-short-in-ice-custody-seven-migrants-die-in-trumps-first-100-days.html (of the three publicly available death reports "none of the three men showed any abnormalities or medical issues at the time of their arrival . . . However, their health deteriorated rapidly." (attached hereto as **Exhibit 6**).

[9] The 2024 Directive is also available at https://www.ice.gov/doclib/foia/policy/directive11087.2.pdf

32. The Policy defines a "hold room" as "a holding cell, cell block, or other secure enclosure within a holding facility." (*Id*., § 3.3).

33. The Policy states that the Executive Associate Director for ERO—here Defendant Genalo—"is responsible for ensuring compliance with the provisions of this Directive within ERO." (*Id*., § 4.1).

34. The Policy states that Field Office Directors (FODs), or their supervisory designees (Deputy Field Office Directors and Assistant Field Office Directors)—here Defendants Baker and Burki—"are responsible for ensuring that field office personnel follow the procedures in this Directive for operating holding facilities located within their respective field offices." (*Id*., § 4.3).

35. The Policy is currently in force and was at all times relevant to this Complaint.

36. The Policy provides that "ERO Officers are responsible for," *inter alia*:

   a. "Ensuring that detainees . . . who exhibit signs of acute mental health distress are referred to mental health professionals pursuant to the applicable detention standards and policy:" (*Id*., § 4.3.1);

   b. "Ensuring that detainees are provided a meal at least every six hours" (*Id*., § 4.1.1.2); and

   c. "Ensuring that hold rooms are safe, clean, equipped with restroom facilities, and clear of objects that could be used as weapons against ERO personnel, contractors, or detainees" (*Id*., § 4.4.1.3).

37. With respect to "Procedures and Requirements," the Policy provides the following "Procedures for ERO Officers":

   a. "[E]mpty holding facilities upon the conclusion of daily operations in those field office locations operating on a daily schedule . . . absent exceptional circumstances, no detainee should be housed in a holding facility for longer than 12 hours" (*Id.*, § 5.1.1);

   b. "Provide detainees with access to drinking water in hold rooms at all times" (*Id.*, § 5.2.2");

c.  "If the hold room is not equipped with restroom facilities, ERO officers should position themselves within direct sight or earshot of the hold room so that detainees may request and have regular access to restroom facilities" (*Id.*, § 5.2.3).

d.  "Allow detainees to keep personal inhaled medication on their person and have access to other prescribed medication as necessary" (*Id.*, § 5.7.2); and

e.  "Make a detention log for every detainee brought into custody regardless of purpose," recording, *inter alia*, (j) time in, (k) mealtime, and (l) time out (*Id.*,§ 5.8.1).

### III.    ICE's Recent Use of the Baltimore Hold Rooms for Detentions in Excess of 12 Hours.

38.    Upon information and belief, ICE is regularly detaining noncitizens in the Baltimore Hold Rooms for multiple days at a time, with some detained people being held for more than a week.[10]

39.    In a publicly reported March 12, 2025 interview, Matthew Elliston (the Baltimore Field Office Director at that time) acknowledged that ICE "do[esn't] want anyone here more than 12 hours" (apparently in reference to the Baltimore Hold Rooms), but the number of newly detained people has required people "to be here for a couple of days" before they can be transferred elsewhere in the country.[11]

---

[10] Emily Hofstaedter, *"I was pulling out my hair." She spent days without food, beds, and sunlight in the Baltimore ICE holding rooms*, WYPR (Mar. 15, 2025), available at https://www.wypr.org/wypr-news/2025-03-15/i-was-pulling-out-my-hair-she-spent-days-without-food-beds-and-sunlight-in-the-baltimore-ice-holding-rooms ("Amaya-Luis was there for a total of seven nights and without a cot."); (attached hereto as **Exhibit 8);**Tanvi Misra, *"Essentially Cages": ICE Is Using Courthouse Cells for Lengthy Detentions*, The Nation (Mar. 17, 2025) available at https://www.thenation.com/article/society/ice-detention-courthouse-holding-room/ (attached hereto as **Exhibit 9**) ("Immigration attorney Katie Hyde's client, a Central American grandmother, was held in the processing cells in the building for five days at the end of February," and another detainee from Mexico who was held from February 5 to 11).

