**DECLARATION OF KATIE HYDE**

I, Katie Hyde, make the following declaration based on my personal knowledge and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a staff attorney with the Detained Adults Program at the Amica Center for Immigrant Rights. Amica Center has offices in both Washington D.C. and Baltimore, Maryland. My practice focuses on representing detained noncitizens in removal proceedings. I have represented immigrant clients for approximately one year and a half.

2. On the afternoon of May 9, 2025, I met with Ms. V.R.G., a 39 year old woman, at the Baltimore Holding Rooms in ICE's Baltimore Field Office at the George H. Fallon Building. Ms. R.G. had been held there since May 8, 2025 at around 8:10 am. In 2017, an immigration judge granted her relief from removal to her home country of El Salvador. ICE detained her during her routine check-in.

3. Ms. R.G. has two U.S. citizen children at home who depend on her as their sole economic support. Ms. R.G.'s mother is a lawful permanent resident (colloquially called a "green card holder").

4. Ms. R.G. also has a thyroid condition that requires daily medication. Since her arrival at the Baltimore Holding Rooms, she has not had access to that medication and ICE has not provided it to her. She was allowed to call her son to ask him to bring it to her, but because Baltimore ICE closes its offices at 3 pm, her son is unlikely to be able to bring her medication from home after school. She has not seen a medical professional since her detention at the Baltimore Hold Rooms.

5. ICE officers have asked Ms. R.G. to sign a document agreeing to deportation to Mexico. ICE has not informed Ms. R.G. how long she would be in the Baltimore Holding Rooms or where she would be sent next.

6. Ms. R.G. described the food as being minimal, often consisting of small rations such as a cup of noodle soup or a military pouch of food. Ms. R.G. is not being given water outside of a small bottle at mealtimes. Some officers ignore requests for more water altogether.

7. Ms. R.G. described the holding cell on arrival as dirty and full of old aluminum blankets and hair. Because the sole toilet in the room only has a small dividing wall and no curtain or door, it is impossible for Ms. R.G. or the other detained women to use the toilet with any privacy. The toilet is not routinely restocked with toilet paper.

8. Ms. R.G. has not been allowed to shower or change clothes. Sometimes ICE provides Ms. R.G. and the other detained women a couple of baby wipes. She was provided one spare undergarment that was of a thin hairnet-like material that easily rips. ICE even took out Ms. R.G.'s hair ties when she was detained.

9. Ms. R.G. also described the holding cell as very cold. She only got a jacket after another woman left. ICE is only providing inflatable beds that stand about eight inches off the cell floor. ICE does not provide pillows or sheets, only aluminum blankets. Ms. R.G. said that there were two other women detained with her.

Executed this 9th day of May 9, 2025, at Baltimore, Maryland

*Katherine E. Hyde*

_____
Katie Hyde
Staff Attorney
Amica Center for Immigrant Rights