# Exhibit 3

**DECLARATION OF RACHEL GIROD**

I, Rachel Girod, make the following declaration based on my personal knowledge and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. My name is Rachel Girod. I am a partner at the law firm Eldridge Crandell, LLC. I am based in Baltimore, Maryland. My practice focuses on a wide range of immigration law areas, including removal defense and litigation, bond proceedings, family-based petitions, waivers of removability, asylum claims, and adjustments of status. I regularly represent both detained and non-detained clients. I regularly work in the Baltimore, Richmond, Elizabeth, and Hyattsville Immigration Courts, and I also represent clients before the Board of Immigration Appeals. I have represented non-citizen clients for more than two years.

2. I recently consulted with three individuals who were held at the Baltimore Field Office at 31 Hopkins Plaza, Baltimore, MD for multiple days.

3. The first client, B.L.C. was detained at the Baltimore Field Office for about five days from the afternoon of Tuesday, March 4, 2025 to the morning of Sunday, March 9, 2025. B.L.C. told me about the deplorable conditions at the Baltimore hold rooms.

4. While B.L.C. was in the Baltimore hold rooms, he was held in a little cell that looked like it was intended to hold only for up to five people. The room was made of concrete and had two benches. Otherwise, the only thing in the cell was a toilet and a sink above it.

5. Even though the room was so small, B.L.C. shared the space with between fifteen and twenty-five people at any given time. He didn't understand why he was there or what was happening. Everything was very crowded, and everyone had to sleep on the floor, because there was nowhere to go at nighttime. Sometimes, there wasn't enough room for everyone to even lay down on the floor, so people had to sleep sitting up.

6. B.L.C. was not given a cot or bedding. At one point, B.L.C. was given a foil blanket, but then ICE officers took it away. Instead, ICE gave B.L.C. a jacket as the only way to stay warm in the concrete cell.

7. Due to the crowding, there was no privacy when B.L.C. needed to use the bathroom. It was also very dirty, because there were no showers and no one was given a change of clothes. No one was given soap or access to toothbrushes/toothpaste. No one was allowed to go outside the room to exercise or get any fresh air or sunlight. B.L.C. observed that people were not given any medications while he was detained there.

8. B.L.C. told me that there was no regular access to water, only water bottles. Each person received one water bottle three times a day. The food was also poor quality and inconsistent. Sometimes B.L.C. was given a cup of instant noodles, sometimes a protein bar, and sometimes bread or a cheese sandwich.

9. The second individual with whom I consulted, J.G.L., was detained at the Baltimore hold rooms for at least two days, starting on January 25, 2025. I was only able to speak with

J.G.L. briefly, but he told me that while he was at the Baltimore hold rooms, he was not given proper medical care, even when he raised concerns to the ICE officers.

10. One of my clients, April Amaya-Luis, was also held at the Baltimore hold rooms for over seven days in terrible conditions. I was not allowed to speak with her on the phone and was only able to see her in person one time during her detention. I requested bond for April and on April 11, 2025, an Immigration Judge ordered that ICE facilitate her appearance at a bond hearing scheduled for the following morning, on April 12, 2025. Only three hours after the Immigration Judge issued his order, ICE transferred April to Krome Detention Center in Miami, Florida.

Executed this 27th day of March, 2025, in Baltimore, MD.

/s/ Rachel Girod
Rachel Girod
Partner, Eldridge & Crandell, LLC
217 N. Charles St., 3rd Floor
Baltimore, MD 21201