# DECLARATION OF KATHARINE GORDON

I, Katharine Gordon, make the following declaration based on my personal knowledge and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct:

1. I am a senior attorney with the Detained Adults Program at the Amica Center for Immigrant Rights. Amica Center has offices in both Washington D.C. and Baltimore, Maryland. My practice focuses on representing detained noncitizens in removal proceedings. I have represented immigrant clients at Amica Center for over 5 years and have been a licensed attorney since 2009.

2. I represent Mr. S.A.O. He was granted Deferral of Removal under the Convention Against Torture (DCAT) by an Immigration Judge in 2024. Approximately 90 days after his grant of protection became final, he was released from ICE detention under an Order of Supervision (OSUP) in January 2025.

3. Mr. S.A.O. attended his initial check-in with ICE on February 4, 2025, at which time he was placed on the Intensive Supervision Appearance Program (ISAP). He was fitted with an electronic ankle monitor as a condition of his participation in ISAP. To my knowledge, he has been fully compliant to the best of his ability with all release requirements of release.

4. Last week, he informed me that he had an in-person check-in at the George H. Fallon Building in Baltimore on Monday morning June 9, 2025. At about 4:11 p.m. on the afternoon of June 9, 2025, I received a call from S.A.O. He called me from the Baltimore Holding Rooms in ICE's Baltimore Field Office at the George H. Fallon Building. He informed me that when he went to his check-in he was detained.

5. Mr. S.A.O. was sobbing uncontrollably when he told me that he had been detained. He did not understand why he had been re-detained because he had been detained for 90 days after his removal order while ICE looked for another country to accept him. He had complied fully with everything required of him under the terms of his release.

6. Mr. S.A.O. told me that one of the officers said he would be detained until they asked for France, the United Kingdom, Spain, or Italy to accept him. He said that this was communicated to him orally. Mr. S.A.O. has no connection to any of these countries.

7. During my conversation, I could clearly hear many people in the background. In particular, it seemed he was speaking with an ICE or other government officer because he asked several questions to an individual who seemed to be responding to his questions, although I could not hear clearly the other individual's words.

8. However, it was clear to me that my conversation with my client S.A.O. could be overheard by others. Therefore, I limited the contents of the conversation and the questions I asked of S.A.O. because I knew that my conversation could not be assumed to be privileged and confidential.

9. I asked Mr. S.A.O. to call me whenever he had the opportunity and then I ended my conversation with him.

10. At approximately 10:45 a.m. on June 11, 2025, Mr. S.A.O called me again. He told me that the room he was in was extremely crowded. He said that there were over 30 men in the room.

11. He complained of a lack of hygiene. He said that he has not been allowed to shower or change clothes or otherwise clean himself. He was not given any toothpaste.

12. He described the food as being minimal. He described receiving a sandwich for breakfast, a cup of soup at lunch, and another sandwich for dinner. He told me that he was not getting enough food to eat.

13. I was not able to continue speaking with Mr. S.A.O., as our conversation was cut off. However, as with the first call, it was not a private and confidential call because I could hear individuals in the background. This limited the questions I could ask.

14. Mr. S.A.O. said that he had been given some papers. I asked him to fax or email these to me as soon as possible. He said that he would ask the officers.

15. I am writing this at 11:37 a.m. on June 12, 2025 and as of this time, Mr. Omorodion remains in the Baltimore Hold Room according to the ICE Detainee Locator. That is, approximately 72 hours or more after he appeared for his check-in and was detained.

Executed this 12th day of June, 2025, at Takoma Park, Maryland,

Katharine Gordon
Senior Attorney
Amica Center for Immigrant Rights