**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| D.N.N. and V.R.G., *on behalf themselves and all others similarly situated*,<br><br>*Plaintiffs,*<br><br>v.<br><br>NIKITA BAKER, *in her official capacity as Field Office Director of the Immigration and Customs Enforcement, Enforcement and Removal Operations Baltimore Field Office,* et al.,<br><br><br>*Defendants.* | **MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>Civil Action No.: 1:25-cv-01613 |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFFS' MOTION FOR
CLASS CERTIFICATION**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................... 1

II.   STANDARD.................................................................................................................. 2

III.  ARGUMENT ................................................................................................................ 3

    A.  Named Plaintiffs Lack Standing and Their Claims Are Moot Because They Are No
        Longer Detained.......................................................................................................... 3

    B.  Even if Named Plaintiffs Had Standing, the Proposed Class Fails to Meet the
        Requirements of Rules 23(a) and (b) .......................................................................... 7

        1.  Named Plaintiffs fail to meet the commonality requirements of Rules 23(a)(2) and
            23(b)(2). ................................................................................................................ 8

        2.  Named Plaintiffs' claims are not typical of the claims of the proposed class. ......... 14

        3.  Named Plaintiffs are not adequate class representatives. ......................................... 17

    C.  Habeas is Unfit for Class Adjudication. ..................................................................... 18

    D.  The Class is Impermissible Because it Intends to Include Individuals Who Have Not
        Suffered, and May Not Ever Suffer, the Same Injury, as well as Individuals Whose
        Claims Are Statutorily Precluded from Class Treatment. ........................................... 20

CONCLUSION.................................................................................................................... 22

# TABLE OF AUTHORITIES

## CASES

Page(s)

*Garland v. Aleman Gonzalez,*
  596 U.S. 543 (2022) ................................................................................................ 14

*A.A.R.P. v. Trump,*
  145 S. Ct. 1034 (2025) ............................................................................................. 19

*AmChem Prods., Inc. v. Windsor,*
  521 U.S. 591 (1997) ..................................................................................... 3, 17, 18

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
  133 S.Ct. 1184 (2013) ................................................................................................ 7

*Andrews v. Cross,* No.,
  5:10CV113, 2012 WL 707478 (N.D. W. Va. Mar. 5, 2012) ................................... 16

*Aslanturk v. Hott,*
  459 F. Supp. 3d 681 (E.D. Va. 2020) ......................................................................... 9

*Baehr v. Creig Northrop Team, P.C.,*
  953 F.3d 244 (4th Cir. 2020) ...................................................................................... 3

*Bell v. Wolfish,*
  441 U.S. 520 (1979) ..................................................................................... 9, 16, 17

*Boley v. Brown,*
  10 F.3d 218 (4th Cir.1993) ....................................................................................... 12

*Califano v. Yamasaki,*
  442 U.S. 682 (1979) .................................................................................................... 2

*Coreas v. Bounds,*
  *No. CV TDC-20-0780, 2020 WL 5593338 (D. Md. Sept. 18, 2020)* ......................... 5

*Cty. of Riverside v. McLaughlin,*
  500 U.S. 44 (1991) ...................................................................................................... 5

*Deiter v. Microsoft Corp.,*
  436 F.3d 461 (4th Cir. 2006) ......................................................................... 14, 15, 17

*Dep't of Homeland Sec. v. Thuraissigiam,*
   591 U.S. 103 (2020) ................................................................................................ 13

*Dixon v. Just.,*
   41 F.4th 316 (4th Cir. 2022) ............................................................................... 5, 6

*East Texas Motor Freight Sys. v. Rodriguez,*
   431 U.S. 395 (1977) .................................................................................................. 4

*EQT Prod. Co. v. Adair,*
   764 F.3d 347 (4th Cir. 2014) ............................................................................ 7, 20

*Farmer v. Brennan,*
   511 U.S. 825 (1994) .................................................................................................. 9

*Gen. Tel. Co. of Southwest v. Falcon,*
   457 U.S. 147 (1982) .............................................................................................. 3, 4

*Genesis Healthcare Corp. v. Symczyk,*
   569 U.S. 66 (2013) ................................................................................................ 6, 7

*Grice v. Colvin,*
   No. GJH-14-1082, 2016 WL 1065806 (D. Md. Mar. 14, 2016) ............................... 6

*Hart v. Berryhill,*
   No. 16-1371, 2017 WL 3928324 (4th Cir. June 7, 2017) ........................................ 7

*Helling v. McKinney,*
   509 U.S. 25 (1993) .................................................................................................... 9

*Honig v. Doe,*
   484 U.S. 305 (1988) .................................................................................................. 4

*Jennings v. Rodriguez,*
   138 S. Ct. 830 (2018) .......................................................................................... 8, 12

*Kingsley v. Hendrickson,*
   135 S. Ct. 2466 (2015) ............................................................................................. 2

*Las Americas Immigrant Advoc. Ctr. v. Wolf,*
   507 F. Supp. 3d 1 (D.D.C. 2020) ..................................................................... 13, 15

*Lighthouse Fellowship Church v. Northam,*
   20 F.4th 157 (4th Cir. 2021) ................................................................................... 5

*Mendoza-Linares v. Garland,*

51 F.4th 1146 (9th Cir. 2022) ..................................................................... 21

*O.A. v. Trump,*
  404 F. Supp. 3d 109 (D.D.C. 2019) ........................................................... 22

*Powell v. McCormack,*
  395 U.S. 486 (1969) ..................................................................................... 4

*Rhodes v. Chapman,*
  452 U.S. 337 (1981) ................................................................................... 16

