# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

ANNER ARIEL CORDON-SALGUERO, )
Petitioner, )
)
vs. ) CIVIL CASE NO. 1:25-cv-01626-GLR
)
KRISTI NOEM, et al, )
Respondents. )

WEDNESDAY, JUNE 18, 2025
Courtroom 7A
Baltimore, Maryland

MOTIONS HEARING

BEFORE: THE HONORABLE GEORGE L. RUSSELL, III, Chief Judge

**On Behalf of the Petitioners**:

SIMON SANDOVAL-MOSHENBERG, ESQUIRE
4103 Chain Bridge Road, Suite 300
Fairfax, VA 22030

**On Behalf of the Respondents**:

TOM CORCORAN, ESQUIRE
REBECCA ANN KOCH, ESQUIRE
Office of the United States Attorney
36 South Charles Street, Fourth Floor
Baltimore, MD 21201

(Computer-aided Transcript of Stenotype Notes.)

Reported by: Kassandra L. McPherson, RPR
Federal Official Court Reporter
101 W. Lombard Street, 4th Floor
Baltimore, MD 21201
(410) 962-4544

Mr. Corcoran, anything else from you, sir?

MR. CORCORAN: Nothing.

THE COURT: Hold on one second.

**(Off the record.)**

THE COURT: Yes. Mr. Corcoran?

MR. CORCORAN: Nothing further, Your Honor.

THE COURT: All right. Pending before the Court is Petitioner Anner Ariel Cordon-Salguero's petition for release from detention via writ of habeas corpus under 28 USC § 2241. The petition is ripe for review.

From a procedural history standpoint, Petitioner initially brought four claims on May 20, 2025. Habeas corpus under 28 USC § 2241, violation of the withholding of removal statute; 8 USC 1231(b)(3)(A), and three procedural due process violations under the Fifth Amendment, and four substantive due process violations under the Fifth Amendment.

Based upon the Government's statement that the Petitioner will not be removed to Guatemala, rather will be removed to Mexico, the third country pursuant to DVD procedures. Petitioner voluntarily dismissed, and this Court will grant, without prejudice, all claims except as claimed for habeas corpus.

Petitioner requests the Court issue a writ of habeas corpus and order the Petitioner released from physical custody.

On June 4, 2025, the Respondents filed a response in

opposition to Petitioner's application for writ of habeas corpus, motion to dismiss, or alternatively to state proceedings, that's ECF Number 8, which the Court construes as an answer to the Petitioner's application for writ of habeas corpus.

Petitioner filed a reply in support of the petition on June 12, 2025, ECF Number 12. And Respondent's filed a surreply on June 16 of 2025, ECF Number 17.

The Court finds the Petitioner is a native and citizen of Guatemala. He has no basis for immigration status in any other country.

Petitioner entered the United States on July 11, 2015. On May 7, 2018, Petitioner was ordered removed from the United States and granted an Order of Withholding of Removal to his native country of Guatemala.

Five months later, on October 9, 2018, Petitioner was placed on an Order of Supervision that ordered him released under certain conditions, including checking in with ICE annually, which he did without fail.

As a condition of his Order of Supervision, Petitioner was also given Employment Authorization Document pursuant to 8 CFR § 274(a)(2)(C)(18) with which he was able to work legally in the United States.

At no time did ICE ask Petitioner to take any specific steps to facilitate third-party removal. Petitioner currently

lives, and the Court finds, in Cockeysville, Maryland with his partner and U.S. citizen child. He has become imbedded in the community and has been law-abiding ever since his release.

On May 20, 2025, this Court finds Petitioner presented to the Baltimore ICE office for a routine check-in, or what he believed to be a routine check-in, when his Order of Supervision was canceled and he was arrested without any forewarning and detained at the Baltimore ICE office.

The Government revoked the Petitioner's Order of Supervised Release without any notice or opportunity for a hearing.

The Petitioner was served with a notice that ICE intended to remove him to Mexico, and that he reasonably requested a reasonable fear interview from removal to Mexico. To date, no such referral for such an interview has been scheduled by ICE, nor has a date been set.

The petitioner is currently detained in Kay County Detention Center in Newkirk, Oklahoma.

Section 28 USC -- I'm sorry. 28 USC § 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is in custody in violation of the constitutional laws or treaties of the United States.

This court has jurisdiction to hear this matter.

