**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

| | |
|---|---|
| D.N.N. and V.R.G.<br><br>*Petitioners-Plaintiffs*,<br><br>v.<br><br>NIKITA BAKER, et al.<br><br>*Respondents-Defendants*. | Case No. 1:25-cv-01613 |

# REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..... ii

INTRODUCTION ..... 1

ARGUMENT ..... 1

I. Defendants' Standing Argument Fails Because Plaintiffs Were Detained in the Baltimore Hold Rooms When They Filed the Class Action Complaint ..... 1

II. Defendants' Mootness Argument Fails Under the Inherently Transitory Exception ..... 1

III. Rule 23 Requirements for Class Certification Have Been Satisfied ..... 4

A. The Proposed Class Is So Numerous That Joinder Is Impracticable ..... 4

B. The Class Presents Common Questions of Law and Fact and Satisfies Rules 23(a)(2) and 23(b)(2) ..... 5

C. The Claims of the Named Plaintiffs are Typical of the Claims of the Members of the Proposed Class ..... 10

D. The Named Plaintiffs Adequately Protect the Interests of the Proposed Class ..... 12

IV. Arguments Concerning Habeas Class Relief Are Irrelevant ..... 13

V. The Class Definition is Not Overbroad. ..... 13

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Al Otro Lado v. Exec. Off. for Immigr. Rev.*,
138 F.4th 1102 (9th Cir. 2025) .......... 10

*Am. Ass'n of Colleges for Tchr. Educ. v. McMahon*,
770 F. Supp. 3d 822 (D. Md. 2025) .......... 1

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .......... 12

*Biden v. Texas*,
597 U.S. 785 (2022) .......... 9

*Boley v. Brown*,
10 F.3d 218 (4th Cir. 1993) .......... 8

*Casa Inc. v. Noem et al.*,
No. 25-cv-1484, 2025 WL 1907378 (D. Md. July 10, 2025) .......... 9, 10

*Cnty. of Riverside v. McLaughlin*,
500 U.S. 44 (1991) .......... 1, 3

*Colon v. Passaic Cnty*,
No. 08-cv-4439 DM, 2009 WL 1560156 (D.N.J. May 27, 2009) .......... 6

*Connor v. Md. Dep't of Health*,
No. 24-cv-1423, 2025 WL 1167846 (D. Md. Apr. 22, 2025) .......... 11

*Correas v. Bond*,
No. 20-cv-0780, 2020 WL 5593338 (D. Md. Sept. 18, 2020) .......... 3, 11

*D.B. v. Cardall*,
826 F.3d 721 (4th Cir. 2016) .......... 8

*Deiter v. Microsoft Corp*,
436 F.3d 461 (4th Cir. 2006) .......... 11

*Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*,
95 F.4th 181 (4th Cir. 2024) .......... 8

*Frazier v. Prince George's Cnty.*,
86 F.4th 537 (4th Cir. 2023) .......... 1, 3

*Freund v. McDonough*,
114 F.4th 1371 (Fed. Cir. 2024) .......... 3

*G.T. v. Bd. of Educ. of Cnty. of Kanawha*,
117 F.4th 193 (4th Cir. 2024) ........ 8

*Garland v. Aleman Gonzalez*,
596 U.S. 543 (2022) ........ 9, 10

*Genesis Healthcare Corp. v. Symczyk*,
569 U.S. 66 (2013) ........ 2

*Gerstein v. Pugh*,
420 U.S. 103 (1975) ........ 3

*J.D. v. Azar*,
925 F.3d 1291 (D.C. Cir. 2019) ........ 3

*J.O.P. v. U.S. Dep't of Homeland Sec.*,
338 F.R.D. 33 (D. Md. 2020) ........ 11

*Jennings v. Rodriguez*,
583 U.S. 281 (2018) ........ 8, 10

*Jonathan R. by Dixon v. Just*,
41 F.4th 316 (4th Cir. 2022) ........ 2, 3

*Mons v. McAleenan*,
No. 19-cv-1593 (JEB), 2019 WL 4225322 (D.D.C. Sept. 5, 2019) ........ 4

*Nat'l TPS All. v. Noem*,
773 F. Supp. 3d 807 (N.D. Cal. 2025) ........ 10

*Parsons v. Ryan*,
754 F.3d 657 (9th Cir. 2014) ........ 6, 7, 8, 11

*Patton v. Fitzhugh*,
131 F.4th 383 (6th Cir. 2025) ........ 3

*Pennsylvania Nat'l Mut. v. Kirson*,
525 F. Supp. 3d 628 (D. Md. 2021) ........ 4

*Phila. Yearly Meeting of Religious Soc'y of Friends v. U.S. Dep't of Homeland Sec.*,
767 F. Supp. 3d 293 (D. Md. 2025) ........ 9

*Postawko v. Mo. Dep't of Corr.*,
910 F.3d 1030 (8th Cir. 2018) ........ 5, 7, 12

