**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

<table>
<tr><td>

D.N.N. and V.R.G.

*Petitioners-Plaintiffs*,

v.

NIKITA BAKER, et al.

*Respondents-Defendants*.

</td><td>

Case No. 1:25-cv-1613

</td></tr>
</table>

**PETITIONERS-PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER**
**SUPPORT OF MOTION FOR EXPEDITED BAIL HEARINGS**

# Contents

TABLE OF AUTHORITIES.................................................................................................. 3

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 1

    I.    This Court has Jurisdiction to Adjudicate Petitioners' Motion and the Underlying Petition for a Writ of Habeas Corpus. .................................................................................. 1

    II.   Petitioners Have Shown a High Probability of Success on the Merits. ............................. 3

       A.   Petitioners Have Standing to Challenge the No Release Policy and Have Shown that the Policy Violates the APA ................................................................................. 3

       B.   Petitioners Were Denied the Due Process They are Owed When ICE Revoked Their Release Without Notice or Explanation ................................................................. 7

       C.   Respondents Do Not Claim Petitioners' Detention Serves a Legitimate Purpose When Petitioners Have Shown Their Removal is Not Reasonably Foreseeable Under *Zadvydas* ... 9

       D.   Respondents Have No Statutory Authority to Detain Petitioners Beyond the 90-Day Removal Period.................................................................................................... 12

    III.   Petitioners Have Shown Exceptional Circumstances that Justify Their Release on Bail. 13

CONCLUSION.................................................................................................................. 15

## TABLE OF AUTHORITIES

**Federal Cases**

*Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703 (S.D. Tex. 2020)..........................10

*Bennett v. Spear*, 520 U.S. 154 (1997)..........................................................................5

*Ceesay v. Kurzdorfer,* No. 25-cv-267, 2025 WL 1284720 (W.D.N.Y. May 2, 2025) ...............7, 8

*Cesar v. Achim*, 542 F. Supp. 2d 897 (E.D. Wisc. 2008) ..........................................10

*City of New York v. U.S. Dep't of Def.*, 913 F.3d 423 (4th Cir. 2019) ..........................5

*Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112 (9th Cir. 2009) ..................5

*Cordon-Salguero v. Noem*, 1:25-cv-1626 (D. Md. June 18, 2025)......................2, 9, 13

*County of Riverside v. McLaughlin*, 500 U.S. 44 (1991) ..............................................10

*Ex Parte Endo*, 323 U.S. 283 (1944) ............................................................................2

*Garland v. Aleman Gonzalez*, 596 U.S. 543 (2022) ......................................................3

*Hamdi v. Rumsfeld*, 542 U.S. 507, 524 (2004).............................................................7

*Hoang Trinh v. Homan*, 333 F. Supp. 3d 984 (C.D. Cal. 2018)..................................10

*Jones v. Zych*, 812 Fed. Appx. 115 (4th Cir. 2020) ......................................................2

*Khalil v. Joyce*, 1:25-cv-1935 (S.D.N.Y. Mar. 19, 2025) .............................................2

*Lennear v. Wilson*, 937 F. 3d 257 (4th Cir. 2019) ........................................................2

*Mayle v. Felix*, 545 U.S. 644 (2005) ............................................................................3

*Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452 (D. Md. 2019) .........5

*Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857 (D.C. Cir. 2008).......................................3

*Munoz-Saucedo v. Pittman*, No. 1:25-cv-2258, 2025 WL 1750346 (D.N.J. June 24, 2025).. 10, 12

*Ortega v. Bonnar*, 415 F. Supp. 3d 963 (N.D. Cal. 2019)............................................7

*Ozturk v. Hyde*, 136 F.4th 382 (2d Cir. 2025) ............................................................2

*Ozturk v. Trump*, -- F. Supp. 3d --, 2025 WL 1420540 (D. Vt., May 16, 2025) ..................2, 15

*Plyler v. Doe*, 457 U.S. 202 (1982)...............................................................................7

*Rocha Rosado v. Figueroa,* No. CV 25-02157, 2025 WL 2337099 (D. Ariz. Aug. 11, 2025) .......8

*Rocha Rosado v. Figueroa*, No. CV-25-02157, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025) .......8

*Rumsfeld v. Padilla*, 542 U.S. 426 (2004)................................................................1, 2

*Sanchez-Hernandez v. Figueroa et al*, No. 2:25-cv-2351 (D. Az. Filed July 15, 2025)...............11

*Santiago Jimenez v. Crawford*, 1:25-cv-1199 (E.D. Va. Aug. 20, 2025) ......................12

*Tadros v. Noem*, 2:25-cv-4108, 2025 WL 1678501 (D.N.J. June 13, 2025)................10

