IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

D.N.N, *et al.*,

        *Petitioners-Plaintiffs*,

    v.                         Civil No.: 1:25-cv-01613-JRR

JEREMY BACON,[1] *et al.*,

        *Respondents-Defendants*.

## MEMORANDUM OPINION

This matter comes before the court on Respondent-Defendants'[2] Partial Motion to Dismiss. (ECF No. 89; the "Motion.")  The court has reviewed all papers; no hearing is necessary.  Local Rule 105.6 (D. Md. 2025).  For the reasons that follow, by accompanying order, the Motion will be granted in part and denied in part.

## I.    BACKGROUND[3]

### A.  Relevant Procedural Background

As the court discussed in its previous opinion at ECF No. 74, Petitioners-Plaintiffs[4] initiated this action on May 9, 2025, with the filing of a "Class Action Complaint for Declaratory Relief, Complaint for Injunctive Relief, and Petition for a Writ of Habeas Corpus."  (ECF No. 1.) Following two subsequent amendments, the Second Amended Class Action Complaint for Declaratory Relief, Complaint for Injunctive Relief, and Petition for a Writ of Habeas Corpus is

---

[1] Jeremy Bacon was recently named Acting Field Office Director for Immigration and Customs Enforcement's Baltimore Field Office.  Pursuant to Federal Rule of Civil Procedure 25(d), Madam Clerk shall substitute Jeremy Bacon for Nikita Baker as a Defendant in this action.

[2] For convenience, the court refers to Respondents-Defendants collectively as the "Government."

[3] For purposes of resolving the Motion, the court accepts as true all well-pled facts set forth in the Second Amended Complaint.  (ECF No. 52.)  *See Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017).

[4] For convenience, the court refers to Petitioners-Plaintiffs collectively as "Plaintiffs."  When this action was initiated on May 9, 2025, D.N.N. was the sole Plaintiff.  On May 12, 2025, an amended pleading was filed to include Plaintiff V.R.G.  (ECF No. 6.)

now operative.  (ECF No. 52; the "Second Amended Complaint.")   Plaintiffs assert violations of the Administrative Procedure Act ("APA") and the Fifth Amendment to the United States Constitution on behalf of themselves and all those similarly situated, namely "civilly detained people confined in U.S. Immigration and Customs Enforcement ('ICE') holding cells operated by ICE's Baltimore Field Office (the 'Baltimore Hold Rooms')."  *Id.* ¶ 1.  Following amendment and dismissal of certain counts, Plaintiffs presently assert seven causes of action:

> **Count I**: Violation of the APA, 5 U.S.C. § 706—Waiver of Policy;
>
> **Count II**: Violation of the Due Process Clause of the Fifth Amendment—Deviation from Policy;
>
> **Count III**: Violation of the Due Process Clause of the Fifth Amendment—Deprivation of Sleep;
>
> **Count IV**: Violation of the Due Process Clause of the Fifth Amendment—Deprivation of Hygienic and Sanitary Conditions;
>
> **Count V**: Violation of the Due Process Clause of the Fifth Amendment—Deprivation of Adequate Medical Care;
>
> **Count VI**: Violation of the Due Process Clause of the Fifth Amendment—Deprivation of Adequate Food and Water; and
>
> **Count VII**: Violation of the Due Process Clause of the Fifth Amendment and 8 U.S.C. § 1229a(b)—Deprivation of Access to Counsel.

(ECF No. 52 ¶¶ 74–132; ECF Nos. 112, 113.)

On July 25, 2025, the court denied without prejudice Plaintiffs' motion for class certification and denied as moot their motion for preliminary injunction as to the class.  (ECF Nos. 74, 75.)  Thereafter, it ordered expedited discovery in advance of Plaintiffs' forthcoming combined renewed motion for class certification and preliminary injunction.  (ECF No. 81.)  The Government now brings the instant Motion seeking partial dismissal of Plaintiffs' claims.  (ECF No. 89.)

### B. Relevant Factual Background

Given the breadth of the background set forth in the court's prior opinion, it offers an abbreviated background here tailored to the Government's challenges in the instant Motion.[5] D.N.N. and V.R.G. were initially detained at the Baltimore Hold Rooms on May 7 and 8, 2025, respectively.  (ECF No. 1-15 ¶ 2; ECF No. 6-2 ¶ 2.)  They both were detained at their routine check-ins.  (ECF No. 1-15 ¶ 2; ECF No. 6-2 ¶ 2.)  There is no dispute that they are no longer detained in the Baltimore Hold Rooms.  They filed the instant action on behalf of a putative class of "all persons who are now or will be detained at the Baltimore Hold Rooms," challenging conditions of confinement as unconstitutional.  (ECF No. 52 ¶ 67.)

This action arises against the backdrop of the policies guiding operation of the Baltimore Hold Rooms.  At issue here, ICE's Office of Enforcement and Removal Operations ("ERO") issued a directive on "Operations of ERO Holding Facilities," identified as Policy Number 11087.2, on January 31, 2024.[6]  (ECF No. 1-8; "Directive 11087.2.")  Directive 11087.2 sets forth the "policy and procedures for operating holding facilities" in ICE field offices.  *Id.* § 1.1.  A "holding facility" is "[a] facility that contains hold rooms that are primarily used for the short-term confinement of individuals who have recently been detained, or are being transferred to or from a court, detention facility, other holding facility, or other agency."  *Id.* § 3.2 (footnote omitted).  "Short-term confinement" refers to "a period not to exceed 12 hours, absent exceptional circumstances."  *Id.* § 3.2 n.3.  A "hold room" is "[a] holding cell, cell block, or other secure enclosure within a holding facility."  *Id.* § 3.3.  Under Directive 11087.2, the Executive Associate

---

[5] The court's prior memorandum opinion also considered evidence outside the pleadings in adjudicating the motion for class certification.  As discussed at further length below, however, courts generally do not consider evidence outside of a complaint (and the documents attached to or incorporated therein) when ruling on a Rule 12(b)(6) motion.
[6] There is no dispute that Directive 11087.2 is an internal directive not subject to APA rule-making requirements at 5 U.S.C. § 553.

3

Director for ERO (here, Executive Assistant Director Genalo) "is responsible for ensuring compliance with the provisions of this Directive," and Field Office Directors or Deputy and Assistant Field Office Directors (here, Director Bacon and Assistant Director Burki) "are responsible for ensuring that field office personnel follow the procedures in this Directive for operating holding facilities located within their respective field offices." *Id.* §§ 4.1, 4.3.