[11] *See* Tracee Wilkins, et al., *'Like living in a dark room': Inside overcrowded ICE detention centers* NBC Washington (March 12, 2025), https://www.nbcwashington.com/investigations/like-living-in-a-dark-room-inside-overcrowded-ice-detention-centers/3865502/. (attached hereto as **Exhibit 10)**

40.     In a separate statement, ICE acknowledged that Baltimore ICE "has needed to hold some people for longer than 12 hours," claiming this was "to find available bed space outside of Maryland," and asserting that Baltimore ICE had "obtained a waiver of the twelve-hour time limit for hold rooms."[12]

41.     ICE has recently emphasized that its ERO holding facilities are required to comply with the ICE Hold Policy, including the 12-hour limit. For example, on March 12, 2025, William P. Joyce, Acting Field Office Director for the New York City ERO Field Office, executed a declaration under penalty of perjury in the New York habeas case of Mr. Mahmoud Kahlil, *Khalil v. Joyce*, 1:25-cv-01935, ECF No. 48 at ¶ 13 (Mar. 14, 2025), stating "ICE ERO policy number 11087.2 dictates that absent exceptional circumstances, no detainee should be housed in a Hold Room facility for longer than 12 hours."[13] Mr. Joyce's declaration indicates that ICE transferred Mr. Khalil from a hold room to another facility "[i]n compliance with this policy." (Exh. 13 ¶ 14).

42.     Upon information and belief, ICE's ERO Baltimore Field Office purports to operate on a daily schedule from 8:00 a.m. to 3:00 p.m. and is not open and does not answer phone calls after 3:00 p.m. on weekdays or at any time on weekends. Notwithstanding this daily schedule, and upon information and belief, the Defendants do not empty holding facilities upon the conclusion of daily operations; detained people remain confined in the Baltimore Hold Rooms 24 hours a day, seven days a week.

---

[12] ICE appears to have rejected the notion that any standards apply to the conditions at the Baltimore Hold Rooms. Despite ICE stating that they obtained a "waiver" of the 12-hour requirement, ICE later stated that no such time limit applied. *See* John-John Williams IV and Daniel Zawodny, *"It's scary right now": ICE Holds Detainees for Days in Bedless Baltimore Cells*, The Baltimore Banner (Mar. 14, 2025), available at https://www.thebaltimorebanner.com/politics-power/state-government/ice-baltimore-trump-immigration-deportation-detention-WNRGQUGLTVHD3MBFV4QUMEKDYM/ (attached hereto as **Exhibit 11**).
[13] A true and correct copy of FOD Joyce's declaration is attached hereto as **Exhibit 12**.

**IV.    Crowding and Punitive Conditions in Baltimore Holding Rooms**

43.    Immigration detention, including any detention of noncitizens at the Baltimore Hold Rooms, *cannot* be punitive. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

44.    Civil detention also cannot "become a 'mechanism for retribution or general deterrence.'" *See Kansas v. Crane*, 534 U.S. 407, 412 (2002).

45.    Upon information and belief, Defendants are crowding large groups of people in a single hold room at a time.[14] Plaintiffs are currently detained in a small hold room together, with one other woman. At one point during Ms. N.N.'s time at the Baltimore Holdings Rooms, there were seven women in the room at once.

46.    Despite their knowledge of overcrowded conditions in the Baltimore Hold Rooms, on March 12, 2025, the "ERO Baltimore" account posted a message on the social media platform "X" inviting "any illegal aliens in Maryland suburbs of Washington D.C." who wish to self-report to do so at the Baltimore Field Office in the Fallon Building.[15]

47.    Upon information and belief, the Baltimore Hold Rooms contain a single open toilet with no privacy for each holding room. Defendants are also denying individuals access to basic hygiene items, such as soap, clean clothes, and toothbrushes.[16] At best, detained individuals might receive a frayed pair of spare underwear and a couple of baby wipes to maintain their hygiene. *See* Exh. 15 ¶ 8.

---

[14] *See e.g.* Exh. 9 (describing an attorney's notes from a call with a client who described being kept in a "12-by-18-foot cell with 20 men").

[15]    *See*    ICE    ERO    Baltimore,    X    (March    12,    2025) https://x.com/EROBaltimore/status/1899976864719888586 (attached hereto as **Exhibit 13**).