*Robinson v. Nationstar Mortgage, LLC,*
  TDC-14-3667, 2019 WL 4261696 (D. Md. Sept. 9, 2019) ...................... 14

*Sosna v. Iowa,*
  419 U.S. 393 (1975) ..................................................................................... 6

*Stafford v. Bojangles' Restaurants, Inc.,*
  123 F.4th 671 (4th Cir. 2024) ................................................................... 20

*Thompson v. Commonwealth of Virginia,*
  878 F.3d 89 (4th Cir. 2017) ........................................................................ 9

*Thorn v. Jefferson-Pilot Life Ins. Co.,,*
  445 F.3d (4th Cir. 2006) ............................................................................. 7

*U.S. Parole Comm'n v. Geraghty,*
  445 U.S. 388 (1980) .................................................................................. 5, 6

*United States v. Hardy,*
  545 F.3d 280 (4th Cir. 2008) ...................................................................... 4

*Wal-Mart Stores, Inc. v. Dukes,*
  564 U.S. 338 (2011) ........................................................................... passim

*Warth v. Seldin,*
  422 U.S. 490 (1975) ................................................................................... 20

*Weinstein v. Bradford,*
  423 U.S. 147 (1975) ..................................................................................... 5

*Williams v. Griffin,*
  952 F.2d 820 (4th Cir. 1991) ...................................................................... 4

*Zadvydas v. Davis,*
  533 U.S. 678 (2001) ................................................................................... 12

## **STATUTES**
### **Immigration and Nationality Act of 1952, as amended:**

8 U.S.C. §§ 1221-32 ........................................................................................... 14

8 U.S.C. § 1225 ........................................................................................... 13, 21

8 U.S.C. § 1225(b) ........................................................................................... 21

8 U.S.C. § 1225(b)(1) ........................................................................................... 21

8 U.S.C. § 1225(b)(1)(A)(i) ........................................................................................... 13

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ........................................................................................... 13

8 U.S.C. § 1231(a)(2) ........................................................................................... 13

8 U.S.C. § 1252 ........................................................................................... 21

8 U.S.C. § 1252(e) ........................................................................................... 21

8 U.S.C. § 1252(e)(1)(B) ........................................................................................... 21, 22

8 U.S.C. § 1252(f)(1) ........................................................................................... 13, 14

8 U.S.C. § 1252(e)(2) ........................................................................................... 21

8 U.S.C. § 1252(e)(3) ........................................................................................... 22

8 U.S.C. § 1252(e)(4) ........................................................................................... 21

28 U.S.C. § 2242 ........................................................................................... 19

28 U.S.C. § 2243 ........................................................................................... 19

## **FEDERAL RULES OF APPELLATE PROCEDURE**

Fed. R. Civ. P. 23(a) ........................................................................................... 2, 3

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 15

Fed. R. Civ. P. 23(b)(2) ........................................................................................... 3, 8, 12

## I.    INTRODUCTION

Two former immigration detainees at the U.S. Immigration and Customs Enforcement ("ICE") Holding Facility in Baltimore, Maryland (the "Holding Facility") have filed this putative class action claiming that said facility is subjecting detained individuals to punitive detention conditions in violation of their Fifth Amendment Due Process rights. *See generally* Am. Compl. (ECF No. 6). The proposed class representatives, Ms. N.N. and R.G., have been released from custody, which renders their claims moot. Even if not moot, the risk of constitutional injury, which named Plaintiffs allege is causally attributable to the purported conditions of confinement at the Baltimore Holding Facility, is an individualized analysis unsuitable for class wide relief.[1]

Plaintiffs' proposed putative class is comprised of hypothetical current and future ICE individuals detained at the Holding Facility in Baltimore. No factual findings have been made as to the alleged unsanitary and unsafe conditions at the facility, and there is no basis for Plaintiffs to claim a future constitutional violation for any unidentified ICE detainee who someday may be housed there. Plaintiffs' putative class is drawn so broadly—encompassing *any* detainee who enters the facility for *any* duration of time without regard to any enhanced risk profile such as pre-existing medical conditions—such that it ensures wide variation, rather than consistency, in the experiences of class members with respect to any inquiry into the relationship between the

---

1  Additionally, informing the constitutional analysis, an as fully fleshed out in Defendants' Opposition to Plaintiffs' motion for a preliminary injunction, pgs. 2-3, the Holding Facility plays a critical role in ensuring public safety during the removal process by filling a notable gap in federal detention capacity in the State of Maryland. Declaration of Jose Guerrero, (ECF No. 40-1) at ¶¶ 14, 19. Because the state of Maryland prohibits detention facilities within the State from contracting with ICE to detain aliens in removal proceedings, ICE must locate facilities outside Maryland with available housing space to provide extended-term detention, which lengthens the post-arrest processing time. *Id.* ICE uses the Holding Facility while processing aliens and locating facilities for their long-term detention, and, absent its availability, ICE's capacity to process individuals for detention or effectuate arrests as required pursuant to the INA would be jeopardized. Guerrero Decl. at ¶¶ 14, 19.

conditions and their constitutionality. Accordingly, it ensures "dissimilarities within the proposed class" that "impede the generation of common answers" in contravention of the commonality and typicality a class must have for certification to be appropriate. Fed. R. Civ. P. 23(a). Even if Plaintiffs surpassed that hurdle, the proposed class does not meet the requirements under Rule 23(b) because the claimed risk of substantial harms are dependent on considerations of each class member's unique circumstances. This kind individualized analysis is inappropriate in a class action and, therefore, Plaintiffs' attempt to certify a class should fail.