In *Zadvydas*, the Supreme Court held § 2241 habeas corpus proceedings remain viable as a form for statutory and constitutional challenges to post-removal period detention. 53

U.S. 678, 688, 2001.

8 USC § 1252(b) does not restrict habeas jurisdiction over challenges to detention. *Jennings v. Rodriguez*, 583 U.S. 281, 292-293, 2018.

The Court finds that the District of Maryland, and concludes that the District of Maryland is the appropriate venue to hear this case. Jurisdiction over an action under 28 USC 2241 lies in the federal district court where the petitioner was confined at the time his petition was filed.

Here, Mr. Cardon-Salguero was detained in the Baltimore ICE office when he filed his habeas petition. As such, this court shall retain jurisdiction over this matter despite his subsequent detention in Newkirk, Oklahoma.

Turning to the merits, and in light of the Petitioner's voluntary dismissal of Counts Two through Four, the Government's argument that this action should be dismissed and stayed due to Petitioner's membership in the DVD class is moot. The DVD preliminary injunction only covers removal and the procedures by which the government must give notice and an opportunity to seek relief therefrom, does not cover issues related to detention pending such procedures.

To the extent that the Government seeks to dismiss or stay this action on the basis of the DVD action, their request is denied.

The Court concludes, as for the remaining habeas corpus

claim, 8 USC § 1231(a) permits the Government to detain an individual who is ordered removed during the removal period, which is defined as the 90-day period during which the Attorney General shall remove the alien from the United States, 8 USC § 1231(a)(1)(A), with two exceptions not relevant here.

The removal period begins on the date the Order of Removal becomes administrative final, 8 USC § 1231(a)(1)(B)(i).

The Government does concede, or at least believes it concedes, and if not, the Court concludes that the Petitioner's Order of Removal was final in 2018. The 90-day removal period is tolled and extended only if the alien fails to or refuses to make timely application in good faith for travel, or other documents necessary for the alien's departure, or conspires or acts to prevent the alien's removal subject to an order of removal, 8 USC § 1231(a)(1)(C). The statute contains no provisions for pausing, reinitiating, or refreshing the removal period after the 90-day clock runs to zero. Or to zero.

The Court finds that under the clear language of the statute, and based upon the Government's arguments, Petitioner's 90-day removal period began to run on May 7, 2018, and expired on August 2018. May 7, 2018, and expired on August -- in August 2018.

Under § 1231(a)(6) the Court concludes ICE may only continue to detain beyond the removal period for three categories of individuals:

Those who are inadmissible to the United States pursuant to 8 USC § 1182;

Those who are subject to certain grounds of removability from the United States pursuant to 8 USC § 1227, including felony convictions; or

3. Those who immigration authorities have determined to be a risk to the community or unlikely to comply with the order of removal.

*Zadvydas,* the Supreme Court established a rebuttal presumption that six months could be deemed a presumptively reasonable period, after which the burden shifts to the government to justify continued detention. Any presumptively reasonable sentence -- reasonable six months extended detention to which the government may have been entitled to expire -- may have been entitled, expired, at the latest, October 2018 since Petitioner was placed on the Order of Supervision on October 9, 2018.

Petitioner has complied with all the required ICE check-ins. The Government has shown no reason why it did not pursue removal of Petitioner until more than seven years after his Order of Removal was entered. The Court cannot accept the Government's contention that it could arbitrarily trigger the removal period. And the Court does not conclude the removal period tolled because the 90-day removal period and the 180-day presumptively reasonable post-removal detention lapsed seven

years ago, or elapsed seven years ago, the Government then cannot detain Petitioner without finding he is a risk to the community or unlikely to comply with the order of removal. 8 USC § 1231(a)(6).

There is no reason to believe Petitioner is a flight risk or danger to the community. The Government has already released Petitioner previously because they determined, at least in part, he was not a flight risk or danger to the community. They allowed him to be imbedded in the community and indeed allowed him to work in the community, which he has done so. And it turns out the Government was correct. For seven years Petitioner has complied with his Order of Supervised Release in every aspect and indeed was detained while complying with the order.

The Supreme Court has made clear that continued detention is allowed only where the detention is reasonably related to a legitimate government purpose. Mainly securing noncitizens removal from the United States.

The Court finds that Petitioner has met his burden under *Zadvydas* to provide good reason to believe that there is no significant likelihood of removal in the reasonable, foreseeable future.