*Quadrelli v. Moniz*,
No. 20-cv-10685-ADB, 2020 WL 3051778 (D. Mass. June 8, 2020) ........ 6, 12

*Robinson v. Nationstar Mortg. LLC*,
No. 14-cv-3667, 2019 WL 4261696 (D. Md. Sept. 9, 2019) ........ 11

*Rosales-Garcia v. Holland*,
322 F.3d 386 (6th Cir. 2003) .......... 9

*Sanchez v. McAleenan*,
No. 19-cv-1728, 2024 WL 1256264 (D. Md. Mar. 25, 2024) .......... 10

*Sanchez v. McAleenan*,
No. 19-cv-1728, 2020 WL 5849491 (D. Md. Sept. 30, 2020) .......... 11

*Texas v. United States*,
50 F.4th 498 (5th Cir. 2022) .......... 10

*U.S. Parole Comm'n v. Geraghty*,
445 U.S. 388 (1980) .......... 2

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .......... 5, 6

*West v. Gobeille*,
450 F. Supp. 3d 497 (D. Vt. 2020) .......... 7

*Williams v. City of Philadelphia*,
270 F.R.D. 208 (E.D. Pa. 2010) .......... 7

*Zadvydas v. Davis*,
533 U.S. 678 (2001) .......... 8

**Statutes and Other Authorities**

8 U.S.C. § 1252(f)(1) .......... 9, 10

Common-Question Requirement Post Wal-Mart, 7A Fed. Prac. & Proc. Civ. § 1763.1
(4th ed.) .......... 5

2 Newberg and Rubenstein on Class Actions § 4:40 (6th ed.) .......... 5

Barrón-López, Laura, *GOP gives ICE massive budget increase to expand Trump's deportation effort*, PBS (July 8, 2025), https://www.pbs.org/newshour/show/gop-gives-ice-massive-budget-increase-to-expand-trumps-deportation-effort .......... 4

Fed. R. Civ. P. 23(a)(2) .......... 5

Fed. R. Civ. P. 23(a)(3) .......... 11

Fed. R. Civ. P. 23(a)(4) .......... 12

Fed. R. Civ. P. 23(b)(2) .......... 5, 7, 8

Fed. R. Civ. P. 23(b)(3) .......... 7

## INTRODUCTION

In their opening brief (ECF No. 31-1, "Mot."), Petitioner-Plaintiffs' ("Plaintiffs") cited numerous cases certifying injunction-only classes in disputes over unlawful detention conditions. Remarkably, Respondent-Defendants' ("Defendants") Opposition (ECF No. 46, "Opp.") does not (i) address any of Plaintiffs' cited case law or (ii) identify a *single decision* denying certification in a case addressing detention conditions. Defendants have put forth no meaningful opposition. This Court should grant Plaintiffs' motion and certify a class comprised of all persons who are now or in the future will be detained at the Baltimore Hold Rooms (the "BHR").

## ARGUMENT

### I. Defendants' Standing Argument Fails Because Plaintiffs Were Detained in the Baltimore Hold Rooms When They Filed the Class Action Complaint

Defendants argue that the named Plaintiffs lack "standing" because they are no longer detained at the BHR. Opp. at 9-10. But "[s]tanding is concerned with the presence of injury, causation, and redressability at the time a complaint is filed, whereas mootness scrutinizes the presence of these elements after filing . . . ." *Am. Ass'n of Colleges for Tchr. Educ. v. McMahon*, 770 F. Supp. 3d 822, 844 (D. Md. 2025) (internal quotation and citation omitted) (Rubin, J.). The named Plaintiffs have standing to challenge conditions at the BHR because they were held there at the time of filing this action. *See, e.g., Cnty. of Riverside v. McLaughlin*, 500 U.S. 44, 51 (1991); *see also* Reply in Support of Preliminary Injunction, ECF No. 36 at 3-4.

### II. Defendants' Mootness Argument Fails Under the Inherently Transitory Exception

Under the inherently transitory exception, a named plaintiff's class claim challenging temporary detention conditions "isn't moot even though they've been released . . . since they filed their complaint." *Frazier v. Prince George's Cnty.*, 86 F.4th 537, 543, n.2 (4th Cir. 2023); *see also Riverside*, 500 U.S. at 45 (because temporary detention cases are "inherently transitory . . . the

'relation back' doctrine is properly invoked to preserve the merits of the case for judicial resolution"); *see also* Mot. at 17-18.

In an effort to circumvent this exception,[1] Defendants misquote the Supreme Court's decision in *Genesis* as holding that "the relation back doctrine is 'explicitly limited to cases in which the named plaintiff's claim remains live at the time the district court [considers] class certification.'" Opp. at 12. But the quoted language from *Genesis* did not address the inherently transitory exception. Rather, it addressed a separate principle from *U.S. Parole Comm'n v. Geraghty* and stated that "*Geraghty*'s holding was explicitly limited" to those circumstances. *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 67 (2013). This is unsurprising; *Geraghty* held only that a named plaintiff remains "a proper representative for the purpose of appealing [a] ruling denying certification of the class" even if their individual claim is moot. 445 U.S. 388, 407 (1980).