*Tran v. Baker*, 2025 WL 2085020 (D. Md. July 24, 2025) ........................................8, 11

*United States v. White*, 366 F.3d 291 (4th Cir. 2004).................................................8

*Young v. Harper,* 520 U.S. 143 (1997) ..........................................................................7

*Zadvydas v. Davis*, 533 U.S. 678 (2001).................................................................9, 10

**Federal Statutes**

8 U.S.C. § 1231(a)(6)....................................................................................................12

*Hernan Ortega v. Kaiser*, No. 25-cv-0529 (N.D. Cal. Aug. 6, 2025)...........................15

**Rules**

Fed. R. Civ. P. 15(c)(B)................................................................................................. 3

**Federal Regulations**

8 C.F.R. § 241.4(l)..................................................................................................... 4

## INTRODUCTION

In support of their motion for expedited bail hearings ("Mot.", ECF No. 53-1), Petitioner-Plaintiffs ("Petitioners") raised multiple challenges to their re-detention by ICE and their ongoing detention that separates them from their children, communities, and adequate medical care for their chronic health conditions. Petitioners demonstrate that Respondents' No Release Policy deprived them of an individualized assessment as to the appropriateness of their detention and that Respondents failed to afford them due process in revoking their Orders of Supervision ("OSUP"). These failures invalidate Petitioners' re-detention and render their subsequent and ongoing detention constitutionally deficient. Furthermore, Petitioners' removal is not reasonably foreseeable, and their detention serves no legitimate purpose.

As they languish needlessly in detention, Petitioners continue to be deprived of critical medical care, exposing both Petitioners to life-threatening outcomes. Instead of meaningfully responding to Petitioners' arguments and evidence, Respondents seek to artificially restrict this Court's jurisdiction to hear Petitioners' claims and repeatedly miss the mark on their legal arguments. Because Respondents offer no valid argument as to why Petitioners should be subjected to ongoing detention without any individualized assessment as to the need for such detention, Petitioners request that this Court provide that individualized assessment through bail hearings.

## ARGUMENT

### I.  This Court has Jurisdiction to Adjudicate Petitioners' Motion and the Underlying Petition for a Writ of Habeas Corpus.

Venue is proper for adjudication of a petition for writ of habeas corpus if the habeas case is filed in the judicial district where the petitioner is located "at the time of bringing the action." *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004). Any subsequent transfer of the petitioner outside the judicial district where they filed their petition does not deprive the Court of jurisdiction, and

Respondents' arguments to the contrary are unavailing. *See, e.g. id.* at 441; *Ozturk v. Trump*, -- F. Supp. 3d --, 2025 WL 1420540, at *1–2 (D. Vt., May 16, 2025).

Respondents argue that "Plaintiffs' claims challenging their confinement should be dismissed for lack of jurisdiction because they are no longer confined in the District of Maryland." Respondent's Opposition ("Opp.") at 4.[1] However, Respondents cite to *Padilla* without acknowledging that a petitioner's relocation after a "properly file[d]" habeas petition does not deprive a district court of jurisdiction. 542 U.S. at 441 (citing *Ex Parte Endo*, 323 U.S. 283 (1944)). Furthermore, Respondents fail to acknowledge the plethora of cases affirming that holding. *See e.g. Cordon-Salguero v. Noem*, 1:25-cv-1626 at 31 (D. Md. June 18, 2025) (ECF No. 53-2) ("[Petitioner] was detained in the Baltimore ICE office when he filed his habeas petition. As such, this court shall retain jurisdiction over this matter despite his subsequent detention in Newkirk, Oklahoma."); *Ozturk*, -- F. Supp. 3d, at *1–2, *aff'd Ozturk v. Hyde*, 136 F.4th 382, 392 (2d Cir. 2025) (retaining jurisdiction after transfer); *Khalil v. Joyce*, 1:25-cv-1935, ECF No. 78, at 27–31 (S.D.N.Y. Mar. 19, 2025) (finding venue proper in the District of New Jersey, regardless of petitioner's subsequent transfer to Louisiana); *Jones v. Zych*, 812 Fed. Appx. 115, 117 n. 3 (4th Cir. 2020) (affirming that prisoner's transfer outside the district after filing a habeas "did not render the case moot or deprive the district court of jurisdiction."); *Lennear v. Wilson*, 937 F. 3d 257, 263 n. 1 (4th Cir. 2019) (same).