Relevant here, under Directive 11087.2, ERO Officers are responsible for, *inter alia*:

> Ensuring that each holding facility maintains sufficient supervision of detainees by taking into consideration the physical layout of each holding facility; the composition of the detainee population; the prevalence of substantiated and unsubstantiated incidents of sexual abuse, harassment and assault; the findings and recommendations of sexual abuse, harassment and assault incident review reports; and any other relevant factors, including but not limited to, the length of time detainees spend in custody at the holding facility;

> Ensuring that detainees are provided a meal at least every six hours;

> Ensuring that hold rooms are safe, clean, equipped with restroom facilities, and clear of objects that could be used as weapons against ERO personnel, contractors, or detainees.

(Directive 11087.2, ECF No. 1-8 §§ 4.4.1.2–3.)

The following procedures and requirements similarly apply to ERO Officers:

> Account for and continuously monitor detainees and empty holding facilities upon the conclusion of daily operations in those field office locations operating on a daily schedule. Absent exceptional circumstances, no detainee should be housed in a holding facility for longer than 12 hours.

> Monitor detainees for any apparent indications of a mental or physical health condition or signs of hostility, self-harm, or harm to others that may require closer supervision or emergency medical care.

> .          .          .

> Provide detainees with access to drinking water in hold rooms at all times.

4

> If the hold room is not equipped with restroom facilities, ERO officers should position themselves within direct sight or earshot of the hold room so that detainees may request and have regular access to restroom facilities.
>
> .          .          .
>
> Allow detainees to keep personal inhaled medication on their person and have access to other prescribed medication as necessary.

*Id.* §§ 5.1.1–2; 5.2.2–3; 5.7.2.

On January 30, 2025, then-Deputy Field Office Director of ERO Baltimore Baker submitted a memorandum to Assistant Director Burke, ICE's Assistant Director of Custody Management, requesting "a waiver for the ERO Baltimore Field Office 12-hour hold room utilization time, as it relates to [Directive] 11087.2." (ECF No. 40-2.) The memorandum sought an extension of 48 hours beyond the 12 hours set by Directive 11087.2. *Id.* Therein, Baker explained:

> The ERO Baltimore Field Office does not have any detention space within our area of responsibility (AOR). As a result, the Baltimore Field Office must request detention space nationwide to facilitate the transfer of aliens arrested by our law enforcement officers. This process has caused significant hold room times for the ERO Baltimore Field Office while awaiting transfer approval requests.

*Id.*[7] Baker further offered that the Executive Order of January 20, 2025, declaring immigration a national emergency, resulted in detention space being "less readily available," including in the Baltimore Hold Rooms. *Id.* Burke approved Baker's request on February 5, 2025. *Id.*

---

[7] In 2021, Maryland enacted the Dignity Not Detention Act, which, *inter alia*, "prohibit[s] certain governmental entities from entering into agreements facilitating immigration-related detention by private entities; prohibit[s] governmental entities from entering into certain agreements to house immigration-related detainees; [and] require[es] governmental entities to terminate certain existing contracts for the detention of immigration-related detainees . . . ." Detention Not Dignity Act, H.B. 16, 2021 Leg., 443rd Sess. (Md. 2021).

On June 24, 2025, Burke issued a nationwide waiver of Directive 11087.2's 12-hour hold room utilization limit for all ICE ERO Field Offices (the "Nationwide Waiver"). (ECF No. 40-3.) The Nationwide Waiver "allows for aliens who are recently detained, or are being transferred to or from a court, detention facility, other holding facility, or other agency to be housed in a holding facility for up to, but not exceeding, 72 hours, absent exceptional circumstances." *Id.* The court uses the term "Waiver" to refer to ICE's waiver of the 12-hour hold room utilization limit effected February 5, 2025 and later expanded by the Nationwide Waiver.

As the basis for the Nationwide Waiver, Burke cites two Executive Orders that resulted in increased enforcement efforts, and observes that "ERO's average daily population has significantly increased to over 54,000." *Id.* The two cited Executive Orders are those titled "Protecting the American People Against Invasion" and "Securing Our Borders." The Protecting the American People Against Invasion order provides, *inter alia*:

> The Secretary of Homeland Security shall promptly take all appropriate action and allocate all legally available resources or establish contracts to construct, operate, control, or use facilities to detain removable aliens. The Secretary of Homeland Security, further, shall take all appropriate actions to ensure the detention of aliens apprehended for violations of immigration law pending the outcome of their removal proceedings or their removal from the country, to the extent permitted by law.

Exec. Order No. 14159, 90 Fed. Reg. 8443 (Jan. 20, 2025). Relatedly, among other things, the Securing Our Borders order calls for the following:

> The Secretary of Homeland Security shall take all appropriate actions to detain, to the fullest extent permitted by law, aliens apprehended for violations of immigration law until their successful removal from the United States. The Secretary shall, consistent with applicable law, issue new policy guidance or propose regulations regarding the appropriate and consistent use of lawful detention authority under the INA, including the termination of the practice commonly known as "catch-and-release," whereby illegal aliens are

routinely released into the United States shortly after their apprehension for violations of immigration law.

Exec. Order No. 14165, 90 Fed. Reg. 8467 (Jan. 20, 2025).

At all relevant times, Directive 11087.2 and the Waiver have been in effect at the Baltimore Hold Rooms.

Plaintiffs lodge myriad allegations (accompanied by supportive evidence) regarding the allegedly unconstitutional conditions they, and the putative class members, have been, and will continue to be, subject to at the Baltimore Hold Rooms, including lack of access to beds, adequate bedding, showers or baths, clean clothing or laundry, hygienic and sanitary items, prescription drugs and medical care, as well as other conditions including overcrowding, lack of privacy, and poor sleeping conditions. (ECF No. 52 ¶¶ 92–96, 103, 111–13, 120–22; ECF Nos. 1-15 ¶ 3–5, 6; 6-2 ¶ 4, 6–9; ECF No. 6-2 ¶ 7.)

Of particular relevance to the pending Motion, Plaintiffs also allege that the Government has "violated Plaintiffs' and putative Class members' right to representation by counsel by denying them the ability to communicate with their counsel through the mail, unreasonably restricting their ability to meet with attorneys, and by denying them the ability to make private telephone calls." (ECF No. 52 ¶ 130.) Plaintiffs also include as exhibits various news articles that report on conditions that reflect restrictions on detainee's access to counsel. (ECF Nos. 1-9, 1-10, 1-12.)

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

"Rule 12(b)(1) of the Federal Rules of Civil Procedure authorizes dismissal for lack of subject matter jurisdiction." *Barnett v. United States*, 193 F. Supp. 3d 515, 518 (D. Md. 2016). "The plaintiff bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence." *United States ex rel. Fadlalla v. DynCorp Int'l LLC*, 402 F. Supp. 3d 162, 176 (D.

Md. 2019) (citing *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999)).  "In determining whether jurisdiction exists, 'the court may look beyond the pleadings and the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue.'"  *Id.* at 176 (quoting *Khoury v. Meserve*, 268 F. Supp. 2d 600, 606 (D. Md. 2003)).