[16] *See e.g.* Exh. 9 (describing a Central American grandmother who was held for five days and "was not allowed to shower for the entirety of her courthouse detention—and not given access to toothbrush, toothpaste, or hair ties," and a detainee from Mexico who was held from February 5 to 11 "spending the entire time in the same clothes without being able to shower.")

48.    Upon information and belief, Defendants have denied putative Class members access to prescribed medications, in violation of the Policy (Exh. 7, § 5.7.2).[17] Defendants have specifically shown blatant disregard for Plaintiffs' medical needs. Ms. N.N. has Type II diabetes, for which she takes Ozempic. After she was detained, on May 7, Ms. N.N.'s children brought her Ozempic to the Baltimore Hold Rooms, but ICE refused to give the medication to Ms. N.N. for at least 24 hours. *See* Exhibit 14, Declaration of Lucelia Justiniano at ¶ 3. It was only after persistent advocacy from her attorney that Ms. N.N. was given access to her diabetes medication. *Id.*

49.    Defendants also do not allow or provide for Ms. N.N. to routinely check her blood sugar, which she usually does at least three times a day prior to eating a meal. *Id.*

50.    Defendants have also failed to give Ms. N.N. medication for her anxiety and depression, even though she had a panic attack while detained at the Baltimore Hold Rooms. In light of her panic attack, on May 8, Ms. Justiniano requested a medical exam for Ms. N.N., but ICE informed her that there is no capacity for medical exams at the Baltimore Hold Rooms. *Id.* ¶ 4.

51.    Defendants have also failed to provide Ms. R.G. with medication for her thyroid condition. After being detained for 24 hours, Ms. R.G. asked for her daily medication, but ICE did not provide her with it. When Ms. R.G. could not remember the name of her thyroid medication, ICE did not arrange for a medical exam or consult with a medical professional. Ms. R.G.'s son was unable to bring her medication in the morning because he was in school, and due to the office's

---

[17] *See* Exh. 9 (describing a Belizean man in his 50s with diabetes who was not provided his insulin for two days and upon transfer, had to be under medical supervision for 23 hours due to "uncontrolled diabetes"; also describing a detainee who was denied HIV medication and a detainee who was unable to sleep when denied pain medication for multiple fractures in his leg).

erratic operating hours, Ms. R.G. will be without her daily medication at least until Monday, May 12.

52.    Defendants are not providing individuals detained in the Baltimore Hold Rooms with consistent access to drinking water as required under the Policy (Exh. 7, § 5.2.2). Instead of regular access to drinking water mandated by their own policies, Defendants provide detained people with one small bottle of water three times a day. Ms. N.N. has only been provided drinking water, if at all, during meal times. *See* Exh. 15 ¶ 3. Ms. R.G. has also only been consistently given water at meal times—one small bottle of water per meal. When Ms. R.G. has asked for more water, the ICE officers often ignore her.

53.    Upon information and belief, Defendants are not providing individuals detained in the Baltimore Hold Rooms with adequate meals every six hours as required under the Policy (Exh. 7, § 4.1.1.1). In place of actual meals, Defendants provide detained people with small rations of food, such as sandwiches, fruit cups, bags of chips, military food pouches, or cups of instant noodles. In at least one case, ICE officials reportedly denied food outright to a woman for between "four and five days" when she asked for something other than a peanut butter and jelly sandwich.[18] Ms. N.N. has not been able to eat some of the food rations for fear that the high-carb meals will spike her blood sugar, which she is unable to test. *See* Exh. 14 ¶¶ 3-4.

54.    Upon information and belief, the Defendants are not providing individuals detained in the Baltimore Hold Rooms with adequate conditions for sleep. Because the Baltimore Hold Rooms are designed to hold only a few people for short periods of time, detained people in the overcrowded cells have been forced to sleep on the bare concrete floor or on inflatable air

---

[18] *See* Exh. 8.

mattresses, with the lights remaining on throughout the night.[19]  Plaintiffs are currently confined in a small holding room with one other woman (seven total at one point during Ms. N.N's time there), and forced to sleep on an inflatable mattress on the floor. *See* Exh. 14 ¶ 6. When Ms. R.G. arrived at the holding room, it was dirty and strewn with used aluminum foil blankets and hair. *See* Exh. 15 ¶ 7.