## II.    STANDARD

The class action "is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 700-01 (1979)). To fall within this narrow exception, Plaintiffs must "affirmatively demonstrate" their compliance with each element of Rule 23—"that is, [they] must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. This is not just a "mere pleading standard." *Id.* "[A]ctual, not presumed, conformance" with Rule 23 is "indispensable," *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982), and certification is proper only if the Court is satisfied "after a rigorous analysis" that Plaintiffs have shown that each requirement of the Rules has been met. *Wal-Mart Stores, Inc.*, 564 U.S. at 350-51.

To merit class certification, Plaintiffs must demonstrate each element of Rule 23(a) is met: (1) the class is so numerous that joinder is impractical ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the named Plaintiffs are typical of claims or defenses of the class ("typicality"); and (4) the named Plaintiffs and counsel will fairly and adequately protect the interests of the class ("adequacy of representation"). Fed. R.

Civ. P. 23(a).

In addition to meeting the requirements set forth in Rule 23(a), the proposed class must also qualify under one of the subsets of Rule 23(b). *AmChem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). Relevant to Plaintiffs' motion, Rule 23(b)(2) permits certification where "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).

## III.    ARGUMENT

Plaintiffs' motion for class certification, ECF No. 31, should be denied because the proposed class fails to meet the requirements of Federal Rules of Civil Procedure 23(a) and (b).

### A.    Named Plaintiffs Lack Standing and Their Claims Are Moot Because They Are No Longer Detained.

As a threshold issue, this Court must be satisfied that Plaintiffs have standing—which they do not—before considering whether they meet the requirement of Rule 23. *See Baehr v. Creig Northrop Team, P.C.*, 953 F.3d 244, 252-53 (4th Cir. 2020) ("The strictures of Article III standing are no less important in the context of class actions. . . . A putative class thus cannot establish Article III standing without a sufficient allegation of harm to the named plaintiff in particular." (internal quotation marks and citation omitted)). For Plaintiffs to have Article III standing and for this Court to adjudicate this action, there must be "actual, ongoing controversies." *Honig v. Doe*, 484 U.S. 305, 317 (1988). A case does not have an actual, ongoing controversy—it is moot, as is the case here—"when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *United States v. Hardy*, 545 F.3d 280, 283 (4th Cir. 2008) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)).

First, both named plaintiffs lack a legally cognizable interest in the outcome of this

litigation because they are no longer in immigration detention. *See* Pls.' Mot. for Class Certification (ECF No. 31-1) at 17 ("Mot."); Defs.' Opp'n to Prelim. Inj. (ECF No. 40) at 2 ("Opp'n"); Court's May 14, 2025 Order, ECF No. 14 at n.3 ("Order").   A class representative "must be part of the class and possess the same interest and suffer the same injury as the class members." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (quoting *East Texas Motor Freight Sys. v. Rodriguez*, 431 U.S. 395, 403 (1977) (internal quotation marks omitted)). Plaintiffs could not possibly represent the proposed class of detainees, namely, "[a]ll persons who are now or in the future will be detained at the Baltimore Hold Rooms[,]" when they are no longer detained at said facility. Mot. at 1-2; *see also* Opp'n at 4-5 (laying out Defendants' argument on why Plaintiffs lack standing); *Williams v. Griffin*, 952 F.2d 820 (4th Cir. 1991) (holding that transfer of prisoner mooted claims for injunctive and declaratory relief regarding allegedly unconstitutional prison conditions).

Second, and contrary to Plaintiffs' assertion, the putative class satisfies neither the "capable of repetition, yet evading review" nor the "inherently transitory" exceptions to mootness that would allow for "relation back" to the Plaintiffs' complaint. *See Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 45, 52 (1991); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 398-99 (1980). The party seeking to invoke an exception to the mootness doctrine bears the burden of showing its application. *See Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 165 (4th Cir. 2021).

With respect to the first exception, named Plaintiffs have not demonstrated that they "face[] some likelihood of becoming involved in the same controversy in the future[.]" *Geraghty*, 445 U.S. at 398; *see also Weinstein v. Bradford*, 423 U.S. 147, 149 (1975) (concluding there was no "reasonable expectation that the same complaining party would be

subjected to the same action again . . . [when] there is no demonstrated probability that respondent will again be among that number").

With respect to the second exception, its application depends on whether named plaintiffs' individual claims will remain alive prior to certification and whether other class members have a continuing and live interest in the case. *See Jonathan R. by Dixon v. Just.*, 41 F.3th 316, 325-26 (4th Cir. 2022); *Coreas v. Bounds, No. CV TDC-20-0780, 2020 WL 5593338, at \*10 (D. Md. Sept. 18, 2020)* (finding that one petitioner's claim could not support the class claim under the relation back doctrine when he was released from the facility before the filing of the class petition). The record before the Court cannot provide such assurances for three reasons. First, the record does not demonstrate that purported injuries to other class members will persist. *See generally* Am. Compl. Second, the record is dubious with respect to whether Plaintiffs' alleged injuries are typical of other potential class members such that the Court can assure itself a class member will retain a live claim throughout these proceedings. *See infra* Section III.B-1; 2 (noting issues with commonality and typicality). For example, as further discussed below, among the detainee population, there is a significant variance in the length of time spent at the Holding Facility; health-risk profile (including the existence of any pre-existing medical condition and whether a detainee takes prescribed medication); and the number of other individuals present in the detainee's cell at any time). Given the record does not demonstrate that Plaintiffs' alleged injuries are common to and typical of the class, the Court cannot be assured that some class members will retain a live claim throughout the proceedings. *Jonathan R. by Dixon*, 41 F.4th at 325-26. Finally, the Court should not extrapolate injuries and claims to other potential class members from Plaintiffs' declarations.[2]

---

[2]  In several instances in their class certification motion, Plaintiffs cite to the testimony of certain

For these reasons, the record does not demonstrate their claims meet the "inherently transitory" exception.