The Government has failed to respond with any evidence sufficient to rebut that showing. The Government does not claim the Petitioner will indeed be removed from the United States

within any reasonable foreseeable future, but rather the case is under current review by the Government of Mexico for issuance of a travel document.

There is no information, and the government cannot present any information today as to who sent the request for travel document, who received the request for a travel document, where the Petitioner is in the queue related to the travel document. And even if the claim for a travel document would be made by the Mexican government.

The Petitioner does not have a claim to immigration status in Mexico, and the Government has provided no articulable facts to show that Mexico will accept the Petitioner for removal. There's no evidence that relevant travel documents, as indicated, can or have been obtained.

Even if Petitioner's accepted in Mexico, the Government has presented no evidence that he would be allowed to remain there. Continued detention is therefore not reasonably related to a legitimate government purpose and is unlawful.

Under 8 CFR § 2414(l)(2), only an Executive Associate Commissioner for a district director may revoke release. 8 CFR § 241.4(l)(1)(7), allows an Order of Supervision to be revoked by the, quote, Executive Associate Commissioner where the noncitizen violates conditions of release.

A district director may revoke release only when certain findings are made specifically. Revocation is in the public

interest and circumstances do not reasonably permit referral of the case to the Executive Associate Commissioner. 8 CFR § 241.4(l)(2).

The statute states that upon revocation the alien will be notified of the reasons for the revocation of his or her release or parole. Here, the Court concludes no such findings were made, and that the Notice of Revocation of Release was not signed by the Executive Associate Commission, nor even the district director. It was someone who is unknown to the officer in the court at this time, signed this with no proof of any delegated authority to do so.

It was signed by a deportation officer for Respondent Nikita Baker, the ICE Baltimore field office director. And as indicated, there was no evidence that was presented to this Court regarding an expressed delegation of authority.

The Court also concludes that the Government did not provide a permissible basis for the Petitioner's Order of Supervision to be terminated, and did not provide the necessary informal interview which must be conducted promptly after supervision is revoked. Both 8 CFR § 2414(l)(2) and 8 CFR § 241.13(i)(3) require that upon revocation of supervised release the noncitizen must be notified of the reasons for revocation of his or her release and require ICE to conduct an informal interview promptly after their return to ICE custody to afford the noncitizen an opportunity to respond to and dispute the

reasons underlying the revocation.

After one month in detention, or approximately one month in detention, Petitioner's not been afforded an initial interview to challenge the reasons for his detention, nor has he been given adequate reasons for his detention. Indeed, the Notice of Revocation merely states that a review of his alien file has been conducted and a determination that there are changed circumstances in your case. That is it. That is all that was provided. Nothing else.

Likewise, 8 CFR § 208.31(b) which requires Petitioner's reasonable fear interview, to explain his fear of removal to Mexico, is to be scheduled within 10 days. This has not been done. ICE has not referred his case for such an interview in compliance with the particular regulation. No interview has even been scheduled.

Under the Accardi doctrine, when an agency fails to follow its own procedures or regulations the agency's actions are generally invalid.

The Court concludes that the Government has failed to follow the procedures as set out in the appropriate CFR, and its revocation of Petitioner's release is unlawful for reasons cited above.

The Court finds and concludes that the Petitioner is entitled to a writ of habeas corpus and his petition will be granted.

The removal period set forth has expired. The Petitioner has met his burden of providing good reason to believe that there is no significant likelihood of removal in the reasonable, foreseeable future, which the Government has not rebutted because the Government has not demonstrated that there is any country which the Petitioner can be eminently removed.

Finally, the Government's revocation of the Petitioner's Order of Supervision contravenes the INA in the applicable regulations. The writ of habeas corpus will issue and the Petitioner shall be released from detention and restored to his Order of Supervision previously imposed before his detention.

The Government's motion to dismiss and motion to stay are denied as moot in light of the Petitioner's voluntarily dismissal, without prejudice, of his violation of the withholding of removal statute and due process claims.

I will issue an order forthwith, consistent with this Court's memorandum opinion.

I will mandate that the Petitioner be released from the Baltimore ICE office where he was taken from custody, and from which this Court had jurisdiction, by Friday at 5 p.m.

Counsel, is there anything else that we can productively handle before we conclude?

MR. SANDOVAL-MOSHENBERG: Nothing from the Petitioner. Thank you, Your Honor.

THE COURT: Mr. Corcoran?