The Court in *Genesis* did separately discuss the inherently transitory exception, noting that it comes from "a separate, but related, line of cases" from *Geraghty*. 569 U.S. at 75. The Court found the exception inapplicable based solely on the fact that the plaintiff in *Genesis* "requested statutory damages. Unlike claims for injunctive relief . . . a claim for damages cannot evade review." *Genesis*, 569 U.S. at 77. For this precise reason, the Fourth Circuit has rejected any suggestion that *Genesis* modified the inherently transitory exception. See *Jonathan R. by Dixon v. Just*, 41 F.4th 316, 326 n.2 (4th Cir. 2022) (*Genesis* involved a request for "statutory damages" and "[w]e accordingly read *Genesis* to continue to apply *Gerstein*'s 'inherently transitory' exception as it has always been understood[.]").[2]

---

[1] Plaintiffs do not rely on the independent "capable of repetition, yet evading review" exception, and Defendants' arguments about that exception (Opp. at 10-11) are inapposite.

[2] Notably, *Jonathan R.* itself applied the inherently transitory exception to preserve the claims of plaintiffs who were released from foster care in December 2019 (No. 19-cv-00710, 2021 WL

The law is clear that the transitory exception applies where, as here, "at the time the [relevant] complaint was filed" the plaintiffs "were being held in custody," such that "plaintiffs' injury was at that moment capable of being redressed through injunctive relief. *Riverside*, 500 U.S. at 51; *see also Frazier*, 86 F.4th at 543 n.2 (claim "isn't moot even though they've been released . . . *since they filed their complaint*.") (emphasis added); *Patton v. Fitzhugh*, 131 F.4th 383, 396, 399 (6th Cir. 2025), *petition for cert. filed* (U.S. July 11, 2025) (No. 25-50) ("a class-certification motion need not be pending . . . to assert the 'inherently transitory' exception to mootness" because "filing of [the] class-action complaint" itself is "enough to save the claims from being mooted").[3]

Next, Defendants claim the inherently transitory exception cannot apply because Plaintiffs cannot demonstrate "other class members have a continuing and live interest in the case." Opp. at 11. But the case law does not require any evidentiary showing to satisfy this condition. In *Gerstein*, for example, the Supreme Court found the condition satisfied solely because "[t]he attorney representing the named respondents is a public defender, and we can safely assume that he has other clients with a continuing live interest in the case." *Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975). And in *Jonathan R.*, the Fourth Circuit found this condition was satisfied by the allegations of the Complaint alone. 41 F.4th at 326 ("'the constant existence of a class of persons suffering the deprivation is certain' on *the facts alleged*") (emphasis added) (citation omitted); *see also J.D. v. Azar*, 925 F.3d 1291, 1311–12 (D.C. Cir. 2019) (condition satisfied because "plaintiffs represent that about a dozen expressed an interest in abortion or related information").

---

3195020, at *3-4 (S.D. W. Va. Jul. 28, 2001)), long before they filed their class certification motion on September 2, 2020 (3:19-cv-00710, S.D. W. Va., ECF No. 130). *See also Correas v. Bond*, 20-cv-0780, 2020 WL 5593338, at *2 (D. Md. Sept. 18, 2020) (refusing to apply the exception to a plaintiff who was released before the filing of the "Class Petition," the operative complaint in a class habeas action, not a later "Motion for Class Certification and Expedited Bail Hearings.").

[3] *Freund v. McDonough*, 114 F.4th 1371, 1379 (Fed. Cir. 2024) (for the inherently transitory exception, "the mootness question is considered as it stood when the complaint was filed").

In any event, Plaintiffs have submitted declarations detailing continuing unlawful conditions experienced by 15 individuals detained in the BHR in each of February, March, April, May, June, and July of 2025. *See* ECF Nos. 6-2, 31-2; 31-5, 31-6, 31-7, 31-8, 31-9, 31-10, 31-11, 31-12, 31-13, 31-14, 31-15; 56-1.[4] And *while this motion was pending,* Defendants have extended the period of permitted detention at the BHR (ECF No. 40-3) while continuing to radically increase arrest quotas.[5] *See*, *e.g.*, *Mons v. McAleenan*, No. 19-cv-1593, 2019 WL 4225322, at *8 (D.D.C. Sept. 5, 2019) ("Plaintiffs present substantial evidence that the New Orleans Field Office continues to detain a great number of the members of the proposed class[.]"). Plaintiffs have thus clearly established "that purported injuries to other class members will persist[.]" Opp. at 11.