---

[1] Respondents also cite *J.G.G.* for the proposition that challenges to ongoing detention must be brought in habeas. Opp. at 4 (citing *Trump v. J.G.G.*, 145 S. Ct. 1003, 1005 (2025)). This is precisely what Petitioners did—they brought their initial challenge as a Class Action Complaint for Declaratory Relief, Complaint for Injunctive Relief, and *Petition for Writ of Habeas Corpus* on May 8, 2025 while both Petitioners were detained at the Baltimore Hold Rooms, *see* ECF No. 1 (emphasis added), and later amended their claims. ECF No. 52. *See also* ECF No. 6 at 27 (Prayer for relief h: "Issue a writ of habeas corpus ordering Ms. N.N.'s and Ms. R.G.'s immediate release from ICE custody[.]").

On a practical level, Respondents' argument is untenable: detained noncitizens are transferred regularly and if courts were stripped of jurisdiction after noncitizens were transferred out of the district, Respondents could avoid every habeas adjudication simply by transferring the petitioner to a new facility after they filed their habeas petition. *See Garland v. Aleman Gonzalez*, 596 U.S. 543, 570 (2022) (Sotomayor, J., concurring in the judgment in part and dissenting in part) (noting regular and repeated transfers of noncitizens).

In the instant matter, both Petitioners were physically detained by ICE at the Baltimore Hold Rooms at the time they filed the original Complaint and Petition for Writ of Habeas Corpus on May 9, 2025. ECF No. 1, 6. Petitioners later amended their Complaint and Petition to add counts to their pre-existing habeas petition. ECF No. 52. Under Fed. R. Civ. P. 15(c)(B), amendments relate back to the date of the original pleading when they "assert[] a claim or defense that arose out of the conduct, transaction, or occurrence set out . . . in the original pleading." *See also Mayle v. Felix*, 545 U.S. 644, 657 (2005) (amendments to habeas petitions relate back when the amended claims arise from the "same core facts as the timely filed claims."); *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir. 2008). Since Petitioners challenged their arrest and detention in their original Petition, their subsequent amendments relate back to the date of the original filing, when they were both physically in Baltimore. Therefore, this Court has clear jurisdiction to adjudicate Petitioners' motion and underlying petition.

## II. Petitioners Have Shown a High Probability of Success on the Merits.

### A. Petitioners Have Standing to Challenge the No Release Policy and Have Shown that the Policy Violates the APA.

As an initial matter, Respondents claim there is "little support" that the No Release Policy exists, Opp. 9–10, despite their own previously-filed evidence in which they confirm the existence of this policy. *See* ECF No. 40-3 ("ERO field offices *no longer* have the option to discretionarily

3

release [noncitizens]. . . ).” (emphasis added)). Respondents do not provide an alternative explanation for this evidence, nor do they deny that such a policy exists and is currently in effect.

Instead, Respondents erroneously claim that Petitioners have no standing to challenge the No Release Policy because they have not suffered a cognizable injury-in-fact insofar as they have no legal right to discretionary release. Opp. at 10. However, Respondents' entire argument rests on a fundamental misunderstanding: Petitioners have never claimed that the injury suffered was deprivation of discretionary release, but rather the deprivation of an *individualized assessment* regarding the appropriateness of detention versus discretionary release. *See* Petitioners' Motion for Bail Hearings ("Mot.") at 11–12. Such an individualized assessment for noncitizens in Petitioners' posture is mandated by ICE's own regulations. *See, e.g.,* 8 C.F.R. § 241.4(l) (requiring individualized notice and an interview when a noncitizen's release is revoked). Respondents do not allege or provide any evidence that such an assessment occurred when Petitioners were detained in May. Opp. at 10. Respondents' argument that Petitioners were re-detained to "enforce their orders of removal" is inapposite as it has no bearing on the injury sustained by Petitioners, namely the denial of an individualized assessment regarding the necessity of detention. *Id*. Thus, Respondents fail to meaningfully contest that the deprivation of an individualized assessment is a legally protected interest, not one that is "hypothetical or conjectural,"[2] and that Petitioners were denied their right to such an assessment. Opp. at 11.

---

[2] Notably, Respondents seem to imply that Petitioners have no standing to challenge the No-Release Policy because they were previously released on OSUPs. Opp. at 10. This is erroneous because [1] that decision pre-dated the Policy and the re-detention at question in Petitioners' motion; and [2] even if the OSUPs were relevant, it defies logic that accessing a legally protected right to an individualized assessment at one point means the noncitizen is not entitled to future individualized assessments.

Respondents also erroneously argue that Petitioners failed to show redressability. Opp. at 11. But the redressability is clear: were this Court to find that the No Release Policy is unlawful, this would invalidate Petitioners' re-detention pursuant to that unlawful policy and mandate an individualized assessment of the appropriateness of their detention. Notably, Respondents did not meaningfully contest Petitioners' submitted evidence demonstrating that they are not a danger or a flight risk, nor did Respondents provide any evidence that would counsel in favor of continued detention. As Respondents have failed to provide Petitioners with an individualized assessment of the need for further detention, Petitioners ask this Court to perform its own individualized assessment through conducting bail hearings for each Petitioner.