Subject matter jurisdiction challenges may proceed in two ways: "either a facial challenge, asserting that the allegations pleaded in the complaint are insufficient to establish subject matter jurisdiction, or a factual challenge, asserting 'that the jurisdictional allegations of the complaint [are] not true.'" *Mayor & City Council of Baltimore v. Trump*, 416 F. Supp. 3d 452, 479 (D. Md. 2019) (quoting *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)).  In a facial challenge, "the facts alleged in the complaint are taken as true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." *Kerns*, 585 F.3d at 192; *see Ministry of Defence of State of Kuwait v. Naffa*, 105 F.4th 154, 159 (4th Cir. 2024) (same).  Conversely, in a factual challenge, "the presumption of truthfulness normally accorded a complaint's allegations does not apply, and the district court is entitled to decide disputed issues of fact with respect to subject matter jurisdiction." *Kerns*, 585 F.3d at 192.  "In that circumstance, the court 'may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *Trump*, 416 F. Supp. 3d at 479 (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)).

The Government mounts a facial challenge to the court's exercise of jurisdiction, arguing that Plaintiffs' APA claim (Count I) is not subject to judicial review because the Waiver is not a final agency action.[8]  (ECF No. 89 at pp. 16–17.)  Further, it does not appear that the Government's

---

[8] The Government also seeks dismissal on mootness grounds in view of the fact that the individual Plaintiffs are no longer detained in the Baltimore Hold Rooms.  As the court set forth in its previous opinion (and herein), the physical location of the named Plaintiffs is not in dispute; what is disputed, however, are the legal implications of their transfer out of the Baltimore Hold Rooms, if any.

proffered exhibit—the Declaration of Jose Guerrero, Assistant Field Office Director in the Baltimore Field Office (the "Guerrero Declaration")—bears any relevance to its challenge to Plaintiffs' APA claim. Accordingly, in addressing the Government's arguments regarding the APA, the court does not consider the Guerrero Declaration.

### B. Federal Rule of Civil Procedure 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017) (quoting *Papasan v. Allain*, 478 U.S. 265, 283 (1986)). To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A court decides whether this standard is met by separating the legal conclusions from the factual allegations, assuming the truth of only the factual allegations, and then determining whether those allegations allow the court to reasonably infer that 'the defendant is liable for the misconduct alleged.'" *A Soc'y Without A Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011) (citing *Iqbal*, 556 U.S. at 678).

A plaintiff's "factual allegations must be enough to raise a right to relief above the speculative level, thereby nudging its claims across the line from conceivable to plausible." *Vitol, S.A. v. Primerose Shipping Co.*, 708 F.3d 527, 543 (4th Cir. 2013) (citation modified) (quoting *Twombly,* 550 U.S. at 555, 570). The plausibility requirement is not "a probability requirement but rather a mandate that a plaintiff 'demonstrate more than a sheer possibility that a defendant has acted unlawfully." *In re Birmingham*, 846 F.3d at 92 (quoting *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009)). Reliance on "labels and conclusions" and "a formulaic recitation of the elements of a cause of action" are insufficient. *Twombly*, 550 U.S. at 555.

In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court generally does not consider evidence outside of a complaint. The court may, however, properly consider "documents integral to and relied upon in the complaint, . . . so long as the plaintiff does not question their authenticity." *Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021). "An integral document is a document that by its 'very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (quoting *Walker v. S.W.I.F.T. SCRL*, 517 F. Supp. 2d 801, 806 (E.D. Va. 2007)). The court is entitled to "consider documents that are explicitly incorporated into the complaint by reference, and those attached to the complaint as exhibits" as part of the "pleading for all purposes." *Goines v. Valley Comm. Svcs. Bd.*, 822 F.3d 159, 165–66 (4th Cir. 2016) (first citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007); then citing FED. R. CIV. P. 10(c)); FED. R. CIV. P. 10(c) (pertaining to "written instruments" attached as exhibits to a pleading). Finally, the court may also "properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts,'" meaning a fact "not subject to reasonable dispute because it," *inter alia*, "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015) (quoting *Philips v. Pitt Cnty. Mem'l Hosp.,* 572 F.3d 176, 180 (4th Cir. 2009)); FED. R. EVID. 201(b).

The Government does not argue, nor does the court discern, that the Guerrero Declaration is integral to Plaintiffs' Second Amended Complaint or otherwise properly considered in addressing the Government's Rule 12(b)(6) arguments. The court therefore does not consider the Guerrero Declaration in ruling on same. The court may, however, consider documents attached to, or expressly incorporated in, the Second Amended Complaint—including declarations

10

pertaining to Plaintiffs' conditions (ECF Nos. 1-15, 6-2), Directive 11087.2 (ECF No. 1-8), and the Waiver. (ECF Nos. 40-2, 40-3.)

## III.    ANALYSIS

The Government mounts three general challenges to Plaintiffs' Second Amended Complaint: (1) all counts brought by named Plaintiffs should be dismissed due to mootness; (2) the court lacks jurisdiction over Plaintiffs' APA claim (Count I) because there is no final agency action; and (3) Plaintiffs' Due Process Clause/*Accardi* and Access to Counsel claims (Counts II and VII, respectively) fail as a matter of law.[9] (ECF No. 89.) The court turns first to the Government's jurisdictional challenges.

### A.  Mootness Challenge

With one-sentence argument, the Government reiterates in cursory fashion its previously asserted argument as to mootness, which the court previously rejected. (ECF No. 89 at pp. 4–5.) The court has reviewed its prior analysis set forth in its opinion at ECF No. 74 and discerns no error therein. That the class claims at issue may be moot as to the individual Plaintiffs does not render the class claims moot *in toto* by operation of the "class-action specific 'relation back'" exception. *Jonathan R. by Dixon v. Just.*, 41 F.4th 316, 325 (4th Cir. 2022). Indeed, Plaintiffs allege a circumstance where "*other* class members 'will continue to be subject to the challenged conduct and the claims raised are . . . inherently transitory.'" *Id.* (emphasis in original) (quoting *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 76 (2013)). The court remains persuaded that the claims at issue—claims that relate to the treatment and conditions at the Baltimore Hold

---

[9] The Government's Motion also seeks dismissal of counts that have since been dismissed by stipulation of the parties. (ECF Nos. 112, 113.) The court, therefore, does not consider those arguments. Further, while the Government's heading at page 16 of its Motion references dismissal of "Count VI," the court construes this to be a typographical error in view of the lack of argument advanced as to same and the Government's assertion that, in total, it seeks dismissal (post-stipulation of dismissal) of Counts I, II, and VII. (ECF No. 89 at pp. 3 n.1.)

Rooms, a (relatively) short-term detention facility—are of such a transitory nature.  Accordingly, the court will deny the Motion to the extent it seeks dismissal of the Second Amended Complaint on grounds of mootness.