55.    Upon information and belief, individuals detained in the Baltimore Hold Rooms have been and are being denied adequate bedding, blankets (beyond foil blankets), mattresses, or additional coverings. Ms. R.G. is forced to sleep on an inflatable bed without sheets or a pillow; Defendants have only provided aluminum foil blankets. Upon information and belief, at times, temperatures at the Baltimore Hold Rooms are uncomfortably cold to the point that people detained there cannot sleep due to lack of adequate clothing or blankets while lying on low inflatable mattresses on the concrete floor of the facility. Ms. R.G. only received a used jacket after another person with whom she was detained left the Baltimore Hold Rooms. *See* Exh. 15 ¶ 9.

56.    Upon information and belief, Defendants do not permit individuals detained in the Baltimore Hold Rooms to leave the rooms, including for meals. The rooms also do not have windows or clocks, making it impossible for detained people to know how much time has passed or what time of day it is. One detained person reportedly experienced such significant stress in this environment that she began to pull her hair out and bang her head on the concrete wall.[20]

57.    Upon information and belief, individuals detained in the Baltimore Hold Rooms are regularly denied the ability to place calls, including to their families and attorneys.

---

[19] *See* Exh. 9 (describing a Central American grandmother who was held for five days and "slept on the floor with no mattress and were sometimes refused foil blankets when they asked for them.").
[20] Exh. 8.

58.    Upon information and belief, Defendants do not allow individuals detained in the Baltimore Hold Rooms to receive visitors and do not provide regular access to attorneys, such that attorneys are sometimes unable to visit their clients at all.

## CLASS ALLEGATIONS

59.    Plaintiffs bring this lawsuit as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(2).

60.    Plaintiffs seek to represent a class defined as: all persons who are now or will be detained at the Baltimore Hold Rooms (the "Class"). Each of these similarly situated individuals is or will be entitled to bring a complaint for injunctive or declaratory relief or a petition for a writ of habeas corpus to obtain relief from unlawful detention.

61.    The proposed Class satisfies the requirements of Fed. R. Civ. P. 23(a)(1) because the Class is so numerous that joinder of all members is impracticable. Upon information and belief, at any given time, there are approximately 20 to 40 individuals detained in the Baltimore Hold Rooms. Joinder is impracticable because the putative Class members are detained, many are unrepresented by counsel, most do not speak English well, and most are unable to bring individual litigation because they lack sufficient resources, financial or otherwise. Furthermore, the population of detained individuals in the Baltimore Hold Rooms changes on a daily basis, and, as detailed above, Class members' access to legal representation and services is hampered by the lack of phone calls and consistent attorney access to the facility.

62.    The proposed Class meets the requirements of Fed. R. Civ. P. 23(a)(2). There are several common questions of law and fact. These include, but are not limited to, the following:

      a.    Whether Defendants' practices of failing to provide detained people with beds or adequate bedding; overcrowding holding cells; illuminating the cells around the clock; and failing to provide adequate food and water to detained people—which alone or in combination interfere with Plaintiffs' and putative Class members'

ability to sleep—violate the Due Process Clause of the Fifth Amendment and/or the Administrative Procedure Act?

b.   Whether Defendants' practices of overcrowding the holding cells; and failing to provide detained people with toothbrushes or toothpaste, or with soap, showers, or with clean clothes or access to laundry—which alone or in combination deprive Plaintiffs and putative Class members of shelter that satisfies safety and sanitation standards—violate the Due Process Clause of the Fifth Amendment and/or the Administrative Procedure Act?

c.   Whether Defendants' practices of failing to provide for adequate medical care and consistent administration of prescription drugs to detained people deprives Plaintiffs and putative Class members of a safe and healthy environment in violation of the Due Process Clause of the Fifth Amendment and/or the Administrative Procedure Act?

d.   Whether Defendants' practices of providing Plaintiffs and putative class members insufficient quantities of food and sufficient drinking water deprives Plaintiffs and putative Class members of adequate food and water in violation of the Due Process Clause of the Fifth Amendment and/or the Administrative Procedure Act?

e.   Whether Defendants' failure to enforce the ICE Hold Room Policy and its practice of consistently detaining Plaintiffs and putative Class members in the Baltimore Hold Rooms for periods exceeding 12 hours, as well as denying medical care, and adequate water and meals, violates Section 706 of the Administrative Procedure Act and/or the Due Process Clause of the Fifth Amendment?