In any event, the relation back doctrine cannot defeat the mootness of the proposed class members' claims in relation to class certification. *See Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75-77 (2013) (rejecting application of the relation back doctrine to cases where the named plaintiff's claim (1) is fully satisfied before class certification; and (2) is not inherently transitory). The *Genesis* Court held that, while class actions are not rendered moot when the plaintiff's individual claims become moot *after* grants or denial of class certification, the relation back doctrine is "explicitly limited to cases in which the named plaintiff's claim remains live at the time the district court [considers] class certification." *Id.* at 74-75 (comparing *Sosna v. Iowa*, 419 U.S. 393 (1975) and *Geraghty*, 445 U.S. 388 (1980)). And while *Genesis* pertained to conditional certification under the Fair Labor Standards Act rather than Rule 23, at least one court in this district has found that distinction immaterial. *Grice v. Colvin*, No. GJH-14-1082, 2016 WL 1065806, at *6 (D. Md. Mar. 14, 2016) ("Here, there is no certified class and, as was the case in *Genesis Healthcare*, 'there is simply no certification

---

declarants in support of their assertions that conditions at the Holding Facility are punitive and in violation of detainees' Due Process rights. *See*, e.g. Mot, at 5, (alleging that "Defendants have denied putative class members access to medical care as well as prescribed medications for serious medical conditions ranging from diabetes to HIV," and citing to declaration of Justiniano Decl. (ECF No 1-15) ¶¶ 3-5. In doing so, Plaintiffs falsely state or imply that these declarants are in fact "putative class members." *See* Mot. at 3, 5, 14. However, they offer no evidence that the declarants are persons who "are now . . . . detained at the Baltimore Hold Rooms" (or even that they were at the time of the motion's filing), nor do they claim as much. Similarly, they do not contend that the declarants are people who will in the future be detained at the Holding Facility—this population is necessarily unknown. Indeed, these declarants are not in actuality part of the "putative class," and any suggestion that their assertions should, for purposes of the class certification appropriateness analysis, be regarded as a proxy for either the testimony of the named plaintiffs or for that of current or future unnamed detainees at the Holding Facility, i.e. the putative class, is meritless.

decision to which respondent's claim could have related back.'" (quoting *Genesis*, 569 U.S. at 75)), *vacated on other grounds and dismissed sub nom. Hart v. Berryhill*, No. 16-1371, 2017 WL 3928324 (4th Cir. June 7, 2017). Because Plaintiffs' claims became moot prior to class certification, putative class members have not yet acquired sufficient legal status to maintain this action.

Accordingly, because Plaintiffs no longer have a live claim and no exception is applicable here, Plaintiffs' certification request should be denied.

### B. Even if Named Plaintiffs Had Standing, the Proposed Class Fails to Meet the Requirements of Rules 23(a) and (b).

In the Fourth Circuit, it is well settled that "it *is the plaintiff* who bears the burden of showing that the class *does comply* with Rule 23." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 321 (4th Cir. 2006). As the Supreme Court explained, "Rule 23 does not set forth a mere pleading standard." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Instead, a "party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc." *Id.* In light of this burden, district courts must undertake a "rigorous analysis" to determine if Rule 23 requirements have been met. *Id.* at 351. Plaintiffs' likelihood of success on the merits is not relevant to the issue of whether certification is proper. *Thorn*, 445 F.3d at 319; *EQT Prod. Co. v. Adair*, 764 F.3d 347, 357-58 (4th Cir. 2014) ("Although Rule 23 does not give district courts a 'license to engage in free-ranging merits inquiries at the certification stage,' a court should consider merits questions to the extent 'that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" (quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1194-95 (2013))). Here, Plaintiffs have failed to meet their burden of establishing the Rule 23(a) and 23(b) requirements, and their motion to certify a class should be

denied.

1.  <u>Named Plaintiffs fail to meet the commonality requirements of Rules 23(a)(2) and 23(b)(2).</u>

Plaintiffs also have not established commonality under 23(a)(2) such that their proposed class can be certified under Rule 23(b)(2). Plaintiffs must "affirmatively demonstrate" their compliance with the commonality requirement, which demands not only "common questions . . . but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation" *Wal-Mart Stores, Inc.*, 564 U.S. at 350 (emphasis in original). The commonality requirement is especially rigorous when applied to a class that seeks certification under Rule 23(b)(2), because it must show that "a single injunction or declaratory judgment would provide relief to each member of the class." *Jennings v. Rodriguez*, 138 S. Ct. 830, 852 (2018) (quoting *Wal-Mart Stores, Inc.*, 564 U.S. at 360)). For certification under Rule 23(b)(2), Plaintiffs must show that Defendants have "acted or refused to act on grounds that apply generally to the class" so that "relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). In other words, the challenged conduct must be of the kind that "can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart Stores, Inc.*, 564 U.S. at 360. In that way, satisfaction of Rule 23(a)(2) for a class under Rule 23(b)(2) requires a common legal problem wherein the "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350.

Here, Plaintiffs seek class-wide non-habeas relief based on the belief that the conditions of confinement at the Baltimore Holding Facility violate the putative class members' due process rights. Plaintiffs erroneously contend that the putative class raises "common questions of law and fact." Mot. at 13. As an initial matter:

> What matters to class certification is not the raising of common questions . . . but, rather the capacity of a class wide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.