Finally, Defendants suggest the exception does not apply because Plaintiffs cannot establish typicality for Rule 23 purposes. Defendants do not identify any authority for conditioning application of the inherently transitory exception on a typicality inquiry. Even if they could, Plaintiffs have satisfied typicality for the reasons stated in Section III.C below.

## III. Rule 23 Requirements for Class Certification Have Been Satisfied

### A. The Proposed Class Is So Numerous That Joinder Is Impracticable

Plaintiffs have satisfied the numerosity requirement (Mot. at 10-11). Defendants do not dispute this and "thus have conceded the point." *Pennsylvania Nat'l Mut. v. Kirson*, 525 F. Supp. 3d 628, 634 (D. Md. 2021). According to Defendants themselves, there are as many as 100

---

[4] Defendants ask the Court to ignore testimony from 13 declarants because they were detained in the past and thus are not in the class of "people who will in the future be detained at the Holding Facility." Opp. at 12 n.2. But whether the declarants may themselves be detained in the future is irrelevant; their testimony is evidence of pervasive, *ongoing,* unlawful conditions. Moreover, testimony from previously detained individuals is the only possible evidence of conditions. People who have not *yet* been detained would have no knowledge of conditions at the BHR.

[5] Barrón-López, Laura, *GOP gives ICE massive budget increase to expand Trump's deportation effort*, PBS (July 8, 2025), https://www.pbs.org/newshour/show/gop-gives-ice-massive-budget-increase-to-expand-trumps-deportation-effort.

people detained in the BHR at a time, with a daily average of 60 to 65 in May and June 2025. ECF No. 40-1 at ¶¶ 11-12.

### B. The Class Presents Common Questions of Law and Fact and Satisfies Rules 23(a)(2) and 23(b)(2)

"Historically, Rule 23(b)(2) class actions have been used as a vehicle to vindicate civil rights violations" including specifically "actions by prisoners alleging that prison conditions violate the Eighth and Fourteenth Amendments." Civil and constitutional rights cases, 2 Newberg and Rubenstein on Class Actions § 4:40 (6th ed.) (collecting cases). Defendants do not dispute this principle, nor do they cite even a *single decision* denying 23(b)(2) certification for an injunction only class action challenging unlawful detention conditions.

Rather than engage with the relevant body of case law, Defendants rely on *Wal-Mart Stores, Inc. v. Dukes*, a Title VII employment discrimination case which: (i) denied certification under 23(b)(2) because the plaintiffs made "individualized monetary claims," 564 U.S. 338, 362 (2011), and (ii) found 23(a)(2) commonality lacking because the Plaintiffs alleged that discrimination arose from "the discretionary decisionmaking of each one of Wal–Mart's thousands of managers" rather than uniform employment policies. *Id.* at 345.

Wal-Mart thus poses no basis for denying class certification here. "While a putative class seeking damages for [constitutional violations] claims might struggle to satisfy Rule 23(a)(2), a class certified under Rule 23(b)(2) seeking only injunctive and declaratory relief suffers no such difficulty." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1038–39 (8th Cir. 2018) (affirming certification of prisoner class action); *see also* The Common-Question Requirement Post Wal-Mart, 7A Fed. Prac. & Proc. Civ. § 1763.1 (4th ed.) ("numerous prisoner suits challenging an unlawful or unconstitutional course of conduct by prison officials have met the Rule 23(a)(2) standard") (collecting cases).

For example, in *Parsons v. Ryan*, inmates sought injunctive relief to address inadequate medical care and other unlawful conditions of confinement. 754 F.3d 657 (9th Cir. 2014). There, the defendants made identical arguments that "conditions-of-confinement claims are inherently case specific and turn on many individual inquiries," and that this was "an insurmountable hurdle for a commonality finding" because *Wal–Mart* instruct that "dissimilarities between class members 'impede the generation of common answers." *Id*. at 675. The court, however, found that "[t]he defendants' view rests. . . on a fundamental misunderstanding of *Wal–Mart* . . . and the plaintiffs' constitutional claims." *Id*. at 676. As the court explained:

> [A]ll members of the putative class . . . have in common [] their alleged exposure, as a result of specified statewide ADC policies and practices that govern the overall conditions of health care services and confinement, to a substantial risk of serious future harm to which the defendants are allegedly deliberately indifferent . . . although a presently existing risk may ultimately result in different future harm for different inmates—ranging from no harm at all to death—every inmate suffers exactly the same constitutional injury . . .
>
> The putative class . . . thus all set forth numerous common contentions whose truth or falsity can be determined in one stroke: whether the specified statewide policies and practices to which they are all subjected by ADC expose them to a substantial risk of harm . . . These policies and practices are the "glue" that holds together the putative class . . . either each of the policies and practices is unlawful as to every inmate or it is not. That inquiry does not require us to determine the effect of those policies and practices upon any individual class member (or class members) or to undertake any other kind of individualized determination.