Respondents' misapprehension of the relevant injury resulting from the No Release Policy also taints their arguments regarding final agency action. Respondents claim there is no final agency action because the relevant action is the decision to release or detain any individual noncitizen. Opp. at 12. This is incorrect. The challenged action is the nationwide policy that binds all field offices without leaving room for any exercise of discretion. *See* Mot. at 13 (citing *Colwell v. Dep't of Health & Hum. Servs.*, 558 F.3d 1112, 1124 (9th Cir. 2009)); *see also Bennett v. Spear*, 520 U.S. 154, 178 (1997) (final agency action marks the "consummation of the agency's decisionmaking process" and determines "legal consequences."). As a result, the No Release Policy does, in fact, impermissibly curtail the legal rights of noncitizens to receive an individualized assessment, differentiating the No Release Policy from non-reviewable day-to-day operational decisions. *Compare* Opp. at 12, *with* Mot. at 13; *see City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019) (finding final agency action when "the challenged act had an immediate and practical impact, or alter[ed] the legal regime in which it operates."); *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 501 (D. Md. 2019) (finding final agency

action when USCIS updated its manual with a change in policy for visa applicants because the changes presented an "authoritative" position and altered a legal regime).

Finally, insofar as Respondents discuss the merits of Petitioners' Administrative Procedures Act ("APA") challenges to the No Release Policy, they once more miss the mark. Opp. at 13. Respondents nonsensically reference Petitioners' arguments in their Complaint about ICE's Hold Room Policy, ECF No. 1-8 (Hold Room Policy), but that is not the policy at issue in this motion. Meanwhile, the No Release Policy absolutely bears on Petitioners' re-detention and the "duration of time they are confined." Opp. at 13. If Petitioners were deprived of an individualized assessment at the time of their initial re-detention in May, it is irrelevant if the resulting detention occurred in the Baltimore Hold Rooms, long-term residential facilities, or both. Moreover, each Petitioner remains detained within the jurisdiction of a different "ERO field office,"[3] evidently none of which can "discretionarily release" Petitioners due to the nationwide No Release Policy.

Petitioners were re-detained in May solely because ERO Baltimore was obligated by an unlawful policy to not consider discretionary release, and they remain detained because that same unlawful policy deprives their current field offices of the ability to release them. Respondents fail to meaningfully contest this reality, nor do they even bother to respond to Petitioners' separate arguments that the No Release Policy failed to undergo required notice-and-comment procedures. *See* Mot. at 10–15 (ICE failed to give notice and opportunity for comment on the No Release Policy, which is a new substantive rule not subject to APA notice-and-comment exemptions).

---

[3] Petitioner D.N.N. is detained in New Mexico within the jurisdiction of the El Paso Field Office and Petitioner V.R.G. is detained in Louisiana within the jurisdiction of the New Orleans Field Office.

**B. Petitioners Were Denied the Due Process They are Owed When ICE Revoked Their Release Without Notice or Explanation.**

Respondents unabashedly claim that noncitizens have no protected liberty interests in remaining free from detention where regulations grant ICE discretion to detain. Opp. at 5–6. Respondents cite no authority for this wide-reaching claim, and indeed none exists. *See Hamdi v. Rumsfeld*, 542 U.S. 507, 524, 533 (2004) (due process is required even when detention is "legally authorized"); *Plyler v. Doe*, 457 U.S. 202, 210 (1982) ("[E]ven [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[ ]."); *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019) ("The fact that a decision-making process involves discretion does not prevent an individual from having a protectable liberty interest.") (citing *Young v. Harper,* 520 U.S. 143, 150 (1997)); *Ceesay v. Kurzdorfer,* No. 25-cv-267, 2025 WL 1284720, at *1 (W.D.N.Y. May 2, 2025) ("This case raises the question of whether a noncitizen subject to a final order of removal and released on an order of supervision is entitled to due process when the government decides—in its discretion—to revoke that release. The Court answers that question simply and forcefully: Yes.").