### B.  Final Agency Action Challenge

The APA provides that a "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . is entitled to judicial review thereof."  5 U.S.C. § 702.  It "establishes a 'basic presumption of judicial review' of agency action."  *Lovo v. Miller*, 107 F.4th 199, 205 (4th Cir. 2024); *see Weyerhaeuser Co. v. U.S. Fish & Wildlife Serv.*, 586 U.S. 9, 22 (2018) (explaining that the APA "creates a basic presumption of judicial review [for] one suffering legal wrong because of agency action") (citation modified).  "Courts may not, however, exercise jurisdiction over an APA claim if the claim falls under an exception to the APA's judicial-review provisions," *see Lovo*, 107 F.4th at 205 (citing *Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021)), meaning where "the relevant statute precludes review, 5 U.S.C. § 701(a)(1), or . . . the action is 'committed to agency discretion by law,' § 701(a)(2)."  *Weyerhaeuser*, 586 U.S. at 23.[10]  Where judicial review is proper, the court shall "hold unlawful and set aside agency action, findings, and conclusions found to be," relevant here, "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A).

An "agency action" under the APA is "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  It is

---

[10] While the Government notes the broad discretionary authority granted the Executive by the INA, its argument as to Count I is plainly limited to its challenge as to a discrete final agency action.  The Government advances no specific argument citing any provision of the INA that this action is committed to agency discretion by law, thus impeding the court's review under the APA.  (ECF No. 89 at p. 16.)  The court cabins its analysis to the Government's arguments asserted.

"meant to cover comprehensively every manner in which an agency may exercise its power." *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 478 (2001) (citing *FTC v. Standard Oil Co. of Cal.,* 449 U.S. 232, 238, n.7 (1980)).  This definition "limits the scope of judicial review in two important respects." *City of New York v. United States Dep't of Def.*, 913 F.3d 423, 431 (4th Cir. 2019).  First, the plaintiff must "identify specific and discrete governmental conduct, rather than launch a 'broad programmatic attack' on the government's operations." *Id.* (quoting *Norton v. Southern Utah Wilderness Alliance (SUWA)*, 542 U.S. 55, 64 (2004)).  This distinction "is vital to the APA's conception of the separation of powers," as courts are "well-suited to reviewing specific agency decisions," yet "woefully ill-suited . . . to adjudicate generalized grievances asking us to improve an agency's performance or operations." *Id.*  Second, the plaintiff "must demonstrate that the challenged act had 'an immediate and practical impact,' . . . or 'alter[ed] the legal regime' in which it operates." *Id.* (first quoting *Golden & Zimmerman LLC v. Domenech*, 599 F.3d 426, 433 (4th Cir. 2010); then quoting *Bennett v. Spear*, 520 U.S. 154, 178 (1997)).

In all, the Fourth Circuit has aptly summarized:

> Review is available only when acts are discrete in character, required by law, and bear on a party's rights and obligations. The result is a scheme allowing courts to review only those acts that are specific enough to avoid entangling the judiciary in programmatic oversight, clear enough to avoid substituting judicial judgments for those of the executive branch, and substantial enough to prevent an incursion into internal agency management. *See SUWA*, 542 U.S. at 64-65, 124 S.Ct. 2373.

*Id.* at 432.

The court's review is limited to "final agency action[s]" where there exists "no other adequate remedy."  5 U.S.C. § 704.  "Final agency action is a term of art that does not include all [agency] conduct such as, for example, constructing a building, operating a program, or performing a contract, but instead refers to an agency's [final] determination of rights and obligations whether

by rule, order, license, sanction, relief, or similar action." *Nat'l Veterans Legal Servs. Program v. United States Dep't of Def.*, 990 F.3d 834, 839 (4th Cir. 2021) (citation omitted). Because the APA "waives the federal government's sovereign immunity 'to permit judicial review of only final agency action[s],'" finality "is a jurisdictional requirement."[11] *Jake's Fireworks Inc. v. United States Consumer Prod. Safety Comm'n*, 105 F.4th 627, 631 (4th Cir. 2024), *cert. denied sub nom.*, No. 24-693, 2025 WL 1426674 (U.S. May 19, 2025) (first quoting *Nat'l Veterans Legal Servs. Program*, 990 F.3d at 839; then quoting *City of New York*, 913 F.3d at 430).

Courts take a "pragmatic" approach to finality. *U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 591 (2016) (citing *Abbott Laboratories v. Gardner,* 387 U.S. 136 (1967)). The "core question" of finality "is whether the agency has completed its decisionmaking process, and whether the result of that process is one that will directly affect the parties." *Franklin v. Massachusetts*, 505 U.S. 788, 797 (1992). Thus, an agency action is "final" when two conditions are met: (1) "the action must mark the consummation of the agency's decision making process— it must not be of a merely tentative or interlocutory nature," and (2) "the action must be one by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett*, 520 U.S. at 177–78 (citations omitted); *see also Biden v. Texas*, 597 U.S. 785, 808 (2022) (quoting *Bennett*, 520 U.S. at 178) (discussing same).

In its challenge that the Waiver is not final agency action, the Government advances one argument: ICE's decision "to waive an internal policy" is not a "discrete, identifiable, final 'agency action' subject to challenge," but rather reflects "day-to-day operational decisions" of the agency. (ECF No. 89 at pp. 16–17.) In support of its position, the Government points to caselaw

---

[11] This is of course because sovereign immunity itself is jurisdictional in nature. *Jake's Fireworks Inc. v. United States Consumer Prod. Safety Comm'n*, 105 F.4th 627, 631 (4th Cir. 2024), *cert. denied sub nom.*, No. 24-693, 2025 WL 1426674 (U.S. May 19, 2025) (quoting *City of New York v. U.S. Dep't of Def.*, 913 F.3d 423, 430 (4th Cir. 2019)).

14

recognizing that the APA forecloses the court from engaging in day-to-day oversight of the Executive's administrative practices, especially in view of the "broad discretionary authority" permitted to immigration officials in the removal process.  *Id.*

The Government's argument, however, misses the mark.  Plaintiffs have identified specific and discrete government conduct—the Waiver of the 12-hour hold room utilization limit imposed in its Directive 11087.2.  *See City of New York*, 913 F.3d at 431, *supra*.  Plaintiffs' challenge to the Waiver is neither a generalized challenged to ICE day-to-day operations, nor a broad programmatic attack.  *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 899 (1990) (discussing same); *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (discussing same).  Instead, Plaintiffs challenge a discrete act by ICE—issuance of the Waiver (first, as to the Baltimore Hold Rooms only; then, nationwide).  Plaintiffs allege significant harms as a direct result of a discrete agency action: the Waiver; they challenge a "specific agency decision[]" which this court is "well-suited" to review.  Plaintiffs do not come bearing a "generalized grievance" seeking judicial redress to "improve on an agency's performance or operations."  *See City of New York*, 913 F.3d at 431, *supra*.