63.    The proposed Class meets the requirements of Fed. R. Civ. P. 23(a)(3). The named Plaintiffs' claims are typical of those of the Class because each has been detained for longer than 12 hours at the Baltimore Holding Rooms, in fact more than 24 hours, and subjected to the punitive conditions challenged here, in violation of the Policy and their constitutional rights.

64.    The proposed Class meets the requirements of Fed. R. Civ. P. 23(a)(4). The named Plaintiffs have the requisite personal interest in the outcome of this action and have no interests adverse to the interests of the Class. They will fairly and adequately represent the interests of all proposed Class members. The proposed Class is represented by pro bono counsel from the Amica Center for Immigrant Rights and the National Immigration Project of the National Lawyers Guild.

Counsel collectively have extensive experience litigating class action lawsuits and other complex cases in federal court, including on behalf of detained non-citizens.

65.    The proposed Class meets the requirements of Fed. R. Civ. P. 23(b)(2). Defendants have acted on grounds generally applicable to the proposed Class through their practice of detaining noncitizens the Baltimore Hold Rooms for longer than 12 hours and in punitive conditions contrary to the Policy and in violation of Plaintiffs' and the putative Class members' constitutional rights. Therefore, declaratory relief, at minimum, is appropriate with respect to the proposed Class as a whole.

66.    In addition to the putative Class being inherently transitory, the injuries suffered by the named Plaintiffs and the putative class are capable of repetition yet may evade review. *See Jonathan R. by Dixon, v. Justice*, 41 F.4th 316 (4th Cir. 2022) (describing two separate doctrines related to propriety of class certification).

## FIRST CAUSE OF ACTION
## VIOLATION OF THE ADMINISTRATIVE PROCEDURE ACT, 5 U.S.C. § 706

67.    Plaintiffs reallege and incorporate by reference the paragraphs above.

68.    The APA, 5 U.S.C. § 706(1), requires federal courts to "compel agency action unlawfully withheld or unreasonably delayed." And § 706(2)(A) requires the court to "hold unlawful and set aside agency action found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

69.    ICE published the Policy to govern detention conditions at hold rooms, including the Baltimore Hold Rooms.

70.    In direct violation of the Policy, the Defendants:

   a.    have detained and continue to detain Plaintiffs and putative Class members in the Baltimore Hold Rooms for longer than 12 hours, without articulable exceptional circumstances, in violation of Section 5.1.1 of the Policy (Exh. 7, § 5.1.1);

b.  have not and do not empty the holding facilities in the ICE's Baltimore ERO Field Office upon the conclusion of daily operations as further required by Section 5.1.1 of the Policy. (Exh. 7, § 5.1.1);

c.  have denied Plaintiffs access to prescribed medications as necessary in violation of Section 5.7.2 of the Policy (Exh. 7, § 5.7.2);

d.  have failed and continue to fail to provide Plaintiffs with access to drinking water at all times in violation of Section 5.2.2 of the Policy. (Exh. 7, § 5.2.2);

e.  have not and are not providing individuals detained in the Baltimore Hold Rooms an adequate meal at least every six hours in violation in violation of Section 4.1.1.1 of the Policy. (Exh. 7, § 4.1.1.1); and

f.  have not ensured that individuals who exhibit signs of acute mental health distress are referred to mental health professionals in violation of Section 4.3.1 of the Policy. (Exh. 7, § 4.3.1.).

71.    ICE's violations of its own Policy, by and through the acts and omissions of the Defendants, is an unlawfully withheld agency action and/or is arbitrary, capricious, and contrary to law in violation of the APA.

72.    ICE's failure to adhere to and enforce its own Policy in the Baltimore Hold Rooms constitutes final agency action.

73.    The named Plaintiffs and putative Class members have suffered legal wrongs and have been adversely affected by ICE's deviation from and failure to enforce its own Policy.

74.    Defendants' actions have caused, are causing, and if not enjoined, will cause Plaintiffs and the putative Class members irreparable injury in the form of deprivation of their fundamental rights and neglect of their physical and medical needs.

### SECOND CAUSE OF ACTION
### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT: DEVIATON FROM POLICY

75.    Plaintiffs reallege and incorporate by reference the paragraphs above.

76.    When a federal agency adopts rules that affect the fundamental rights of individuals, including self-imposed policies and processes that limit otherwise discretionary

decisions, the agency is bound to follow its own rules. *United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 226-27 (1954).  A failure to do so not only violates the APA, but violates the Due Process Clause of the Fifth Amendment to the U.S. Constitution.