*Wal-Mart Stores, Inc.*, 564 U.S. at 350 (cleaned up). Plaintiffs claim that their conditions of confinement violate the Fifth Amendment's Due Process Clause because it is tantamount to improper "punishment." To prevail on such a challenge, Plaintiffs will be required to show both that ICE's operation at the Holding Facility "pose an unreasonable risk of serious damage to [the detainees'] future health," *Helling v. McKinney*, 509 U.S. 25, 35 (1993), and that ICE was deliberately indifferent to Plaintiffs' wellbeing, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The deliberate indifference standard is a two-pronged test: (1) the prisoner must be exposed to a substantial risk of serious harm, and (2) the prison official must know of and disregard that substantial risk to the inmate's health or safety. *Thompson v. Commonwealth of Virginia*, 878 F.3d 89, 97-98 (4th Cir. 2017). Indeed, even in instances where "prison officials [ ] actually knew of a substantial risk to inmate health or safety" and that particular harm ultimately occurs, the officials "may be found free from liability if they responded reasonably to the risk." *See Aslanturk v. Hott*, 459 F. Supp. 3d 681, 699 (E.D. Va. 2020). Thus, whether the claimed risk of harm that the detainee was exposed to was serious, whether an ICE official had knowledge of the detainee's medical risk, whether the official disregarded the risk, and whether he responded reasonably thereafter, are all context-driven inquiries dependent on the specific and individualized circumstances present.

Even in the abstract, without consideration of the putative class constituency, these legal inquiries are fact-driven, implicating both a cumulative and individualized analysis. *See Bell v. Wolfish*, 441 U.S. 520, 542 (1979) (analyzing affidavits and conducting an in person

visit to the facility). Because the Baltimore Holding Facility is a transitional facility that holds detainee's only for a matter of hours or days, a cumulative effect-driven injury inquiry is even more strained. Against this backdrop, Plaintiffs define their class with maximum breadth such that it ensures wide variation, rather than consistency, in the experiences of class members with respect to relationship between the conditions and their constitutionality. That is, because Plaintiffs' putative class is drawn so broadly—encompassing *any* detainee who enters the facility for *any* duration of time without regard to any enhanced risk profile such as pre-existing medical conditions—it ensures "dissimilarities within the proposed class" that are determinative of the deprivation-inquiry and necessarily "impede the generation of common answers." *See Wal-Mart Stores, Inc.*, 564 U.S. at 350.3 Plaintiffs' purportedly common questions, do not have common answers; rather, the Court will be required to analyze the highly individualized harms alleged by each detainee.

Resolving whether a putative class member faces a substantial risk of harm involves an assessment of the cumulative effect of the duration of the detainee's confinement, the number of other detainees present in that cell, the extent to which she has specific medical concerns of which she may put ICE-personnel on notice, *inter alia*. Also at play is the reality that some of the detainee population may have a criminal history such that they are deemed public safety threats and placed in a different cell. Because this combination of factors comprising a detainee's experience will necessarily differ among members of the Plaintiffs' proposed class, so too, will a legitimate assessment of any risk of an "impending" constitutional injury.

Moreover, Plaintiffs attempt to establish commonality by engineering a purported "common core of material facts" and "policies and practices" is wholly without merit. The

"common questions of law" they set forth are merely argumentative suppositions without evidentiary support. The Baltimore Holding Facility does not have a "policy or practice" of "overcrowding the holding cells; and failing to provide detained people with toothbrushes or toothpaste, or with soap, showers, or with clean clothes or access to laundry." Mot. at 13. Indeed, according to the testimony of putative class representative Ms. R.G. (authored by Staff Attorney Katie Hyde), her individual conditions were far from overcrowded. *See* Declaration of Katie Hyde (ECF No. 6-2) ("Hyde Decl.") ¶ 9 (stating that there were a total of "two other women detained with her"). ICE-Baltimore issues individuals a set of toiletries that include a toothbrush, toothpaste, and moist towelettes for use while in the Holding Facility. Declaration of Jose Guerrero (ECF No. 40-1) ("Guerrero Decl.") ¶ 25.

Equally spurious is Plaintiffs' assertion that ICE-Baltimore has a "policy or practice" of providing insufficient quantities of food and insufficient drinking water," such that it could exemplify a legal question (due process deprivation) common to the putative class. Mot. at 14. ICE-Baltimore utilizes a vendor that provides pre-made ready-to-eat meals for each individual and ICE Officers take dietary limitations and requests into account in purchasing meals. Guerrero Decl. ¶¶ 26, 27. Water is provided to any individual upon request and there is a sink in each cell. *Id*. at ¶ 24.

Also without merit is Plaintiffs' assertion that ICE-Baltimore has a "policy or practice" of "failing to provide for adequate medical care and consistent administration of prescription drugs to detained people." Mot. at 13-14. During an arrest, ICE Officers ask detainees if they have any medical conditions, require any ongoing medical treatment, or need to bring any medication with them. Guerrero Decl. ¶ 28. ICE-Baltimore also authorizes family members to bring medication to detainees who did not have it with them at the time of arrest and requests

family members bring both necessary prescription and over the counter medication. *Id*. Medication is placed in an individual's property bag to be distributed as scheduled, and ICE-Baltimore maintains a log to ensure individuals receive medications as prescribed. *Id.* at ¶ 29. If a detainee requires medication during their time in the Holding Facility, they are taken to the University of Maryland Medical Center, approximately three blocks from the Holding Facility, or Johns Hopkins Hospital, approximately one mile from the facility. *Id*. at ¶ 30. While Plaintiffs point to individual instances of a detainee not receiving medication upon request, this does not establish that a constitutional deprivation of deliberate indifference occurred on that particular occasion, much less that the experiences are so pervasive among the putative class that they form a "common question" of fact or law.