*Id*. at 678; *see also Quadrelli v. Moniz*, No. 20-cv-10685, 2020 WL 3051778, at *5 (D. Mass. June 8, 2020) (finding class certification proper where inmates "have alleged a general risk of harm due to a policy or practice, even if there might additionally be a unique or distinct impact as to an individual putative class member"); *Colon v. Passaic Cnty*, No. No. 08-cv-4439 DM, 2009 WL 1560156, at *3 (D.N.J. May 27, 2009) ("Plaintiffs constitutional claims . . . all arise out of the overcrowding and otherwise squalid conditions alleged to exist at PCJ. Each of these claims . . . require the demonstration of common proofs relating to the detainment conditions at PCJ.");

*Williams v. City of Philadelphia*, 270 F.R.D. 208, 215 (E.D. Pa. 2010) ("Class members need not . . . have all actually suffered the injury alleged in the complaint . . . that overcrowding affects each class member differently (or not at all) is therefore insufficient to defeat class certification.").

Here, Plaintiffs have submitted evidence that Defendants have adopted policies and practices violating the APA and Fifth Amendment "on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). As the Court explained in *Parsons*

> These requirements are unquestionably satisfied when members of a putative class seek uniform injunctive or declaratory relief from policies or practices that are generally applicable to the class as a whole . . . That inquiry does not require an examination of the viability or bases of the class members' claims for relief, does not require that the issues common to the class satisfy a Rule 23(b)(3)-like predominance test, and does not require a finding that all members of the class have suffered identical injuries . . . Rather, as the text of the rule makes clear, this inquiry asks only whether "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Rule 23(b)(2).

754 F.3d at 688.

Defendants dispute the existence of certain policies concerning the provision of hygiene items, inadequate food and water, and medical care. Opp. at 16-18 (describing plaintiffs' asserted policies as "merely argumentative suppositions."). But Plaintiffs' have adduced overwhelming evidence of these policies and, in any event, a dispute over the existence of a policy is itself a common factual issue suitable for a 23(b)(2) class action. See *West v. Gobeille*, 450 F. Supp. 3d 497, 511 (D. Vt. 2020) (common issues include "identifying the precise boundaries of Defendants' policy or practice"); *Postawko*, 910 F.3d at 1040 (certifying class and explaining that "Defendants may continue to challenge the existence and parameters of the alleged policy at trial").

And while Defendants dispute the merits of Plaintiffs' claims, this Court "determines whether the Rule 23 requirements have been satisfied without considering whether the proposed

class is likely to prevail on the merits." *Elegant Massage, LLC v. State Farm Mut. Auto. Ins. Co.*, 95 F.4th 181, 188 (4th Cir. 2024); *see also G.T. v. Bd. of Educ. of Cnty. of Kanawha*, 117 F.4th 193, 214 n.7 (4th Cir. 2024) (Wynn, J., *concurring*) ("The question of whether" a policy is illegal "will yield the same answer . . . regardless of whether the answer is yes or no. So, that merits question is irrelevant to our review of class certification."); *Parsons*, 754 F.3d at 676 n.19 (we do "not require proof that the putative class will prevail on [any] common questions it identifies.").

Next, Defendants suggest the "Supreme Court has [] questioned whether a Rule 23(b)(2) class action litigated on common facts is an appropriate way to resolve Due Process Clause claims." Opp. at 18. But Defendants' cited authorities address procedural due process, not the *substantive* due process rights at issue here.[6] *See D.B. v. Cardall*, 826 F.3d 721, 740 (4th Cir. 2016) ("The substantive component of due process bars certain government actions regardless of the fairness of the procedures used to implement them.") (internal quotation omitted).

And Defendants again conflate procedural and substantive due process by arguing that "not all putative class members are entitled to the same due process protections" because the class may include noncitizens subject to expedited removal orders. Opp. at 19. While noncitizens in expedited removal are entitled to far fewer *procedural* protections in immigration proceedings, once detained they are entitled to the same level of medical care, food, water, sleep, and other conditions as any other civilly detained individual. *See Zadvydas*, 533 U.S. 678, 694 (noncitizens are entitled to "substantive protections" from "punitive measures" as distinct from "procedural

[6] *Jennings v. Rodriguez* (i) did not address a motion for class certification and (ii) simply directed the lower court to consider on remand whether variation in "procedural protections" available to different classes of noncitizens might undermine the 23(b)(2) class as defined in that case. 583 U.S. 281, 314 (2018). *Zadvydas v. Davis* discussed "procedural protections" and did not address class certification at all. 533 U.S. 678, 694 (2001). And *Boley v. Brown* addressed monetary recoupment claims contending that mortgagees did not receive adequate notice of foreclosures. 10 F.3d 218, 223 (4th Cir. 1993).

protections" for having their removability determined). If noncitizens "were not protected by even the substantive component of constitutional due process, as the government appears to argue, we do not see why the United States government could not torture or summarily execute them." *Rosales-Garcia v. Holland*, 322 F.3d 386, 410 (6th Cir. 2003) (*en banc*).