While Respondents may have discretion to revoke an OSUP—as Petitioners have acknowledged, Mot. at 7–8—that discretion is not without limit. And even if the discretion to revoke an OSUP is itself not reviewable, courts "can address the process used to exercise that discretion." *Ceesay*, 2025 WL 1284720, at *10–11. In Petitioners' case, Respondents claim to have given Petitioners "an appropriate notice of revocation." Opp. at 6. However, Respondents provide absolutely no evidence to support this claim: they do not produce copies of this alleged notice, much less evidence that it was served on Petitioners or that it was signed by someone with the

authority to do so.[4] *See Ceesay*, 2025 WL 1284720, at *16; *compare with Tran v. Baker*, 2025 WL 2085020, at *1–2 (D. Md. July 24, 2025) (noncitizen received a Notice of Revocation of Release, produced for the record, that cited regulatory authority to revoke OSUP and indicated the grounds on which revocation was based). Indeed, because Respondents have not provided such evidence, it is unclear under what authority  Respondents revoked Petitioners' release.[5] Respondents further do not allege that either Petitioner was afforded an "opportunity to respond to the reasons for revocation," Opp. at 6, through an informal interview or otherwise.[6]

Thus, while this Court does not require "flawless . . . execution" from the government, Petitioners' re-detention must still be evaluated for overall reasonableness. *Tran*, 2025 WL 2085020, at *7. The Due Process Clause does not allow the government to unreasonably re-detain Petitioners after thirteen and eight years (respectively) of compliance with the conditions of their release, without any notice of revocation, any explanation as to the reason for the revocation, or any meaningful opportunity to contest the revocation. *Rocha Rosado v. Figueroa,* No. CV 25-02157, 2025 WL 2337099, at *13 (D. Ariz. Aug. 11, 2025), *report and rec. adopted sub nom. Rocha Rosado v. Figueroa*, No. CV-25-02157, 2025 WL 2349133 (D. Ariz. Aug. 13, 2025)

---

[4] *See* ECF No. 53-3, Declaration of D.N.N. at ¶ 3 (no paperwork or notice given at re-detention); ECF No. 53-4 Declaration of V.R.G. at ¶ 5 (same).

[5] Respondents seem to suggest that ICE revoked Petitioners' release under § 241.4 in order to "enforce a removal order," but this Court should not accept this post-hoc rationalization, which constitutes mere attorney argument without evidentiary support. *United States v. White*, 366 F.3d 291, 300 (4th Cir. 2004).

[6] It is undersigned counsel's understanding that both Petitioners were recently given notices regarding a 90-day custody review. Despite requests from undersigned counsel, no notices of any custody reviews have been provided to counsel by ICE. After Ms. R.G. was given a notice of custody review on August 10, 2025, no further action has been taken. Ms. N.N. was given a notice of custody review on July 30, 2025, and an ICE officer spoke with her and undersigned counsel over the phone about her custody on August 14, 2025, but no custody decision has been served on Ms. N.N or her counsel, despite repeated inquiries. Respondents notably do not even mention these purported custody reviews in their response brief, let alone argue that they satisfy the statute and regulations for post-order custody reviews.

(Petitioner was not afforded due process when she was re-detained "without prior notice, a showing of changed circumstances, or a meaningful opportunity to object."). To allow otherwise would permit the government to violate their own regulations as well as separately infringe on Petitioners' due process rights. In the same way that the unlawfulness of the No Release Policy invalidates Petitioners' re-detention, Respondents' clear violations of Petitioners' due process rights call for this Court to conduct an individualized analysis of Petitioners' detention.

    **C.   Respondents Do Not Claim Petitioners' Detention Serves a Legitimate Purpose When Petitioners Have Shown Their Removal is Not Reasonably Foreseeable Under *Zadvydas*.**

Respondents make no argument that Petitioners' ongoing detention serves either of the two permissible purposes of civil immigration detention: ensuring a noncitizen's appearance or preventing danger to the community. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); Opp. at 7–9. Indeed, as detailed in Petitioners' motion, they could not plausibly do so as both Petitioners have fully complied with their OSUPs for years while living with their families in Maryland, and neither was convicted of any crimes after they were released on their OSUPs. *See* Mot. at 9–10, 15–20. Thus, Respondents have waived any argument to the contrary.

Instead, Respondents attempt to create a bright-line test where none exists, arguing that any habeas petition brought under *Zadvydas* is categorically premature if filed before six months of detention has elapsed. Opp. at 7–9. Petitioners maintain that their six-month periods under *Zadvydas* have long since expired, as that period began to run alongside the 90-day removal period when Petitioners' orders of removal became final in 2012 and 2017 respectively. This contention is supported by Respondents' own concession that their 90-day removal period expired years ago. Opp. at 5; *Cordon-Salguero*, 1:25-cv-1626 at 33–34 (finding that the 90-day removal period and presumptively reasonable six-month period of detention expired ran immediately after the removal order became final); *Tadros v. Noem*, 2:25-cv-4108, 2025 WL 1678501 at *3 (D.N.J. June 13,

2025) (noting that the 90-day removal period elapsed after the order became administratively final, even though the petitioner was only detained for two days of that period).