Moreover, while the Government does not advance argument as to the specific elements of finality in its Motion,[12] the court nonetheless thinks it prudent to address the issue.  For this court to exercise jurisdiction over Plaintiffs' APA claim flowing from ICE's issuance of the Waiver of the 12-hour hold room utilization limit, the *Bennett* factors must be satisfied, which is to say the

---

[12] The Government does advance argument as to finality for the first time in its reply paper.  (ECF No. 114 at pp. 3–8.)  Ordinarily, such arguments are not properly considered.  *See De Simone v. VSL Pharms., Inc.*, 36 F.4th 518, 531 (4th Cir. 2022) ("Generally, 'new arguments cannot be raised in a reply brief' before the district court. . . . A contrary rule runs the risk of depriving a nonmovant an opportunity to respond."  (quoting *United States v. Smalls*, 720 F.3d 193, 197 (4th Cir. 2013)).

Waiver must mark the "consummation" of ICE's decision-making process and legal consequences must flow therefrom. *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997).

The Fourth Circuit has recently summarized:

> The types of agency action that traditionally satisfy this two-prong test are what one would expect: binding agency opinions, *see id.* at 157–159, 117 S.Ct. 1154; compliance orders, *see Sackett v. EPA*, 566 U.S. 120, 126, 132 S.Ct. 1367, 182 L.Ed.2d 367 (2012); and promulgated rules, *see Frozen Food Express v. United States*, 351 U.S. 40, 43–44, 76 S.Ct. 569, 100 L.Ed. 910 (1956). The types of agency action that traditionally fail this two-prong test are also what one would expect: tentative recommendations, *see Franklin v. Massachusetts*, 505 U.S. 788, 799–800, 112 S.Ct. 2767, 120 L.Ed.2d 636 (1992); intermediate decisions, *Chicago & S. Air Lines v. Waterman S.S. Corp.*, 333 U.S. 103, 112, 68 S.Ct. 431, 92 L.Ed. 568 (1948); and the initiation of enforcement proceedings, *see FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 241, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980).

*Am. Fed'n of Tchrs. v. Bessent*, 152 F.4th 162, 174 (4th Cir. 2025). Formal written waiver of policy setting forth specific, required ERO facility maintenance and operational conditions is more akin to the examples of agency actions that satisfy this test than those that do not. The court's consideration of the *Bennett* factors supports this conclusion.

First, the Waiver plainly marks the consummation of ICE's decision-making process to waive its requirement set forth in Directive 11087.2 that all ERO Field Offices limit detention of individuals in holding facilities to 12 hours. *See Bennett*, 520 U.S. at 177–78, *supra*. The Baker Memorandum sets forth the proposed rationale for a waiver of the 12-hour limit. (ECF No. 40-2.) Further still, the Burke Memorandum sets out the purpose of the Waiver and her rationale that the Nationwide Waiver was necessary. (ECF No. 40-3.) The Waiver had the immediate effect of allowing the ERO's Baltimore Field Office to waive the 12-hour hold room utilization limit set forth in Directive 11087.2. That the Nationwide Waiver was, by its terms, limited to a one-year period (subject to revision) "is a common characteristic of agency action, and does not make an

16

otherwise definitive decision nonfinal." *See U.S. Army Corps of Eng'rs v. Hawkes Co.*, 578 U.S. 590, 598 (2016) (citing cases). The Waiver does not bear hallmarks of tentative or intermediate decision making. Accordingly, the first element of finality is satisfied.

Similarly, the Waiver is an action through which legal rights or obligations have been determined and from which legal consequences flow. *See Bennett*, 520 U.S. at 177–78, *supra*. Plaintiffs allege the challenged action had multi-faceted immediate, material, and practical impacts on the Government's obligations with respect to detainees under Directive 11087.2. Directive 11087.2, by its terms, provides policies for operating holding facilities to ensure sufficient supervision by ICE officials and protection of detained individuals. (Directive 11087.2, ECF No. 1-8 § 2.1.)

Moreover, Plaintiffs plausibly allege that legal consequences flow from the Waiver; namely, the Waiver directly impacted the conditions to which they were subjected in their confinement—conditions that Plaintiffs urge violate the Fifth Amendment. Indeed, this suit and a similar suit in the Southern District of New York illustrate the legal implications of the Waiver. *See, e.g., Mercado v. Noem*, — F. Supp. 3d —, No. 25-CV-6568 (LAK), 2025 WL 2658779, at *5 (S.D.N.Y. Sept. 17, 2025). As Plaintiffs note, it seems an obvious conclusion that "the rights of detainees and obligations of detention [] facilities would flow from any agency action regarding detention standards compliance and enforcement." (ECF No. 111, quoting *Torres v. United States Dep't of Homeland Sec.*, 411 F. Supp. 3d 1036, 1069 (C.D. Cal. 2019)). *Cf. Amadei v. Nielsen*, 348 F. Supp. 3d 145, 166 (E.D.N.Y. 2018) (finding the second *Bennett* prong met where the defendants' execution of a policy had imposed "tangible legal consequences" on the plaintiffs based on their assertion that their Fourth Amendment rights were violated).[13]

---

[13] Although it would appear somewhat obvious, it bears mention that the court need not make a merits finding to determine that Plaintiffs satisfy the "legal consequences" aspect of the *Bennett* analysis.

For the foregoing reasons, the court is satisfied that Plaintiffs have alleged a final agency action as is necessary for judicial review under the APA.

### C.  Due Process Clause and *Accardi* Claim

In their Count II, Plaintiffs allege a violation of the Due Process Clause of the Fifth Amendment based on ICE's Waiver of the 12-hour hold room utilization limit.  (ECF No. 52 ¶¶ 85–88.)  Plaintiffs' theory rests on application of what is referred to as the *Accardi* doctrine.  *Id.* ¶ 85.

The *Accardi* doctrine, named for the Supreme Court case *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954), "provides that when an agency fails to follow its own procedures or regulations, that agency's actions are generally invalid."  *Orellana v. Bondi*, 141 F.4th 560, 566 (4th Cir. 2025) (quoting *Nader v. Blair*, 549 F.3d 953, 962 (4th Cir. 2008)).  To be sure, "[w]here the rights of individuals are affected, it is incumbent upon agencies to follow their own procedures," even "where the internal procedures are possibly more rigorous than otherwise would be required."  *Morton v. Ruiz*, 415 U.S. 199, 235 (1974) (citations omitted); *see United States v. Morgan*, 193 F.3d 252, 266 (4th Cir. 1999) (noting that "[t]he fact that a particular regulation or procedure is not mandated by the Constitution or by statute is of no moment for purposes of an analysis under the *Accardi* doctrine").  The doctrine "provides plaintiffs with a means by which they can hold agencies accountable to their own policies."  *Damus v. Nielsen*, 313 F. Supp. 3d 317, 337 (D.D.C. 2018) (citing cases).  Its purpose is "to prevent the arbitrariness which is inherently characteristic of an agency's violation of its own procedures."  *United States v. Heffner*, 420 F.2d 809, 812 (4th Cir. 1969).