77.    The Policy affects the fundamental rights of individual detained people to which the Defendants must adhere when taking those individuals into custody.

78.    By and through Defendants' ongoing violations of the Policy as identified in the paragraphs above, ICE is engaged in conduct that deprives the named Plaintiffs and the putative Class members of due process under the Fifth Amendment.

79.    Defendants' actions have caused, are causing, and if not enjoined, will cause Plaintiffs and the putative Class members irreparable injury in the form of deprivation of their fundamental rights and neglect of their physical and medical needs.

### THIRD CAUSE OF ACTION
### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT: DEPRIVATION OF SLEEP

80.    Plaintiffs reallege and incorporate by reference the paragraphs above.

81.    Defendants have a practice of detaining Plaintiffs and putative Class members for an extended period in the Baltimore Hold Rooms.

82.    Accordingly, under the Fifth Amendment to the United States Constitution, Defendants have a constitutional obligation to provide for Plaintiffs' and putative Class members' health, safety, and well-being while in their custody.

83.    The Baltimore Hold Rooms are neither designed for overnight detention nor equipped to detain individuals overnight and do not meet Plaintiffs' and the putative Class members' basic human needs related to sleep.

84.    Defendants have a practice of not providing beds and adequate bedding for Plaintiffs and putative Class members forced to spend one or more nights in the Baltimore Hold Rooms.

85.    Defendants also have a practice of overcrowding the Baltimore Hold Rooms; illuminating them around the clock; failing to provide blankets; and failing to provide adequate food and water.

86.    These additional adverse conditions—alone or in combination—further serve to deprive Plaintiffs and the putative Class members of sleep while detained in the Baltimore Hold Rooms.

87.    Defendants' failure to provide Plaintiffs and the putative Class members with a bed and adequate bedding during their overnight detention violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

88.    By these practices, Defendants subject the named Plaintiffs and the putative Class members to a risk of and actual harm and to unlawful punitive detention. Defendants' policies and practices are inflicted upon Plaintiffs and the putative class members with the intent to punish them and are excessively harsh in relation to any non-punitive or legitimate purpose. Moreover, any non-punitive purpose could be accomplished through alternative methods consistent with the constitutional rights of Plaintiffs and the putative Class members.

89.    The conditions of confinement imposed by Defendants are more restrictive than necessary.

90.    Defendants' actions have caused, are causing, and if not enjoined, will cause Plaintiffs and the putative Class members irreparable injury in the form of deprivation of their fundamental rights.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT:**
**DEPRIVATION OF HYGENIC AND SANITARY CONDITIONS**

91.     Plaintiffs reallege and incorporate by reference the paragraphs above.

92.     Defendants have a practice of detaining Plaintiffs and the putative Class members for extended periods in the Baltimore Hold Rooms.

93.     Accordingly, under the Fifth Amendment to the United States Constitution, Defendants have a constitutional obligation to provide for Plaintiffs' and the putative Class members' health, safety, and well-being while in their custody.

94.     Defendants have a practice of detaining Plaintiffs and the putative Class members in the Baltimore Hold Rooms under conditions that are unsanitary and therefore hazardous to their health. In accordance with this practice, Defendants overcrowd the rooms; fail to provide detained people with soap, with toothbrushes or toothpaste, and with showers or any opportunity to bathe; and fail to provide clean clothing or access to laundry.

95.     Defendants' practice of detaining Plaintiffs and the putative Class members under unsanitary and hazardous conditions—alone or in combination—violate the Due Process Clause of the Fifth Amendment to the United States Constitution.

96.     Defendants' practices place the health of Plaintiffs and the putative Class members at risk during their confinement in the Baltimore Hold Rooms and after they have left it. Defendants' policies and practices are inflicted upon Plaintiffs and the putative Class members with the intent to punish them and are excessively harsh in relation to any non-punitive or legitimate purpose. Moreover, any non-punitive purpose could be accomplished through alternative methods consistent with the constitutional rights of Plaintiffs and the putative Class members.

97.     The conditions of confinement imposed by Defendants are more restrictive than necessary.

98.     Defendants' actions have caused, are causing, and if not enjoined, will cause Plaintiffs and the putative Class members irreparable injury in the form of deprivation of their fundamental rights.