Indeed, the Supreme Court has also questioned whether a Rule 23(b)(2) class action litigated on common facts is an appropriate way to resolve Due Process Clause claims. *See Jennings*, 138 S. Ct. at 852 (directing the Ninth Circuit to consider whether a class action may not be the proper vehicle to resolve Due Process claims because of the flexibility inherent in a Due Process analysis) *Zadvydas v. Davis*, 533 U.S. 678, 694 (2001) ("[T]he nature of [due process] protection[s] may vary depending upon status and circumstance."). The risk of constitutional injury, which Plaintiffs allege is causally attributable to the purported conditions of confinement at the Baltimore Holding Facility, is an individualized analysis unsuitable for class wide relief. *See Boley v. Brown,* 10 F.3d 218, 223 (4th Cir.1993) (affirming the district court's denial of class certification when the resulting harm was dependent on considerations of each class member's unique circumstances).

To adopt Plaintiffs' position on the appropriateness of class certification would be to hold that the detention of any immigration detainee who enters the facility for any duration of

time, regardless of the particular circumstances experienced, is necessarily unconstitutional—a position that defies any rationality and has no basis in the law. Plaintiffs cannot show that a single common remedy is appropriate for everyone in the proposed class.

Also relevant here, not all putative class members are entitled to the same due process protections, as Plaintiffs' proposed class includes aliens with: (1) final orders of removal having gone through removal proceedings before an immigration judge, and (2) expedited removal orders having gone through expedited removal proceedings under 8 U.S.C. § 1225 and who can be ordered removed by an immigration officer without a hearing before an immigration judge. *See* 8 U.S.C. §§ 1225(b)(1)(B)(iii)(IV) (authorizing detention pending removal on an expedited removal order), 1231(a)(2), (6) (authorizing detention pending removal on removal orders entered following "full" removal proceedings). Aliens who underwent expedited proceedings cannot "claim any greater rights under the Due Process Clause" than those statutorily provided by Congress, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 107 (2020), which is "considerably less process . . . than [is provided] in full removal proceedings." *Las Americas Immigrant Advoc. Ctr. v. Wolf*, 507 F. Supp. 3d 1, 39 (D.D.C. 2020); *see e.g.,* 8 U.S.C. § 1225(b)(1)(A)(i) (authorizing asylum officers to remove aliens "without further hearing or review."). Because commonality "requires the plaintiff to demonstrate that the class members 'have suffered the same injury,'" that the members of the putative class possess differing levels of due process protections is necessarily fatal to their ability to demonstrate the requisite commonality for class certification. *Wal-Mart Stores, Inc.*, 564 U.S. at 349-50.

Additionally, as the Supreme Court held in *Garland v. Aleman Gonzalez*, 8 U.S.C. § 1252(f)(1) "generally prohibits lower courts from entering injunctions that order federal

officials to take or to refrain from taking actions to enforce, implement, or otherwise carry out the specified statutory provisions." 596 U.S. 543, 550 (2022) (referring to 8 U.S.C. §§ 1221-32). Because the provisions therein, as discussed above, provide individuals in expedited removal proceedings with only limited access to counsel, a classwide injunction order requiring additional process would be inconsistent with section 1252(f)(1). *See Aleman Gonzalez*, 596 U.S. at 550. Because section 1252(f)(1) also bars the entry of any declaratory judgment that would function like an injunction, it effectively eliminates any basis for class certification. Therefore, there is no claim on which a class can be certified.

Therefore, Plaintiffs cannot meet their burden to show they have met the commonality requirement of Rules 23(a)(2) and 23(b)(2) and the Court should deny their motion to certify a class.

2.   Named Plaintiffs' claims are not typical of the claims of the proposed class.

Plaintiffs' proposed class also fails to meet the typicality requirement of Rule 23(a)(3). The commonality and typicality requirements of Rule 23(a) are interrelated and, in some instances, merge. *Wal-Mart Stores, Inc.*, 564 U.S. at 349 n.5. "Both [requirements] serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Id.* In analyzing typicality, "a court compares the class representative's claims and defenses to those of the absent class members, considers the facts needed to prove the class representative's claims, and assesses the extent to which those facts would also prove the claims of the absent class members." *Robinson v. Nationstar Mortgage, LLC*, TDC-14-3667, 2019 WL 4261696, at * 16 (D. Md. Sept. 9, 2019) (citing *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466-67 (4th Cir. 2006)). The

class representative's claim and defenses should be "typical of the claims or defenses of the class," Fed. R. Civ. P. 23(a)(3), such that prosecution of the claim will "simultaneously tend to advance the interests of the absent class members," *Deiter*, 436 F.3d at 466-67. However, there are several class allegations that arise—not from the two named Plaintiffs' own experiences but—from declarants who are not named Plaintiffs in this action. *See generally* Mot. at 3-7 (listing allegations from twelve nonparties).

On a broad level, named Plaintiffs suggest that the claims of the proposed class members are indistinguishable from those of the putative class. Ms. R.G. and N.N. were allegedly subjected to conditions of confinement "challenged on behalf of the Class" such as deprivation of (i) sleep; (ii) hygienic and sanitary conditions; (iii) adequate medical care; (iv) adequate food and water; and (v) access to counsel, the sum total of which that were so punitive as to amount to a violation of their 5th Amendment and 8th Amendment Due Process rights. *See* Mot. at 15.