Next, Defendants cite to *Garland v. Aleman Gonzalez*, 596 U.S. 543, 550 (2022) to argue that class wide relief is unavailable because "a classwide injunction order requiring additional process would be inconsistent with [8 U.S.C. §] 1252(f)(1)." Opp. at 19-20. But as the Supreme Court has clarified, "Section 1252(f)(1) deprives courts of the power to issue a specific category of remedies: those that 'enjoin or restrain the operation of' the relevant sections of the [INA]." *Biden v. Texas*, 597 U.S. 785, 786 (2022). This provision only prohibits classwide relief that enjoins or restrains the operation of "the provisions of part IV of subchapter II of the Immigration and Nationality Act [INA]." *Aleman Gonzalez*, 596 U.S. at 549–50; *Casa Inc. v. Noem et al*., No. 25-cv-1484, 2025 WL 1907378, at *12 (D. Md. July 10, 2025) (same).

Defendants do not cite any provision in Section IV of the INA that would be restrained by an order, for example, requiring that detained individuals receive adequate medical care, access to mattresses, or adequate food. The law is clear that 1252(f)(1) applies only where the injunction directly addresses the relevant provisions, and "a court may enjoin [] unlawful" conduct "even if that injunction has some collateral effect on the operation of a covered provision [of the INA]." *Aleman Gonzalez*, 596 U.S. at 553 n.4; *Philadelphia Yearly Meeting of Religious Soc'y of Friends v. U.S. Dep't of Homeland Sec*., 767 F. Supp. 3d 293, 319 (D. Md. 2025) (same).

In this case, requiring Defendants to follow their own Policy or cease imposing punitive detention conditions in no way prevents them from engaging in arrests or detention of noncitizens. While ordering such relief could have collateral consequences (requiring Defendants

to, for example, provide the BHR with additional resources or to secure additional space suitable for residential detention), that would not trigger 1252(f)(1). And the Supreme Court has notably rejected any suggestion that the INA limits Court's authority to order relief addressing "inhumane conditions of confinement." *Jennings*, 583 U.S. at 293.

Finally, Defendants' 1252(f)(1) argument is simply irrelevant to Plaintiffs' APA claims. *See Aleman Gonzalez*, 596 U.S. at 571 (Sotomayor, J., concurring) ("the Court does not purport to hold that § 1252(f)(1) affects courts' ability to 'hold unlawful and set aside agency action, findings, and conclusions' under the Administrative Procedure Act"); *Texas v. United States*, 50 F.4th 498, 528 (5th Cir. 2022) ("§ 1252(f)(1) does not apply to vacatur" under the APA); *Nat'l TPS All. v. Noem*, 773 F. Supp. 3d 807, 826 (N.D. Cal. 2025) ("No court has adopted the construction of § 1252(f)(1)" preventing the issuance of relief under the APA).[7]

### C. The Claims of the Named Plaintiffs are Typical of the Claims of the Members of the Proposed Class

To challenge typicality, Defendants argue that "neither of the named Plaintiffs claims to have suffered most of the injuries alleged in the Amended Complaint[.]" Opp. at 21. Defendants notably make this argument solely as to Fifth Amendment injuries. They do not dispute that the named Plaintiffs were held for over 12-hours at the BHR due to Defendants' unlawful suspension of the Policy and have alleged any relevant injuries for their APA and *Accardi* claims.

As to Fifth Amendment clams, Plaintiff D.N.N. suffered unsanitary conditions and crowding in addition to inadequate medical care, food, and conditions of sleep. Justiniano Decl. ¶¶ 5-7 (ECF No 1-15). And Plaintiff R.G. suffered unsanitary conditions as well as inadequate

---

[7] Courts have also repeatedly rejected Defendants' unsupported contention (Opp. at 20) that 1252(f)(1) prohibits declaratory relief. *See, e.g., Al Otro Lado v. Exec. Off. for Immigr. Rev.*, 138 F.4th 1102, 1123 (9th Cir. 2025); *Sanchez v. McAleenan*, No. 19-cv-1728, 2024 WL 1256264, at *15 (D. Md. Mar. 25, 2024); *Casa*, 2025 WL 1907378, at *12 (collecting cases).

medical care, food, water, and conditions of sleep. Hyde Decl. ¶¶ 4-9 (ECF No. 6-2). Thus, the named Plaintiffs collectively experienced each of the injuries alleged on behalf of the Class in Counts 3 through 6 of the Complaint. *See* ECF No. 6 at pp. 21-26.