But regardless, *Zadvydas* does not mandate a strict six-month rule. *See Zadvydas*, 533 U.S. at 699–701[7] (describing the presumption as a "guide"); *Munoz-Saucedo v. Pittman*, No. 1:25-cv-2258, 2025 WL 1750346, at *6 (D.N.J. June 24, 2025) ("[T]he Court rejects Respondents' argument that *Zadvydas* precludes Petitioner from challenging his detention prior to the six-month mark."); *Ali v. Dep't of Homeland Sec.*, 451 F. Supp. 3d 703, 706–07 (S.D. Tex. 2020) ("This six-month presumption is not a bright line, . . . and *Zadvydas* did not automatically authorize all detention until it reaches constitutional limits."); *Hoang Trinh v. Homan*, 333 F. Supp. 3d 984, 994 (C.D. Cal. 2018) ("The six-month *Zadvydas* presumption is just that—a presumption . . . not a prohibition on claims challenging detention less than six months." (internal quotation marks omitted)); *Cesar v. Achim*, 542 F. Supp. 2d 897, 903 (E.D. Wisc. 2008) ("The *Zadvydas* Court did not say that the presumption is irrebuttable."). If indefinite detention—i.e., detention where removal is not reasonably foreseeable—violates the Constitution, the Supreme Court could not have intended to allow unconstitutional detentions so long as they do not exceed six months. *Cesar*, 542 F. Supp. 2d at 904.

Furthermore, Respondents misrepresent Petitioners' argument and falsely claim that Petitioners have failed to establish good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Respondents unfairly characterize Petitioners' argument as saying that the mere fact that they have not yet been deported justifies release. Opp.

---

[7] The *Zadvydas* Court also expressly referred to the "similar" and *rebuttable* presumption in *County of Riverside v. McLaughlin*, 500 U.S. 44, 56–58 (1991), where the Court created the presumption that a 48-hour delay in a probable cause hearing after an arrest was reasonable and constitutionally permissible. *See Zadvydas*, 533 U.S. at 701; *Riverside*, 500 U.S. at 56.

at 8. That is untrue. In their motion, Petitioners accurately note that they cannot be removed to their countries of origin due to their respective grants of withholding of removal under the INA, that third country removals have been historically very rare, and that ICE has taken no steps to effectuate a third country removal after handing Petitioners a single-page document in early May claiming intent to remove them to Mexico. Mot. at 10. Respondents do not claim to have taken any other steps to remove either Petitioner to a third country: they do not claim for example, to have sent inquiries to Mexico or other countries to see if they would accept either Petitioner, requested travel documents for either Petitioner, moved to reopen either Petitioners' proceedings, or scheduled reasonable fear interviews to see if either Petitioner could be removed to a third country notwithstanding their fear of return. Opp. at 7–9; *see also* Mot. at 10, n. 8 (noting that Petitioners have both expressed fear of removal to Mexico, the only country that Respondents have indicated as a potential third country removal).[8] *Compare with Tran*, 2025 WL 2085020, at *2, 4 (ICE requested travel documents prior to re-detention, submitted evidence regarding success rate in requesting Vietnamese travel documents, and scheduled appointment with Vietnamese officials).

While both Petitioners are currently protected from removal under this Court's injunctive order, ECF No. 14, that in no way relieves Respondents of their obligations to ensure that Petitioners' detention serves one of the permissible purposes of civil immigration detention or to follow proper procedures for third country removals. Petitioners have demonstrated that their

---

[8] As of this filing, neither Petitioner has been given a Reasonable Fear Interview as to potential removal to Mexico or received any other notification regarding any other potential countries for third country removals. *See* Exhibit S, Supplemental Response in *Sanchez-Hernandez v. Figueroa et al*, No. 2:25-cv-2351, ECF No. 20 (D. Az. Filed July 15, 2025). Insofar as Respondents have taken any steps regarding third country removal to Mexico or any other country, Petitioners respectfully request that such information be made available at Petitioners' bail hearings.

11

removal is not reasonably foreseeable, and Respondents have produced no evidence or even made any allegations to the contrary. In *Munoz-Saucedo*, the petitioner alleged that his removal was not reasonably foreseeable when he showed that [1] he had been granted withholding of removal, [2] third country removals were historically rare, [3] ICE did not obtain travel documents for him, and [4] third country removals would trigger additional, lengthy proceedings. 12025 WL 1750346, at *6. The court there noted that as ICE had failed to "meaningfully contest" those allegations, they "would more than suffice to demonstrate that Petitioner's removal is not reasonably foreseeable, and therefore overcome the presumption that his [73-day] detention is reasonable." *Id.* at *7. Similarly here, Respondents have not meaningfully contested substantively identical claims made by Petitioners, who have thus demonstrated that their removal is not likely in the reasonably foreseeable future. *See also Santiago Jimenez v. Crawford*, 1:25-cv-1199, ECF No. 16 (E.D. Va. Aug. 20, 2025) (granting *Zadvydas* habeas after less than six months of detention).