Of particular relevance here, failure to abide such polices "arguably gives rise to a due process claim."  *Jefferson v. Harris*, 285 F. Supp. 3d 173, 184 (D.D.C. 2018) (quoting *Wilkinson*

*v. Legal Servs. Corp.*, 27 F. Supp. 2d 32, 58 (D.D.C. 1998)).  As this court has previously explained, "[t]he Due Process Clause is implicated where 'an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially because of their violation by the agency.'"  *Umanzor-Chavez v. Noem*, No. CV SAG-25-01634, 2025 WL 2467640, at *5 (D. Md. Aug. 27, 2025) (quoting *United States v. Caceres*, 440 U.S. 741, 752–53 (1979)); *see Sanchez v. McAleenan*, No. CV GLR-19-1728, 2024 WL 1256264, at *7 (D. Md. Mar. 25, 2024) (noting same).

Courts have reached different conclusions on whether an *Accardi* claim is properly raised under the Due Process Clause of the Fifth Amendment, the APA, or as a stand-alone claim.  *See Jefferson v. Harris*, 285 F. Supp. 3d 173, 185 (D.D.C. 2018) (explaining that "[a]lthough certain cases suggest that the doctrine has roots in the Due Process Clause, others have held that *Accardi* claims are better understood as arising under the APA or as stand-alone causes of action").  *See also, e.g.*, *Brown v. Haaland*, No. 321CV00344MMDCLB, 2023 WL 5004358, at *4 (D. Nev. Mar. 6, 2023) (dismissing plaintiffs' Fifth Amendment claim where their "constitutional due process claim appears to be solely grounded on the *Accardi* doctrine, and *Accardi* is not a constitutional claim"); *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020) (noting that, under *Accardi*, when an agency fails to follow its own regulation "the APA (as developed by case law) gives aggrieved parties a cause of action to enforce compliance"). *Cf. Bd. of Curators of Univ. of Missouri v. Horowitz*, 435 U.S. 78, 92 (1978) (noting in a footnote that *Accardi* "enunciate[s] principles of federal administrative law rather than of constitutional law"); *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 212 (D.D.C. 2020) (same); *West v. Kentucky Horse Racing Comm'n*, 425 F. Supp. 3d 793, 809 (E.D. Ky. 2019), *aff'd,* 972 F.3d 881 (6th Cir. 2020) (same); *Carnation Co. v. Sec'y of Lab.*, 641 F.2d 801, 804 (9th Cir. 1981) (noting that "[t]he

*Accardi* doctrine is not a constitutional one"). *But see Montilla v. I.N.S.*, 926 F.2d 162, 167 (2d Cir. 1991) (noting "[t]he *Accardi* doctrine is premised on fundamental notions of fair play underlying the concept of due process"); *Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d 32, 61 (D.D.C. 1998) (explaining that "the Due Process Clause requires that agency officials follow their own rules, even those promulgated gratuitously").

While courts have concluded a procedural due process claim may be brought under *Accardi*, "the caselaw is far from clear as to whether an *Accardi* claim is properly raised as a substantive due-process allegation."[14] *Jefferson v. Harris*, 285 F. Supp. 3d 173, 185 (D.D.C. 2018). *Cf.* Thomas W. Merrill, *The Accardi Principle*, 74 GEO. WASH. L. REV. 569, 577 (2006) (noting that "all subsequent decisions of the Supreme Court," following the *Accardi* era, that refer to the *Accardi* doctrine "involve procedural as opposed to substantive regulations"). In *C.G.B.*, the District of Columbia court explained that "agency regulations do not create *substantive* due process rights," and that the *Accardi* doctrine is "rooted instead in notions of *procedural* due process." *C.G.B. v. Wolf*, 464 F. Supp. 3d 174, 226 (D.D.C. 2020) (emphasis in original); *see D.A.M. v. Barr*, 474 F. Supp. 3d 45, 66 (D.D.C. 2020) (finding same); *Biron v. Carvajal*, No. 20-CV-2110 (WMW/ECW), 2021 WL 3047250, at *30 (D. Minn. July 20, 2021), *report and recommendation adopted*, 2021 WL 4206302 (D. Minn. Sept. 16, 2021), *aff'd*, No. 21-3615, 2022 WL 2288534 (8th Cir. June 24, 2022) ("[T]o the extent any regulations at issue here create substantive rights for prisoners, it is not clear that *Accardi* should be applied to such rights, as *Accardi* itself, and many cases applying it, involve procedural, not substantive, requirements.").

---

[14] The court construes Plaintiffs' Count II to assert substantive due process claim based on their allegation that Directive 11087.2 "affects the fundamental rights of individual detained people to which the Defendants must adhere when taking those individuals into custody." (ECF No. 52 ¶ 86.) *See D.B. v. Cardall*, 826 F.3d 721, 740 (4th Cir. 2016) (describing the "two strands of the substantive due process doctrine," with the first strand "protect[ing] rights that are fundamental," and the second strand "protect[ing] against the exercise of governmental power that shocks the conscience" (citations omitted)).

*See also Sanchez v. McAleenan*, No. CV GLR-19-1728, 2024 WL 1256264, at *7, *10 n.7 (D. Md. Mar. 25, 2024) (declining to decide whether plaintiffs had a substantive due process interest where court already found them entitled to summary judgment on their due process claims on the basis of *Accardi* and procedural due process). *But see Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d 32, 57–58 (D.D.C. 1998) (concluding that "a substantive due process explanation" of the *Accardi* doctrine "is the more persuasive").[15]

In this same vein, it bears more than a passing mention that the Supreme Court and the Fourth Circuit have repeatedly affirmed that, "as a general proposition, courts must be 'reluctant to expand the concept of substantive due process because guideposts for responsible decision-making in this uncharted area are scarce and open-ended.'" *Hawkins v. Freeman*, 195 F.3d 732, 738 (4th Cir. 1999) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)); *see also Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 72 (2009) (recognizing same); *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) (recognizing same).