**FIFTH CAUSE OF ACTION**
**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT:**
**DEPRIVATION OF ADEQUATE MEDICAL CARE**

99.     Plaintiffs reallege and incorporate by reference the paragraphs above.

100.    Defendants have a practice of detaining Plaintiffs and the putative Class members for extended periods in the Baltimore Hold Rooms.

101.    Accordingly, under the Fifth Amendment to the United States Constitution, Defendants have a constitutional obligation to provide for Plaintiffs' and the putative Class members' health, safety, and well-being while in their custody.

102.    Defendants deprive Plaintiffs and putative Class members detained in the Baltimore Hold Rooms of adequate medical care.

103.    Defendants routinely fail to provide for the proper administration of prescription drugs.

104.    The absence of adequate procedures for the medical needs of Plaintiffs and putative Class members is hazardous to their health and violates the Due Process Clause of the Fifth Amendment to the United States Constitution.

105.    Defendants' policies and practices place the health of Plaintiffs and putative Class members at risk during their confinement in the Baltimore Hold Rooms and after they have left it. Defendants' policies and practices are inflicted upon Plaintiffs and putative Class members with the intent to punish them and are excessively harsh in relation to any non-punitive or legitimate

purpose. Moreover, any non-punitive purpose could be accomplished through alternative methods consistent with the constitutional rights of Plaintiffs and putative Class members.

106.    The conditions of confinement imposed by Defendants are more restrictive than necessary.

107.    Defendants' actions have caused, are causing, and if not enjoined, will cause Plaintiffs and putative Class members irreparable injury in the form of deprivation of their fundamental rights.

**SIXTH CAUSE OF ACTION**
**VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT:**
**DEPRIVATION OF ADEQUATE FOOD AND WATER**

108.    Plaintiffs reallege and incorporate by reference the paragraphs above.

109.    Defendants have a practice of detaining Plaintiffs and putative Class members for extended periods in the Baltimore Hold Rooms.

110.    Accordingly, under the Fifth Amendment to the United States Constitution, Defendants have a constitutional obligation to provide for Plaintiffs' and the putative Class members' health, safety, and well-being while in their custody.

111.    Defendants deprive Plaintiffs and the putative Class members detained in the Baltimore Hold Rooms of adequate food and clean drinking water.

112.    Pursuant to Defendants' practices, provision of food to Plaintiffs and putative Class members is inadequate. Detained people are fed small portions that often consist of nutritionally inadequate items.

113.    Defendants have a practice of not consistently providing Plaintiffs and putative Class members with clean drinking water. At most, only one bottle of water is provided three times each day.

114.    Defendants' above practices—alone or in combination—violate the Due Process Clause of the Fifth Amendment to the United States Constitution.

115.    Defendants' practices place the health of Plaintiffs and the putative Class members at risk during their confinement in the Baltimore Hold Rooms and after they have left. Defendants' practices are inflicted upon Plaintiffs and putative Class members with the intent to punish them and are excessively harsh in relation to any non-punitive or legitimate purpose. Moreover, any non-punitive purpose could be accomplished through alternative methods consistent with the constitutional rights of Plaintiffs and putative Class members.

116.    The conditions of confinement imposed by Defendants are more restrictive than necessary.

117.    Defendants' actions have caused, are causing and if not enjoined, will cause Plaintiffs and putative Class members irreparable injury in the form of deprivation of their fundamental rights.

### SEVENTH CAUSE OF ACTION
### VIOLATION OF THE DUE PROCESS CLAUSE OF THE FIFTH AMENDMENT
### AND 8 U.S.C. § 1229a(b):
### DEPRIVATION OF ACCESS TO COUNSEL

118.    Plaintiffs reallege and incorporate by reference the paragraphs above.

119.    Defendants have a practice of detaining Plaintiffs and putative Class members for an extended period in the Baltimore Hold Rooms.

120.    Plaintiffs and putative Class members have a right of access to counsel under the Immigration and Nationality Act, 8 U.S.C. § 1228a(b), which is further protected by the Fifth Amendment to the U.S. Constitution.

121.    Defendants have violated Plaintiffs' and putative Class members' right to representation by counsel by denying them the ability to communicate with their counsel through

the mail, unreasonably restricting their ability to meet with attorneys, and by denying them the ability to make private telephone calls.