Putting aside those generalities, an examination of the concrete factual assertions supporting the legal claims evidence disparities between the representatives and putative class. Neither of the named Plaintiffs claims to have suffered most of the injuries alleged in the Amended Complaint, and thus their claims are not typical of the class they intend to represent. For example, according to Plaintiffs', ICE is "packing [putative class members] into overcrowded and filthy cells." *Id.* at 1. Conversely, according to Ms. R.G.'s own testimony, there were only a total of "two other women detained with her." Hyde Decl. ¶ 9. Another example is that putative class members at the Holding Facility allege they are subjected to "a practice [by ICE] of failing to provide for adequate medical care and consistent administration of prescription drugs to detained people." Mot. at 13. Purportedly exacerbating this "practice" is that "Defendants regularly deny detained individuals in the Baltimore Hold Rooms the ability to call attorneys." *Id.* at 7. Yet these claims

find scant support in in Ms. R.G.'s declaration, which states that, regarding needed medication for a thyroid condition, she "was allowed to call her son to ask him to bring it to her." Hyde Decl. ¶ 4. Putative class members also claim that the cells "contain a single open toilet with no privacy, requiring detained individuals to expose themselves to one another repeatedly while using the bathroom." Mot. at 4. Ms. R.G.'s affidavit, however, notes that her cell had "a small dividing wall" separating the toilet form the cell, states that her cell had only two other women in it and does not allege that she had to "expose" herself to anyone. Hyde Decl. ¶ 7.

True, Ms. R.G.'s declaration describes the holding cell on arrival as "dirty," claims the toilet was not "routinely restocked" with toilet paper, and describes the meals as "small rations such as a cup of noodle soup or a military pouch of food." Hyde Decl. at 1-2.  But while Ms. R.G.'s assertions may support a claim that the conditions she experienced were undesirable, they do not support a claim that the conditions were unconstitutional. *See Wolfish*, 441 U.S at 543 ("We simply do not believe that requiring a detainee to share toilet facilities and this admittedly rather small sleeping place with another person for generally a maximum period of 60 days violates the Constitution."); *Andrews v. Cross*, No. 5:10CV113, 2012 WL 707478, at *2 (N.D. W. Va. Mar. 5, 2012), ("While the Eighth Amendment requires that prisoners have adequate access to basic life necessities while in prison, they are not guaranteed privacy or comfort in their accommodations." (citing *Rhodes v. Chapman*, 452 U.S. 337, 346-47 (1981))), *aff'd*, 490 F. App'x 615 (4th Cir. 2012).

To prevail on a substantive due process claim challenging the conditions of confinement as unconstitutional, courts will inquire whether the challenged conditions "cause [detainees] to endure genuine privations and hardship over an extended period of time" such that the adverse conditions become excessive in relation to the purposes assigned to them. *Wolfish*, 441 U.S. at

542. As the *Wolfish* Court explained, however, what mattered is not that certain conditions imposed by the detention facility are potentially objectionable; the dispositive question instead is "whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Id*. at 538. So long as the conduct at issue serves the latter purpose and is not excessive, it is not an impermissible "punishment." *Id*. at 538-39. Thus, Plaintiffs fail to adequately establish "how proof of their claims would be typical of the proof of the claims of absent class members." *Deiter*, 436 F.3d at 467. And when the court assesses the "extent to which those facts would also prove the claims of the absent class members," *id.*, it should accordingly determine that because they do not, because Plaintiffs have not satisfied the requisite typicality. As such, Plaintiffs' motion for class certification should fail.

### 3. Named Plaintiffs are not adequate class representatives.

Plaintiffs also fail to demonstrate they are adequate class representatives. Rule 23(a)(4) requires that the named parties be able to "fairly and adequately protect the interests of the class." *Anchem Prods. v. Windsor*, 521 U.S. 591, 625 (1997). "[A] class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Id.* at 625-26 (cleaned up). Here, Plaintiffs have not demonstrated they are adequate class counsel for two reasons: (i) there is reason to doubt they fully understand their representational responsibilities, and (ii) their claims do not demonstrate they suffer the same injury and possess the same interests.

First, the record does not demonstrate Plaintiffs fully comprehend their representational responsibilities. Plaintiffs claim they would like to serve as class representatives, but their declarations demonstrate no understanding of their role and responsibilities as class representatives. *See* Declaration of D.N.N. (ECF No. 31-2) ¶ 3; Declaration of V.R.G. (ECF No.

31-3) ¶ 3. When a class representative does not understand their responsibilities, they cannot adequately protect the interests of the class. *See, e.g.*, *Anchem Prods., Inc.*, 521 U.S. at 626-27 (affirming lower court's finding that sub-class representatives who negotiated on behalf of the entire class, not just their sub-class, were not adequate class representatives because they did not properly understand their representational responsibilities).

Second, as discussed *supra* Section III.B-1; 2, Plaintiffs alleged injuries lack commonality and typicality of the class they seek to represent. Typicality and adequacy are often interrelated Rule 23(a) requirements." *Wal-Mart Stores, Inc.*, 564 U.S. at 349 n.5. Here, because Plaintiffs injuries are not common to and typical of the proposed class, Plaintiffs' interests diverge from the class and thus they are not adequate class representatives. *See, e.g.*, *Anchem Prods., Inc.*, 521 U.S. at 625-26 (noting class representatives must possess the same interest as the putative class).

**C.  Habeas is Unfit for Class Adjudication.**

Though their complaint lacks a freestanding habeas claim, Plaintiffs ostensibly style their case a habeas action. However, as argued in Defendants' opposition to Plaintiffs' motion for a preliminary injunction, Plaintiffs' claims do not sound in habeas and this Court does not have jurisdiction to review those claims. *See* Opp'n at 10-13. Even assuming *arguendo* that the Court allows named Plaintiffs to proceed with any habeas claims they purport to bring in the amended complaint, habeas petitions are nonetheless still generally unfit for class actions.