More importantly, however, Defendants misconstrue the typicality inquiry in a 23(b) injunction-only class challenge to unlawful policies.[8] In such cases, "[v]ariations among the specific harms and risks sustained by each Plaintiff and class member individually" do not undermine typicality because plaintiffs seek only "injunctive relief that will apply evenly to each Plaintiff and each member of the proposed class." *Id.* at *12. *Connor v. Md. Dep't of Health*, No. 24-cv-1423, 2025 WL 1167846, at *12 (D. Md. Apr. 22, 2025); *J.O.P. v. U.S. Dep't of Homeland Sec.*, 338 F.R.D. 33, 56 (D. Md. 2020) (typicality found because "regardless of their individual differences, each prospective class member pursues the same claims for the same result . . . an order enjoining the application of those policies.") (internal citation omitted); *Sanchez v. McAleenan*, No. GJH-19-1728, 2020 WL 5849491, at *5 (D. Md. Sept. 30, 2020) (a "claim may differ factually and still be 'typical' of the claims of class members if 'it arises from the same ... course of conduct that gives rise to the claims of other class members.") (citation omitted).

For this reason, courts routinely find typicality satisfied in cases seeking only injunctive relief from unlawful detention policies. *See, e.g., Coreas*, 2020 WL 5593338, at *13 (the "efforts of any particular Petitioner to advance this claim by proving such unconstitutional conditions will 'simultaneously tend to advance the interests of the absent class members.'") (citation omitted); *Parsons*, 754 F.3d at 686 ("It does not matter that the named plaintiffs may have in the past suffered varying injuries . . . Rule 23(a)(3) requires only that their claims be 'typical' of the class,

[8] Defendants rely (Opp. at 20) on inapposite cases addressing typicality for 23(b)(3) classes seeking monetary damages. *Robinson v. Nationstar Mortg. LLC*, No. 14-cv-3667, 2019 WL 4261696, at *18 (D. Md. Sept. 9, 2019); *Deiter v. Microsoft Corp*, 436 F.3d 461, 468 (4th Cir. 2006).

not that they be identically positioned to each other or to every class member"); *Postawko*, 910 F.3d at 1039 ("In this suit for prospective injunctive and declaratory relief, the potential for minor 'factual variations' does not undermine" typicality); *Quadrelli v. Moniz*, No. 20-cv-10685, 2020 WL 3051778, at *6 (D. Mass. June 8, 2020) ("Movants are thus typical of the class in that they are exposed to the same risks of being detained in Unit C-3 as other class members and because their alleged harm arises out of 'the same events or course of conduct'").

**D. The Named Plaintiffs Adequately Protect the Interests of the Proposed Class**

Defendants dispute adequacy on two grounds,[9] neither of which are supported by relevant case law. First, Defendants dispute adequacy because "Plaintiffs alleged injuries lack commonality and typicality." Opp. at 24. For the reasons stated in sections III.B-C, this argument fails.

Second, Defendants argue that "there is reason to doubt [the named plaintiffs] fully understand their representational responsibilities." Opp. at 23. But "the adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). The language that Defendants cite from *Amchem* addressed a conflict of interest in settlement negotiations between: (i) class members who had developed injuries from asbestos, for whom "the critical goal [was] generous immediate payments," and (ii) those who had not yet suffered injuries, for whom the goal was "an ample, inflation-protected fund for the future." *Id.* at 626. In the context of that conflict, the Court found that "either in the terms of the settlement or in the structure of the negotiation . . . the named plaintiffs [did not] operate[] under a proper understanding of their representational responsibilities" to these differently situated class members. *Id.* at 627. Here, Defendants do not and cannot identify any conflict at all; both the named plaintiffs and putative

---

[9] Defendants do not contest and thus concede that Plaintiffs' attorneys satisfy the requirements for serving as class counsel. *See* Mot. at 15-16.

class members seek identical injunctive relief.[10]

## IV. Arguments Concerning Habeas Class Relief Are Irrelevant

Plaintiffs have not asserted any habeas class claims and do not seek certification in connection with habeas. Defendants' argument about habeas (Opp. at 24) is simply irrelevant.

## V. The Class Definition is Not Overbroad.

Defendants argue that the Class is overbroad but do not cite a single relevant supporting authority. Instead, Defendants rely on *Stafford v. Bojangles' Restaurants, Inc.*, which simply refused to certify a 23(b)(3) wage and hour class because "some class members may lack any off-the-clock or time-shaving claim against Bojangles." 123 F.4th 671, 681 (4th Cir. 2024).

Both common sense and the *relevant* case law foreclose Defendants' argument that including individuals "'who . . . will be detained' is [in]sufficiently defined for purposes of resolving the proposed class claims." Opp. at 25. In this injunction-only case, the court will not be required to identify specific individuals who "will be detained" in the future for notice or damages purposes. And because this case addresses unlawful conditions in a *temporary* detention facility, excluding individuals who "will be detained" would render any injunction worthless in a matter of days. Moreover, this class definition is materially identical to definitions approved in countless cases challenging detention conditions. *See*, *e.g.*, *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 210 (N.D. Cal. 2015) ("[a]ll current and future adult immigration detainees who are or will be held by ICE in Contra Costa County[.]"); *Decoteau v. Raemisch*, 304 F.R.D. 683, 690 (D. Colo. 2014) ("All inmates who are now or will in the future be housed in administrative segregation at the Colorado State Penitentiary[.]"; *Olson v. Brown*, 284 F.R.D. 398, 415 (N.D.