### D. Respondents Have No Statutory Authority to Detain Petitioners Beyond the 90-Day Removal Period.

Respondents concede that the 90-day removal period for Petitioners concluded years ago, Opp. at 5, but misrepresent Petitioners' argument regarding the authority to re-detain them. Respondents argue that noncitizens detained under 8 U.S.C. § 1231(a)(6)—such as Petitioners— can be detained after the 90-day removal period concludes. Opp. at 5. Petitioners do not dispute that. Respondents had the authority under § 1231(a)(6) to detain Petitioners during and past the 90-day removal period when that period began to run, at the latest, in 2012 (for Ms. N.N.) and in 2017 (for Ms. R.G.). But Respondents declined to detain Petitioners for even the full 90-day removal period, let alone past it, and instead released both Petitioners on OSUPs. As Chief Judge Russell recently noted in *Cordon-Salguero*, § 1231 "contains no provisions for pausing, reinitiating, or refreshing the removal period after the 90-day clock runs to zero." No. 25-cv-1626

(ECF 53-2), at 32. Therefore, Respondents' previous authority to detain does not copy-paste into a present authority to re-detain, without an individualized custody determination, after the expiration of the 90-day removal period.

### III. Petitioners Have Shown Exceptional Circumstances that Justify Their Release on Bail.

Finally, Respondents wholly fail to engage with the substantial evidence Petitioners submitted with their motion showing exceptional circumstances justifying release on bail pending the adjudication of their habeas petitions. Opp. at 13–14. Instead, Respondents re-raise their flawed arguments regarding this Court's jurisdiction and argue that any experiences Petitioners have had after being transferred outside Maryland's borders are beyond this Court's reach. For the reasons stated above, this is plainly false. *See supra* Section I.  As such, this Court must consider Petitioners' significant evidence regarding the ongoing harms to their constitutional rights, health, families, and communities while they remain detained in ICE custody.

As described in their initial Motion, Petitioners are experiencing *per se* irreparable harm from their ongoing detention that violates their statutory and constitutional rights. *See* Mot. at 15–16. Furthermore, Respondents do not contest Petitioners' evidence regarding the exigent circumstances their children and families are facing without Petitioners, who were their primary caretakers and financial supporters. *See* Mot. at 18–19. Since Petitioners' motion, Ms. N.N.'s four-year-old daughter has also been officially diagnosed with autism, increasing her need for her mother, who has the needed experience to care for her and accommodate her diagnosis. Exhibit T.

Both Petitioners have also been deprived of adequate medical care in ICE custody, including for their chronic health conditions, such as diabetes, hyperthyroidism, depression, and anxiety. Mot. at 15–18. Respondents do not substantively contest this evidence. Since the time of their Motion, Petitioners have continued to experience medical neglect in ICE custody and ongoing

difficulties managing their chronic health conditions. Ms. N.N. recently contracted a urinary tract infection and has been deprived of Ozempic, her previously-prescribed medication for her Type II diabetes. Exhibit U, Letter from Dr. Sugarman for D.N.N. at ¶¶ 6, 9–11. Instead, ICE has only given Ms. N.N. Metformin to manage her diabetes, despite her "documented intolerance" and the fact that Metformin "should not be prescribed" to individuals with severe kidney disease, such as Ms. N.N. *Id*. at ¶¶ 9–11. The withholding of medication through which Ms. N.N.'s diabetes was well-managed "effectively denies D.N.N. access to appropriate and necessary medical care." *Id*. at ¶¶ 9, 11. Failure to manage diabetes appropriately can lead to "devastating and widespread health effects, including but not limited to: heart disease, strokes, . . . end-stage kidney disease, cataracts, glaucoma, retinal damage leading to blindness,. . . and dementia." *Id*. at ¶ 8. Ms. N.N. is also not receiving "any medications or treatments for her diagnosed Chronic Kidney Disease," which can lead to "nausea/vomiting, loss of appetite, fatigue and weakness, sleep problems, increased urination, muscle cramps, swelling of feet and ankles, itchy/dry skin, high blood pressure, shortness of breath, and chest pain." *Id*. at ¶¶ 12–15. Finally, Ms. N.N. is also being deprived of "any medications or treatments for her diagnosed hyperlipidemia," which can cause "narrowing of arteries that ultimately can result in a heart attack or strokes." *Id*. at ¶¶ 16–19.