Against this backdrop, the court is not persuaded that Plaintiffs' Count II states a claim, because it articulates a Fifth Amendment substantive due process claim based solely on the *Accardi* doctrine. In sum, the case law does not support *Accardi* as a vehicle to state a substantive due process claim, Plaintiffs cite no on-point authority, and controlling law expressly admonishes that the court ought not expand upon substantive due process or read into the jurisprudence a permissive eye. As such, Plaintiffs do not plausibly allege an *Accardi*-based substantive due

---

[15] *See also Tendo v. United States*, No. 2:23-CV-438, 2024 WL 3650462, at *13 n.12 (D. Vt. Aug. 5, 2024) (discussing the Supreme Court's application of the *Accardi* principle (prior to *Accardi*) to a substantive regulation in *Arizona Grocery Co. v. Atchinson, T. & S.F. Ry. Co.*, 284 U.S. 370 (1932)) (citations omitted)); *Jane v. Rodriguez*, No. CV 20-5922 (ES), 2020 WL 6867169, at *14 (D.N.J. Nov. 23, 2020) (noting "it is unclear whether, and to what extent, *Accardi* applies to substantive regulations" in view of the Supreme Court's decision in *Arizona Grocery Co. v. Atchinson, T. & S.F. Ry. Co.*, 284 U.S. 370 (1932), which preceded *Accardi*).

process claim.  Therefore, the court will grant the Motion to the extent it seeks dismissal of Count II.

Importantly, however, while case law does not support an *Accardi*-based substantive due process claim, APA claims enjoy a more welcome reception. *See Brown v. Haaland*, No. 321CV00344MMDCLB, 2023 WL 5004358, at *4 (D. Nev. Mar. 6, 2023) (holding that, while "an *Accardi* claim is distinct from a constitutional due process claim," the plaintiffs' *Accardi* claim "may proceed under the APA").  Indeed, as the Government urges, "an *Accardi* claim is simply a subset of claims for relief cognizable under the APA." *S. Poverty L. Ctr. v. U.S. Dep't of Homeland Sec.*, No. CV 18-0760 (CKK), 2023 WL 2564119, at *4 (D.D.C. Mar. 15, 2023). Accordingly, for the purposes of completeness, the court addresses Defendants' remaining arguments as to reliance on *Accardi* in support of Plaintiffs' APA claim.

The *Accardi* "doctrine generally does not apply to an agency's internal memoranda, at least those that are neither designed to protect individual rights nor intended to have the force of law." *Orellana v. Bondi*, 141 F.4th 560, 566 (4th Cir. 2025) (quoting *Diaz v. Rosen*, 986 F.3d 687, 690 (7th Cir. 2021)).  As the Fourth Circuit recently explained:

> Where internal policies are "not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion," or when the case is not such that "an agency [is] required by rule to exercise independent discretion [but] has failed to do so," "there is no reason to exempt th[e] case from the general principle that it is always within the discretion of a court or an administrative agency to relax or modify its procedural rules adopted for the orderly transaction of business before it when in a given case the ends of justice require it." *American Farm Lines v. Black Ball Freight Service*, 397 U.S. 532, 538–39, 90 S.Ct. 1288, 25 L.Ed.2d 547 (1970) (cleaned up).

*Id.*  In such cases, the action is "not reviewable except upon a showing of substantial prejudice to the complaining party." *Am. Farm Lines v. Black Ball Freight Serv.*, 397 U.S. 532, 538–39 (1970).

Thus, "[r]ules that fall within *Accardi*'s ambit include 'internal agency guidance' that are 'intended' to be 'binding norms.'" *Damus*, 313 F. Supp. 3d at 336 (quoting *Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987)).

There is no dispute that Directive 11087.2 is an internal policy.  (Directive 11087.2, ECF No. 1-8 at p. 15, "This document is an internal policy statement of ICE.")  The parties disagree, however, as to whether Directive 11087.2 is "intended primarily to confer important procedural benefits upon indiv[i]duals in the face of otherwise unfettered discretion." *See Am. Farm Lines*, 397 U.S. at 538–39 (citing *Vitarelli v. Seaton*, 359 U.S. 535), *supra*.  Assuming without deciding that the Government is correct that it does not confer important procedural benefits in the face of otherwise unfettered discretion,[16] Plaintiffs nonetheless plausibly state an *Accardi* claim based on substantial prejudice.  *Orellana*, 141 F.4th at 566 (explaining that where an internal policy was "not intended primarily to confer important procedural benefits upon individuals in the face of otherwise unfettered discretion," and the agency is not "required by rule to exercise independent discretion but has failed to do so," the agency action is "not reviewable except upon a showing of substantial prejudice to the complaining party" (citation modified and citations omitted)).  Plaintiffs allege that, as a result of the Waiver, they have been subjected to inhumane conditions of confinement, resulting in harm to them and the putative class.  The Government does not

---

[16] The court notes that Directive 11087.2 expressly disclaims the creation of any such right or benefit, noting that it is "not intended to, does not, and may not be relied upon to create any right or benefit, substantive or procedural, enforceable at law by any party in any administrative, civil, or criminal matter."  (Directive 11087.2, ECF No. 1-8 § 7.)  Other courts have not found such language dispositive where evidence is offered as to the binding nature of the policy.  *Compare Damus v. Nielsen*, 313 F. Supp. 3d 317, 338 (D.D.C. 2018) (finding Government intended to be bound by directive at issue, notwithstanding language disclaiming same, where Government made statement at oral argument that the directive was binding), *with Oldaker v. Giles*, 724 F. Supp. 3d 1315, 1339 (M.D. Ga. 2024) (finding that policy that included language disclaiming creation of right or benefit "can hardly be characterized as one which has the full force and effect of law").  In view of the procedural posture of this action and the existence of relatively recent, on-point case law in support of Plaintiffs' position on this issue, the court declines to dispose of the claim on this premise.

contend, and the court does not find, that such an allegation is insufficient to plead substantial prejudice.

Finally, the Government contends that any *Accardi* claim fails because the Government did not violate Directive 11087.2 when it waived a requirement set forth therein. The court is not persuaded by this given that the Waiver itself is the subject of Plaintiffs' legal challenge.[17]

Accordingly, in view of the foregoing, the court will grant the Motion to the extent it seeks dismissal of Plaintiffs' Count II based on violation of the Due Process Clause of the Fifth Amendment; however, Plaintiffs remain free to rely on *Accardi* in support of their APA claim.

### D. Deprivation of Access to Counsel Claim

"[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *see United States v. Guzman*, 998 F.3d 562, 569 (4th Cir. 2021) (discussing same). The law is crystal clear that "noncitizens have a Fifth Amendment right to due process in removal proceedings." *Romero v. Bondi*, 150 F.4th 332, 340 (4th Cir. 2025) (citing *Anim v. Mukasey*, 535 F.3d 243, 258 (4th Cir. 2008)).