122.     Defendants' practices—alone or in combination—violate the Due Process Clause of the Fifth Amendment to the United States Constitution and the INA.

123.     Defendants' actions have caused, are causing, and if not enjoined, will cause Plaintiffs and putative Class members irreparable injury in the form of deprivation of their fundamental and statutory rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully requests that this Court:

a.     Assume jurisdiction over this matter;

b.     Certify the proposed Class;

c.     Appoint Plaintiffs as Class Representatives;

d.     Appoint the undersigned as Class Counsel;

e.     Enjoin Defendants, their agents, employees, and officials from subjecting Plaintiffs, and the Class members they seek to represent, to the illegal and unconstitutional conditions, acts, omissions, policies, and practices set forth above;

f.     Enjoin Defendants, their agents, employees, and officials from violating the ICE Hold Policy;

g.     Declare that the continued detention of Plaintiffs and Class members violates the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) and § 706(1), and/or the Due Process Clause of the Fifth Amendment to the U.S. Constitution;

h.     Issue a writ of habeas corpus ordering Ms. N.N.'s and Ms. R.G.'s immediate release from ICE custody, placement in community-based alternatives to detention such as

conditional release or, at minimum, transfer to an adequate detention facility, on the ground that their continued detention in the Baltimore Hold Rooms violates the Due Process Clause, the Administrative Procedure Act, and/or the INA;

i.    Enjoin Defendants from re-detaining Ms. N.N. and Ms. R.G. at the Baltimore Holding Rooms at any point in the future;

j.    Enjoin Defendants from removing Ms. N.N. and Ms. R.G. from the continental United States during the pendency of this litigation, pursuant to the All Writs Act, 28 U.S.C. § 1651;

k.    Award Plaintiffs all costs incurred in maintaining this action, including reasonable attorneys' fees under the Equal Access to Justice Act, as amended, 5 U.S.C. § 504, and on any other basis justified by law; and

l.    Grant any other further relief this Court deems just and proper.

May 9, 2025                                     Respectfully submitted,

/s/ Ian Austin Rose                            /s/ Sirine Shebaya
Ian Austin Rose (D. Md. Bar No. 22079)         Sirine Shebaya (D. Md. Bar No. 07191)
Daniel Melo (N.C. Bar No. 48654)*              Matthew Vogel (LA Bar No. 35363)*
Amelia Dagen (D.C. Bar No. 90004838)*          Yulie Landan (CA Bar No. 348958)*
Amica Center for Immigrant Rights              National Immigration Project
1025 Connecticut Ave. NW                       1763 Columbia Rd. NW
Suite 701                                      Suite 175 #896645
Washington, DC 20036                           Washington, DC 20009
(202) 788-2509                                 (202) 656-4788
Austin.rose@amicacenter.org                    sirine@nipnlg.org
Dan.melo@amicacenter.org                       matt@nipnlg.org
Amelia@amicacenter.org                         yulie@nipnlg.org

*Pro bono counsel for Plaintiffs*
*pro hac vice* forthcoming

## CERTIFICATION UNDER FED. R. CIV. P. 11

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

May 9, 2025                                        /s/ Ian Austin Rose
                                                   Ian Austin Rose
                                                   *Pro bono counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on May 9, 2025, I filed a copy of the First Amended Class Action Complaint for Declaratory Relief, Complaint for Injunctive Relief, and Petition for a Writ of Habeas Corpus, electronically via the CM/ECF system. I will furthermore serve the complaint in due course, by certified mail, to the following individuals:

Nikita Baker, Field Office Director
U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations
Baltimore Field Office
31 Hopkins Plaza
6th Floor
Baltimore, MD 21201

Joseph C. Burki, Assistant Field Office Director
U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations
Baltimore Field Office
31 Hopkins Plaza
6th Floor
Baltimore, MD 21201

Kenneth Genalo, Executive Associate Director
U.S. Immigration and Customs Enforcement, Enforcement and Removal Operations
500 12th St., SW
Washington, D.C. 20536

Kristi Noem, Secretary
U.S. Department of Homeland Security
Office of the General Counsel
2707 Martin Luther King Jr. Ave. SE
Washington, DC 20528-0485

Pamela Bondi, Attorney General
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530-0001


May 9, 2025                                          /s/ Ian Austin Rose
                                                    Ian Austin Rose
                                                    *Pro bono counsel for Plaintiffs*