Habeas, from its inception, has been an individualized writ, however. Indeed, the federal habeas statute is designed for individual petitioners; it requires that an "[a]pplication for a writ of habeas corpus shall be in writing signed and verified *by the person for whose relief it is intended or by someone acting in his behalf*" and "shall allege the facts concerning *the applicant's commitment or detention, the name of the person who has custody over him and by virtue of what*

*claim or authority*, if known." 28 U.S.C. § 2242 (emphasis added). The issuance of the writ is then "directed *to the person having custody of the person detained*" and may require the custodian to "produce at the hearing *the body of the person detained*." *Id.* § 2243 (emphasis added). That is an individualized process and inquiry, not one amenable to class wide resolution.

It is no wonder, therefore, that the Supreme Court "has never held that class relief may be sought in a habeas proceeding." *A.A.R.P. v. Trump*, 145 S. Ct. 1034, 1036 (2025) (Alito, J., dissenting). This Court should not stray from the tenets of habeas here to certify novel classes that do not even meet Rule 23's requirements.

### D. The Class is Impermissible Because it Intends to Include Individuals Who Have Not Suffered, and May Not Ever Suffer, the Same Injury, as well as Individuals Whose Claims Are Statutorily Precluded from Class Treatment.

The Fourth Circuit interprets Rule 23 as imposing a requirement that "[a] class cannot be certified unless a court can readily identify the class members in reference to objective criteria." *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014). A class definition may be fatally overbroad if it "risk[s] including individuals who would not have a right to recovery but for the sweeping scope of the class certification itself." *Stafford v. Bojangles' Restaurants, Inc.*, 123 F.4th 671, 681 (4th Cir. 2024). Having an inadequately defined or overbroad class also often implicates other Rule 23 requirements, including typicality, commonality, and the standards for certifying an injunctive-relief class under Rule 23(b)(2).

Here, Plaintiffs seek certification of a class of "[a]ll persons who are now or in the future will be detained at the Baltimore Hold Rooms." Mot. at 2. This class is overbroad for several reasons. As an initial matter, the term "who . . . will be detained" is not sufficiently defined for purposes of resolving the proposed class claims. The proposed class necessarily includes numerous individuals who have not been detained at the Baltimore Holding Facility and thus have not

suffered the injury named Plaintiffs claim to have already suffered and whose fear of future injury is so speculative that it risk[s], if not guarantees, that the class will "include[e] individuals who would not have a right to recovery but for the sweeping scope of the class certification itself." *Stafford*, 123 F.4th at 681. Further, the class is overbroad to the extent Plaintiffs seek to include those who were previously detained, but have already been transferred to a permanent facility, including declarants whose allegations form the basis of many of the class allegations. Plaintiffs do not explain how the relief they seek would benefit these declarants or other aliens similarly situated to them who have already been transferred from the Baltimore Holding Facility. *Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.").

Third, the proposed class is overbroad to the extent it intends to include aliens who received expedited removal orders pursuant to 8 U.S.C. § 1225(b). Congress has expressly precluded class certification where claims relate to expedited removal orders, and the Court thus cannot permissibly certify a class that includes such claims. The claims asserted by those aliens subject to expedited removal orders are limited by the jurisdictional provisions of 8 U.S.C. § 1252, which provide that there is no judicial review of any claims "arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1)" or involving "the application of such section to individual aliens," except as provided under § 1252(e). *See Mendoza-Linares v. Garland*, 51 F.4th 1146, 1154-66 (9th Cir. 2022) (discussing the limitations on judicial review of expedited removal orders). And Section 1252(e)(1)(B) provides that "no court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure in any action for which judicial review is authorized under . . . this subsection." 8 U.S.C. § 1252(e)(1)(B).

Section 1252(e)(1)(B)'s bar on class certification applies to the claims of any proposed class member who was processed for an expedited removal order under Section 1225(b).

Indeed, Congress has also limited the relief available for the claims of aliens subject to expedited removal orders. The exclusive means of securing any equitable relief from an expedited removal order would be through limited individual habeas proceedings under Section 1252(e)(2) in the district of confinement seeking to obtain placement in removal proceedings before an immigration judge. *See* 8 U.S.C. §§ 1252(e)(2), (4). Again, even if the proposed class members' claims could be entertained in this action, Congress has precluded such claims from class treatment. *Id.* § 1252(e)(1)(B). Aliens subject to expedited removal procedures may also challenge those procedures in this District under the terms of Section 1252(e)(3), provided they have standing to do so. But if judicial review of any of Plaintiffs' claims is authorized by Section 1252(e)(3), Section 1252(e)(1)(B) likewise bars class certification. *See O.A. v. Trump*, 404 F. Supp. 3d 109, 158 (D.D.C. 2019) (recognizing class-certification bar of such claims).

For these reasons, Plaintiffs' intended class is not readily identifiable by objective criteria and fatally overbroad by attempting to include individuals who may not suffer the same alleged injuries or who otherwise are not entitled to class wide relief. The Court should thus not grant class certification.

## CONCLUSION

For the foregoing reasons, the Plaintiffs' Motion for class certification should be denied.

Respectfully submitted,

BRETT A. SCHUMATE
Assistant Attorney General

DEVIN BARRETT
Senior Litigation Counsel

_/s/ Brendan T. Moore_
BRENDAN T. MOORE
Trial Attorney
Office of Immigration Litigation
Civil Division
U.S. Department of Justice
202.880.0330


Attorneys for Defendants