---

[10] As a factual matter, the named Plaintiffs clearly understand their responsibilities as evidenced by their agreement to testify at the forthcoming hearing on this motion and the motion for preliminary injunction. And the Court is welcome to probe their understanding at that time.

Ind. 2012) ("any and all persons currently confined, or who will in the future be confined, in the Tippecanoe County Jail.").[11]

Finally, Defendants argue that the class definition is overbroad because it may include noncitizens who received expedited removal orders, and "1252(e)(1)(B)'s bar on class certification applies to the claims of any proposed class member who was processed for an expedited removal order under Section 1225(b)." Opp. at 26-27. But Section 1252(e)(1)(B) provides that "no court may . . . certify a class under Rule 23 of the Federal Rules of Civil Procedure in *any action for which judicial review is authorized under . . . this subsection*." 8 U.S.C. § 1252(e)(1)(B). The actions that are authorized under this subsection include only (i) habeas claims challenging expedited removal orders (§1252(e)(2)) and (ii) challenges to regulations implementing the expedited removal "system" (§1252(e)(3)). This lawsuit seeks neither form of relief.

Nor is there any merit to Defendants' claim that 8 U.S.C. § 1252 prevents the court from hearing this case because it "provide[s] that there is no judicial review of any claims 'arising from or relating to the implementation or operation of an order of removal pursuant to section 1225(b)(1).'" Opp. at 26. The Supreme Court has already rejected the notion that a challenge to conditions of confinement "arises" from a removal order for the purposes of the INA's jurisdiction stripping provisions. *See Jennings*, 583 U.S. at 293 (while statute precluded review of claims that "'aris[e] from' the actions taken to remove these aliens," it had no bearing on cases

[11] *See also Colon v. Passaic County*, No. 08-cv-4439, 2009 WL 1560156, at *2 (D.N.J. May 27, 2009) ("all persons who are now or will become incarcerated at [Passaic County Jail] during the pendency of this lawsuit"); *Vandehey v. Vallario*, No. 06-1405, 2008 WL 697428, at *21 (D.Colo. Mar. 13, 2008) ("[a]ll persons who, now or at any time in the future, are or will be prisoners in the custody of the Garfield County Sheriff's Department"); *S.H. v. Taft*, No. 04-cv-1206, 2007 WL 1989753, at *5 (S.D. Ohio July 9, 2007) ( "[a]ll persons who are or who will be committed to the legal custody of the Department of Youth Services (DYS) and housed in one of its facilities[.]").

challenging "inhumane conditions of confinement"). A claim does not arise from a removal where, as here, Plaintiffs "are not asking for review of an order of removal; they are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined." *Id.*, at 294.

**CONCLUSION**

For the reasons stated, Plaintiffs respectfully request that the Court certify this case as a class action as proposed by Plaintiffs, appoint Plaintiffs as class representatives, and appoint Plaintiffs' counsel as class counsel.

Dated: July 21, 2025

Respectfully submitted,

*/s/ Jared A. Levine*
Jared A. Levine (NY Bar No. 4897211)*
Daniella Schmidt (NY Bar No. 5186283)**
Luke Taeschler (NY Bar No. 5308325)**
Emily Werkmann (NY Bar No. 5750229)**
**CROWELL & MORING LLP**
375 9th Ave, 44th Floor
New York, NY 10001
(212) 223-4000
JLevine@crowell.com
DSchmidt@crowell.com
LTaeschler@crowell.com
Ewerkmann@crowell.com

Jerome A. Murphy (D. Md. Bar No. 27678)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2895
JMurphy@crowell.com

Ian Austin Rose (D. Md. Bar No. 22079)
Daniel Melo (N.C. Bar No. 48654)*
Amelia Dagen (D.C. Bar No. 90004838)
**AMICA CENTER FOR IMMIGRANT RIGHTS**
1025 Connecticut Ave. NW
Suite 701
Washington, DC 20036
(202) 788-2509
Austin.rose@amicacenter.org
Dan.melo@amicacenter.org
Amelia@amicacenter.org

Sirine Shebaya (D. Md. Bar No. 07191)
Matthew Vogel (LA Bar No. 35363)*
Yulie Landan (CA Bar No. 348958)*
**NATIONAL IMMIGRATION PROJECT**
1763 Columbia Rd. NW
Suite 175 #896645
Washington, DC 20009
(202) 656-4788
sirine@nipnlg.org
matt@nipnlg.org
yulie@nipnlg.org

*Pro bono counsel for Plaintiffs*

*Admitted *pro hac vice*
** *Pro Hac Vice* forthcoming