Similarly, Ms. R.G.'s medical records show "a clear and urgent indicator of untreated or under-treated hypothyroidism" from a dramatic reduction in thyroid medication, which "can lead to extreme fatigue, depression, slow metabolism, cognitive difficulties, and even life-threatening complications like myxedema [severe hyperthyroidism that can lead to hypothermia, shock, or coma]." Exhibit V, Letter from Dr. Sugarman for V.R.G. at ¶¶ 6–10. Ms. R.G. is also in urgent need of evaluation by a cardiologist for an abnormal EKG, an endocrinologist for her diabetes and thyroid imbalance, and ongoing care after a significant upper respiratory infection. *Id*. at ¶¶ 11–

19. Without this care which she is not currently receiving, Ms. R.G. risks health risks, including "irreversible organ damage, cardiac events, respiratory failure, and even death." *Id.* at ¶ 19.

As evidenced by Petitioners' life-threatening medical conditions, as well as their families' ongoing struggle to survive without Petitioners, both Petitioners are exceptionally strong candidates for bail. Indeed, Petitioners' subjection to poor treatment for their health issues is directly analogous to the facts in *Ozturk*, where the court found extraordinary circumstances when detention "appeared to be exacerbating [petitioner's] underlying medical conditions [asthma]" and the testifying physician warned that petitioner's "asthma could be life-threatening is not properly managed." *Ozturk*, -- F. Supp. 3d --, 2025 WL 1420540, at *8; *see also Hernan Ortega v. Kaiser*, No. 25-cv-0529, ECF No. 11 at 11–12 (N.D. Cal. Aug. 6, 2025) (finding analogous irreparable harm when petitioner showed his detention separated him from his wife, who depended on him for emotional, psychological, financial, and logistical support.)

## <u>CONCLUSION</u>

Respondents misapprehend this Court's jurisdiction, the nature of the challenged action, and Petitioners' injury as a result of Respondents' actions. As a result, Respondents fail to rebut Petitioners' strong showing of substantial violations of their constitutional due process and statutory rights. As Petitioners have also demonstrated ongoing exceptional circumstances that make their grant of bail necessary to render a habeas remedy effective, Petitioners respectfully request that this Court conduct an individualized assessment of the need for ongoing detention and order their release on any conditions the Court deems appropriate. To facilitate this, Petitioners request that this Court schedule bail hearings for each Petitioner as expeditiously as possible. At the bail hearings, Petitioners are prepared to testify as to the exceptional circumstances they are currently facing, as well as to present testimony of relevant witnesses and experts such as Dr. Sugarman, the author of the medical reports at Ex. U, V.

Dated:  August 21, 2025                    Respectfully submitted,

*/s/ Amelia Dagen*
Amelia Dagen (D.C. Bar No. 90004838)*
Ian Austin Rose (D. Md. Bar No. 22079)
Daniel Melo (N.C. Bar No. 48654)*
**AMICA CENTER FOR IMMIGRANT RIGHTS**
1025 Connecticut Ave. NW
Suite 701
Washington, DC 20036
(202) 788-2509
Austin.rose@amicacenter.org
Dan.melo@amicacenter.org
Amelia@amicacenter.org


Sirine Shebaya (D. Md. Bar No. 07191)
Matthew Vogel (LA Bar No. 35363)*
Yulie Landan (CA Bar No. 348958)*
**NATIONAL IMMIGRATION PROJECT**
1763 Columbia Rd. NW
Suite 175 #896645
Washington, DC 20009
(202) 656-4788
sirine@nipnlg.org
matt@nipnlg.org
yulie@nipnlg.org

Jared A. Levine (NY Bar No. 4897211)*
Daniella Schmidt (NY Bar No. 5186283)**
Luke Taeschler (NY Bar No. 5308325)*
Emily Werkmann (NY Bar No. 5750229)*
**CROWELL & MORING LLP**
375 9th Ave, 44th Floor
New York, NY 10001
(212) 223-4000
JLevine@crowell.com
DSchmidt@crowell.com
LTaeschler@crowell.com
Ewerkmann@crowell.com


Jerome A. Murphy (D. Md. Bar No. 27678)
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2895
JMurphy@crowell.com

*Pro bono counsel for Plaintiffs*


\* Admitted *Pro Hac Vice*

\*\* *Pro Hac Vice Forthcoming*

16

## EXHIBIT LIST

Exhibit S      Supplemental Response in *Sanchez-Hernandez v. Figueroa et al*, No. 2:25-cv-2351, ECF No. 20 (D. Az. Filed July 15, 2025).

Exhibit T      Certified translation of autism diagnosis for O.E.C.N., Daughter of D.N.N. [redacted]

Exhibit U      Letter from Dr. Sugarman for D.N.N. and accompanying medical records [redacted]

Exhibit V      Letter from Dr. Sugarman for V.R.G. and accompanying medical records [redacted]

17