Plaintiffs rely upon the INA to support their statutory right to access counsel of their choosing, although the precise source is not entirely clear. Plaintiffs cite "8 U.S.C. § 1229a(b)" in the heading to Count VII (ECF No. 52 at p. 28), but cite "8 U.S.C. § 1228a(b)" in their allegations. *Id.* ¶ 129. Plaintiffs again cite "8 U.S.C. § 1228a(b)" in response to the Motion but reference language contained within 8 U.S.C. § 1228(b)(4). (ECF No. 111 at p. 11 n.5.) Notwithstanding

---

[17] The Government also argues that Plaintiffs' claim fails because Directive 11087.2 permits extension of the 12-hour limit for exceptional circumstances. (ECF No. 114 at pp. 9–10.) But surely not every circumstance rises to the level of "exceptional." And the court rejects suggestion that an agency may avoid liability for noncompliance with its internal policies *in toto* on grounds that the policies allow for exceptions. In any event, in view of the procedural stage of the action, and the favorable light accorded the Second Amended Complaint, this argument is unavailing at present.

both parties' reference to same, the court is unable to confirm that "8 U.S.C. § 1228a" exists. For completeness, the court construes Plaintiffs' Count VII to rest on 8 U.S.C. § 1228(b)(4) and 8 U.S.C. § 1229a(b)(4)(A)—both of which pertain to the INA's statutory grant of the privilege to be represented by counsel of a noncitizen's choosing during the proceedings set forth under each section.

Pursuant to 8 U.S.C. § 1229a(b)(4), in removal proceedings before an immigration judge, a noncitizen "shall have the privilege of being represented, at no expense to the Government, by counsel of the [noncitizen's] choosing who is authorized to practice in such proceedings." 8 U.S.C. § 1229a(b)(4); *United States v. Guzman*, 998 F.3d 562, 567 (4th Cir. 2021) (discussing a noncitizen's "privilege of being represented" by counsel set forth at 8 U.S.C. § 1229a(b)(4) and 8 U.S.C. § 1362). Relatedly, 8 U.S.C. 1228(b)(4) provides that in proceedings under that subsection pertaining to noncitizens who are not permanent residents, such noncitizens also "shall have the privilege of being represented (at no expense to the government) by such counsel, authorized to practice in such proceedings, as the alien shall choose." 8 U.S.C. § 1228(b)(4)(B).

Courts have repeatedly found that the INA's provisions that noncitizens shall have the privilege of counsel of their choosing at their own expense is an "integral part of the procedural due process to which [a noncitizen] is entitled." *Iavorski v. U.S. I.N.S.*, 232 F.3d 124, 128 (2d Cir. 2000) (citations omitted);[18] *see Leslie v. Att'y Gen. of U.S.*, 611 F.3d 171, 180–81 (3d Cir. 2010) (explaining that the INA's "statutory and regulatory right to counsel is also derivative of the due process right to a fundamentally fair hearing"); *Batanic v. I.N.S.*, 12 F.3d 662, 667 (7th Cir. 1993) (noting that the INA "clearly and unambiguously grants aliens the right to counsel of their choice

---

[18] The Second Circuit's decision concerned a separate provision of the INA, 8 U.S.C. § 1362, which provides "[i]n any removal proceedings before an immigration judge and in any appeal proceedings before the Attorney General from any such removal proceedings, the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose."

in deportation proceedings" and that "[s]uch provisions are an integral part of the procedural due process to which the alien is entitled") (citation omitted)); *Mercado v. Noem*, — F. Supp. 3d —, No. 25-CV-6568 (LAK), 2025 WL 2658779, at *34 (S.D.N.Y. Sept. 17, 2025) (same and explaining "detained aliens are entitled to the minimum levels of humane treatment and access to counsel that are required by the Constitution"). *See also Romero v. Bondi*, 150 F.4th 332, 340 (4th Cir. 2025) (explaining "noncitizens have a Fifth Amendment right to due process in removal proceedings" and "although noncitizens are not guaranteed an appointed attorney, they do have the right to retain an attorney").

Based on the foregoing, Plaintiffs adequately plead that, by "denying them the ability to communicate with their counsel through the mail, unreasonably restricting their ability to meet with attorneys, and by denying them the ability to make private telephone calls," the Government has violated Plaintiffs' right to retain counsel at their own expense under the INA and Due Process Clause of the Fifth Amendment. "[N]oncitizens have a Fifth Amendment right to due process in removal proceedings," *see Romero*, 150 F.4th at 340, *supra*, and the right to retain counsel of their choosing, at their own expense, is an "integral part of the procedural due process to which [a noncitizen] is entitled."[19] *See Iavorski*, 232 F.3d at 128, *supra*.

The Government, citing to the Guerrero Declaration, continues to argue that Plaintiffs fail to establish that the alleged restrictions are punitive or excessive. This argument fails to consider the posture of this case. As set forth above, the court does not consider the Guerrero Declaration on a 12(b)(6) motion, and Plaintiffs are not required at this stage to "establish" anything. That the

---

[19] The Government's argument that Plaintiffs' claim fails based on competing factual assertions or the Guerrero Declaration—namely that the most commonly detained noncitizens are not subject to these provisions—is not properly considered at this stage. (ECF No. 89 at p. 20.) Moreover, as Plaintiffs note, the Government implicitly acknowledges that some individuals are subject to these protections. (ECF No. 111 at pp. 13–14.) The court is satisfied Plaintiffs state a plausible claim.

Government disagrees that it has restricted noncitizens' access to counsel is not compelling.[20] Plaintiffs' allegations are sufficient to support such a claim, including specific reference to the practice to which they are subject and the resultant restriction on their access to counsel. (ECF No. 52 ¶ 130.) While the face of the pleadings on this subject is not rich or robust; it need not be. Plaintiffs plausibly state the alleged violation.[21] The court will therefore deny the Government's Motion on that basis.

## IV. CONCLUSION

For the reasons set forth herein, the Government's Motion to Dismiss (ECF No. 89) will be granted in part and denied in part. Because the court is cognizant of the parties' upcoming briefing on class certification and preliminary injunction, the parties shall confer and jointly propose a deadline for the Government to answer Plaintiffs' Second Amended Complaint.

December 9, 2025                              /s/
                                             Julie R. Rubin
                                             United States District Judge

---

[20] To the extent the Government bases its argument on the fact that the Baltimore Hold Rooms, as a short-term detention facility, is not set up to accommodate the need, the court is not persuaded. As the Southern District of New York recently remarked on a similar question, "Defendants may not properly choose a facility that is unfit for a particular purpose and then use the inadequacies of the facility as a justification to deprive detainees of meaningful, confidential access to legal counsel to the extent demanded by the Constitution." *Mercado v. Noem*, — F. Supp. 3d —, No. 25-CV-6568 (LAK), 2025 WL 2658779, at *34 (S.D.N.Y. Sept. 17, 2025).

[21] The court recognizes that Plaintiffs have offered declarations to support this allegation, but the court does not consider them on the Motion. (ECF Nos. 31-6 ¶¶ 4, 11; 31-12 ¶ 11; 31-14 ¶ 13; 31-15 ¶ 9.)