**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| D.N.N. and V.R.G., *on behalf themselves and all others similarly situated,*<br><br><br>*Plaintiffs,*<br><br>v.<br><br><br>NIKITA BAKER, *in her official capacity as Field Office Director of the Immigration and Customs Enforcement, Enforcement and Removal Operations Baltimore Field Office,* et al.,<br><br><br><br><br>*Defendants*. | **STIPULATED ELECTRONICALLY STORED INFORMATION PROTOCOL**<br><br>Civil Action No.: 1:25-cv-01613 |

**STIPULATED ELECTRONICALLY STORED INFORMATION PROTOCOL**

The Parties hereby stipulate to the following terms governing production of electronically stored information ("ESI"), and request that the Court approve and enter this stipulation.

**IT IS HEREBY ORDERED:**

**I. DEFINITIONS**

*i.* "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes both ESI and Hard Copy Discovery.

*ii.* "Electronically Stored Information" or "ESI" carries its broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001.

*iii.* "Extracted text" means the text extracted from a native document, and includes all header,

footer, and document body information, including any hidden content, when available. A "Text File" is a file containing the full multi-page text of native or near-native files extracted directly from the native file, or, in the case of paper/hard copy documents subject to OCR, a file containing the text resulting from the OCR.

iv.    "Load file" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load File will also contain data relevant to the individual Documents, including extracted and user-created Metadata, as well as OCR or Extracted Text, should such data be available.

v.    "Metadata" means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such native file which describes the characteristics, origins, or usage or validity of the electronic file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such system.

vi.    "Media" means an object or device, including but not limited to, a disc, tape, computer, or other device, on which data is or was stored.

vii.    "Native File(s)" or "Native Format" means ESI that is the file structure of a document created by the original computer-based, cloud-based, or artificial intelligence-based application (including, by way of example, Microsoft Office, Microsoft Access, video and audio files, *.eml, *.pst, and *.pdf files).

viii.    "OCR" means optical character recognition technology which is created by software used

in conjunction with a scanner that is capable of reading text-based paper/hard copy documents and making such documents searchable using appropriate software.

ix.   "Preservation" or "Preserved" shall mean taking reasonable steps to prevent the partial or full destruction, alteration, shredding, incineration, wiping or loss, due to any reason whatsoever, of information including ESI and hard copy documents.

x.    "Producing Party" means a Party that produces documents within its possession, custody or control.

xi.   "Receiving Party" means a Party to whom documents are produced.

xii.  "Responsive Document" means any document that the Producing Party has agreed to produce or log under the Federal Rules, or that the Producing Party has been ordered to produce by the Court.

xiii. "Search Term" means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI, and includes strings of words and phrases joined by proximity and Boolean connectors.

xiv.  "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems. A Tagged Image File Format ("TIFF") image is an example of a Static Image.

xv.   "Predictive Coding" or "Technology Assisted Review" shall mean processes for prioritizing or coding a collection of documents using computerized systems, such as machine-learning algorithms, that may rely on the judgments of one or more attorneys experienced in the subject matter of this Action regarding the responsiveness of a subset of documents and extrapolates those judgments to a designated document set. For purposes of this Protocol, Predictive Coding or Technology Assisted Review is synonymous with

computer-assisted review, computer-aided review, continuous active learning, and content-based advanced analytics or other terms used to refer to search methodologies that rely on machine-based learning to identify documents.

*xvi.* "Unstructured Data" refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, such as word processing documents, slide presentations, email, and image files.

## II. PURPOSE AND LIMITATIONS

i.   This Order supplements all other discovery rules and orders. It streamlines ESI production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1. Nothing in this order shall be construed (1) to prohibit the undersigned Parties from agreeing to modify any provision of this order or seeking relief from the Court; (2) as a waiver of any Party's rights under the Federal Rules of Civil Procedure; (3) to require disclosure of information that is not relevant or not proportional to the claims or defenses in this case or that is protected by applicable privilege; or (4) to waive any objections as to the production, discoverability, or confidentiality of ESI.

ii.  This Order may be modified for good cause by the Court. Plaintiffs and Defendants (collectively, "the Parties") shall attempt to resolve any proposed modifications in good faith and comply with the meet and confer process procedures laid out by the Court. If the Parties cannot resolve this dispute, they may proceed under the Federal and Local Rules of Civil Procedure addressing discovery disputes.

iii. All Productions made pursuant to this Protocol are subject to the Protective Order agreed to by the Parties and entered by the Court on November 26, 2025 ("Protective Order"), and

any further protective orders or privilege orders entered in these Proceedings.

## III. PRESERVATION

The Parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportionate steps to preserve and shall continue to preserve relevant and discoverable Documents and ESI in the Parties' possession, custody, or control in accordance with their obligations under applicable law. The Parties will meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this litigation. The Parties will timely make disclosures regarding custodians, data sources, date ranges, and categories of information to be preserved, as are necessary to facilitate the Parties' meet and confer discussions. By preserving or producing information for the purpose of this Action, the Parties are not conceding that such material is discoverable.

If a Producing Party identifies a source of potentially relevant information that it does not intend to preserve or search because the source is not reasonably accessible because of undue burden or cost, or for any other reason, the Producing Party shall timely disclose that intention, identify the source and set forth the justification for not searching that source. The Parties shall timely meet and confer regarding any disputes regarding sources of potentially responsive information,.

## IV. SEQUENCE AND PROCEDURE OF ESI DISCOVERY

i. The Parties agree that discovery of ESI shall proceed as follows:

A.      To promote the proportionality of discovery as set forth in Fed. R. Civ. P. 26(b)(1), requests for production of ESI and related responses should be reasonably targeted, clear, and as specific as practicable. After receiving requests for document

production, the Producing Party shall conduct a reasonable inquiry regarding responsive documents and ESI.

B.    A Producing Party will disclose to a Receiving Party the existence of those sources of ESI that it believes contain responsive information as well as sources that are not reasonably accessible, and, to the extent necessary, the Parties will meet and confer concerning such information that has been identified as not reasonably accessible. Specifically, pursuant to initial disclosure obligations or after the service of any request for production, the Receiving Party and the Producing Party shall meet and confer on search terms or other search methodology to be used including identifying custodians and non-custodial sources. Custodians shall be identified by name<u>or other identifying data if a name is not available, along with job title and a brief description of their reason for being identified as a custodian.</u>. The Parties shall have an initial exchange of custodians, non-custodial sources and search terms within a reasonable time of initial disclosure obligations or service of any request for production calling to produce ESI. The Receiving Party may propose search terms, date restrictions and other search methodologies for consideration by the Producing Party. e If the parties disagree on search methodologies, the Parties shall meet and confer promptly to discuss alternatives. The Parties shall cooperate with each other in the running and exchange of search term hit reports (including, where available, hits, hits with attachments, and unique hits) to facilitate such meet and confer process. The Parties shall not delay implementing agreed upon searches and related production while seeking resolution on others.

C.    A Producing Party shall not have the obligation to search or produce from sources

6

of ESI that it identifies as not reasonably accessible because of undue burden or cost, and no such obligation will exist unless and until a showing of good cause is made by the Receiving Party that such searches and production are necessary. Accordingly, the sources set forth below are hereby deemed to not be reasonably accessible without undue burden and cost:

1. Residual, fragmented, damaged, permanently deleted, slack and unallocated data, if any;

2. Backup tapes or other long term storage media that were created strictly for the use as a data backup medium, if any;

3. Archives stored on computer servers, external hard drives, notebooks or personal computer hard drives that are created for disaster recovery purposes and not used as reference materials in the ordinary course of business, if any; and

4. Personal Social Media, if any.

ii. ESI of Limited Accessibility.

D. If a Producing Party contends that any additional responsive ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), that party shall timely identify such ESI with reasonable particularity and shall provide the Receiving Party with the basis for declining to produce such ESI.

E. The Parties may, but shall not be required to, use technology-assisted review tools or analytics (including but not limited to near duplicate analysis, continuous active learning, or predictive coding) to expedite their review. To the extent the Parties employ predictive coding for uses other than prioritization of documents being

reviewed or assistance identifying potentially privileged otherwise protected documents, the Parties shall disclose the tools and methodologies employed and agree to meet and confer as to these tools and methodologies. The Parties will notify each other in advance in writing if they intend to use any predictive coding or Technology Assisted Review (TAR), and will provide a summary of the software, techniques, or technology used and the workflow process for the same.

## V. PRIVILEGE LOGS.

A.    The Parties are to confer on the nature and scope of privilege logs for the case, including whether categories of information may be excluded from any logging requirements and whether alternatives to document-by-document logs can be exchanged. Such alternatives include, but are not limited to: (i) "categorical" privilege logs; (ii) "metadata only" privilege logs; (iii) provisions to permit parties to omit logging redactions when the basis of the redaction is identified in the document; (iv) production of the most inclusive and/or unique versions of e-mail strings which require redactions; and (v) logging an e-mail string as an individual document (without separately logging each included communication).

B.    A Producing Party shall produce such privilege logs within thirty (30) days of each document production. Absent agreement on alternative logging methods, at a minimum, the Privilege Log must contain the following:

1.    Beginning Bates Number;

2.    Ending Bates Number;

3.    Applicable Privilege;

4.    A short description justifying the privilege assertion;

5. Custodian (CUSTODIAN) (if applicable);

6. Subject Line (SUBJECT) (if applicable);

7. Sender (FROM) (if applicable);

8. Recipients (TO) (if applicable);

9. Carbon Copy Recipients (CC) (if applicable);

10. Blank Carbon Copy Recipients (BCC) (if applicable).

11. Name(s) of the Document author(s).

12. The date the Document was created, sent, and received.

13. The type or format of the Document (e.g. email, spreadsheet, PowerPoint, etc.).

Additional fields may be added. The parties may agree to exclusion of privilege fields. Furthermore, a Privilege Log may omit any field from the above-listed fields when such fields contain no information (i.e., if an applicable production has no BCC recipients, the BCC field may be omitted from the Privilege Log).

C. With respect to privileged information or attorney work product generated after the filing of the complaint, including activities undertaken in response to this litigation, that information is protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B), and the Parties are not required to include any such information in privilege logs.

D. Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B) and need not be logged.

9

## VI.    FORM OF PRODUCTION

A.    Hard Copy Information. The Parties will produce hard copy documents as Bates numbered, single page Group IV black and white TIFF images.

B.    Electronically Stored Information (ESI). The parties will produce ESI, whenever possible, in single page Group IV black and white TIFF images with accompanying metadata fields, with the exception of the following file types that, to the extent produced, shall be produced in their native file format with an accompanying placeholder image:

- Spreadsheets;
- Audio files;
- Photos (jpg and jpeg); and
- Video files.

C.    Bates Numbering and Confidentiality Designations. Each page of a produced image shall have a legible, unique Bates number that includes an alpha prefix along with a fixed number, i.e., ABC00000001, electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document. Each image page or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production. Each document produced in native format will have its confidentiality designation identified in the filename of the native file and indicated on its corresponding TIFF placeholder where reasonably feasible. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

D.    Global Deduplication. Global deduplication is not required. However, if any party undertakes such deduplication, removal of duplicate documents shall only be done on exact duplicate documents (based on MD5 or SHA-1 or SHA-2 hash values, at the family level).

Attachments shall not be eliminated as duplicates for purposes of production, unless the parent e-mail and all attachments are also duplicates. When applying global deduplication, metadata identifying all custodians in possession of each document that is removed as a duplicate must be provided in the ALLCUSTODIAN metadata field subject to any exceptions provided in this Protocol.

E.      Parent-Child Relationships. The Parties agree that if any part of a Document or its attachments is responsive, the entire Document and attachments will be produced, except any attachments that must be withheld or redacted on the basis of attorney-client privilege, work-product protection, or any other applicable privilege or immunity. The Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved. The child-document(s) should be consecutively produced immediately after the parent-document. Links within a document are not considered attachments. For the avoidance of doubt, any ESI referenced in documents (or any other ESI) by a hyperlink or other pointer shall not be construed to be in the same parent-child relationship solely by virtue of the hyperlink reference.   To the extent the Parties have previously produced bates stamped documents, they shall continue bates stamping consecutively from their last prior production.

F.      Documents containing redactions (e.g., pursuant to attorney-client privilege, work product protection or other applicable protections or immunities), except for those types of documents expressly set forth in VI.B (e.g. spreadsheets), will be produced in TIFF image format, along with metadataOCR reflecting redactions will be provided in text files. When a document is withheld for attorney-client privilege or work product, all metadata for that document is excluded from the metadata file (.DAT). Documents with embedded objects that are

11

withheld from production will be produced in TIFF image format. The Parties have no obligation to include redacted documents on any privilege log, unless the face of the redacted document does not provide all the information that otherwise would appear on the log.

G.    Document level text files will be named as the first Bates number of the respective document. Extracted text will be provided where it exists for non-redacted documents.

H.    PowerPoint files shall be produced in color. Documents produced in color shall be produced as single-page, JPG images with JPG compression and a high-quality setting as to not degrade the original image. A Party may with good cause request that certain additional individual documents be reproduced in native format or in color, and such request shall not unreasonably be denied.

I.    Page level Bates numbers will be branded on TIFF images and additional legends applied where applicable. To the extent produced, native files will be named as the Bates number.

J.    Load files will be provided in standard Concordance delimited format. A standard Opticon cross-reference file will be provided linking the Bates number to the TIFF images and the Concordance load files.

K.    The following fielded data and, where available, metadata will be produced.

| METADATA FIELDS | DESCRIPTION |
| --- | --- |
| PRODBEG | The production page label of the first page of the produced document |
| PRODEND | The production page label of the last page of the produced document |
| PRODBEGATTACH | The production page label of the first page of the parent document in a family of documents |
| PRODENDATTACH | The production page label of the last page of the last child document in a family of documents |

12

| METADATA FIELDS | DESCRIPTION |
| --- | --- |
| TITLE | Any value populated in the Subject field of the source file metadata or document properties (*e.g.*, subject line of email or calendar item). |
| DOCDATE | Document last modified date or email sent date |
| SENTDATE | The date the email or calendar item was sent |
| TIMESENT | The time the email or calendar item was sent |
| RECEIVEDATE | The date the email or calendar item was received |
| TIMERECEIVED | The time the email or calendar item was received |
| DOCTYPE | Document type |
| RECORD_TYPE | Email, Attach, Edoc, Hard Copy |
| FILE EXTENSION | File extension |
| FILE NAME | Name of electronic file |
| FILEPATH | Original file/path of the location where the item was located at the time of collection |
| PAGE COUNT | Number of pages |
| ALLCUSTODIANS | All custodians or other data sources associated with the document |
| AUTHOR | Creator of the document; any value populated in the Author field of the source file metadata or document properties. |
| LASTMODBY | Information in Last Saved by, Last Modified by, or Last Author in loose file documents or email attachments. |
| FROM | Sender of an email (name and SMTP email address) |
| TO | Recipient of an email (name and SMTP email address identifier) |
| COPIES | Copies of individual on an email (names and SMTP email addresses) |
| BCC | Blind copies (names and SMTP email addresses) |
| EMAIL SUBJECT | Subject of email |
| MESSAGEID | The unique message identifier generated by the source email or calendar system. |

13

| METADATA FIELDS | DESCRIPTION |
|---|---|
| SOURCEFILEPATH | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| MD5HASH OR SHA1 OR SHA2 HASH | Document unique ID used to de-duplicate documents |
| NATIVELINK | Link to native file |
| TEXTLINK | Link to searchable text file |
| CONFIDENTIALITY | Confidentiality designation |
| REDACTED | User-generated field that will indicate redactions. "X," "Y," "Yes," "True," are all acceptable indicators that the document is redacted. Otherwise, blank. |
| STARTDATE | Start date of chat/appointment. |
| STARTTIME | Start time of chat/appointment. |
| ENDDATE | End date of chat/appointment. |
| ENDTIME | End time of chat/appointment. |
| SIBLINGID | Group ID of text/message. |
| MOBILEORIGIN | Sent or received info. |

L.    Structured Data: Generally, relevant ESI stored in databases should be produced in a mutually agreeable data exchange format. The Parties shall meet and confer to address the production and production format of any responsive data contained in a database or other structured data source.

M.    Productions of ESI and Hard Copy documents shall be provided to the opposing party via Secure File Transfer Protocol ("SFTP"), unless a particular production is too large to be sent via SFTP, in which case individual productions may be provided to the opposing party on an encrypted CD, DVD, hard drive, or other electronic media.

N.    Time Zones.   Where technologically feasible without undue burden, the images for produced Documents, excluding Slack messages and text messages, shall show time stamps

in Eastern Standard Time (Coordinated Universal Time ("UTC")-05:00).   For Slack Messages and text messages, images files may alternatively show a different time zone as a result of how such messages are stored, collected, and/or processed.   For all Documents, metadata fields listed above shall be produced in Eastern Standard Time.   Additionally, for any Slack message or text message file produced with an image file containing time stamps that does not reflect Eastern Standard Time, separate metadata fields shall be provided for the time zone reflected on the Document image.

O.      The Parties, in the production of relevant Documents and ESI, may not use "email threading"-each email in a thread, chain, or conversation must be produced as a separate file. In other words, the Parties must not limit their productions to the most inclusive email containing the thread of emails.

IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.

Dated: April 21, 2026

| | |
|---|---|
| */s/ Jared A. Levine* | */s/ Brendan Moore* |
| Jared A. Levine (NY Bar No. 4897211)* | Brendan Moore |
| Daniella Schmidt (NY Bar No. 5186283)* | Andrew Abrams |
| Luke Taeschler (NY Bar No. 5308325)* | Aniello DeSimone |
| Emily Werkmann (NY Bar No. 5750229)* | **U.S. Department of Justice** |
| **CROWELL & MORING LLP** | P.O. Box 878 |
| 375 9th Ave, 44th Floor | Ben Franklin Station |
| New York, NY 10001 | Washington, DC 20044 |
| (212) 223-4000 | (202) 880-0330 |
| JLevine@crowell.com | brendan.t.moore@usdoj.gov |
| DSchmidt@crowell.com | andrew.c.abrams@usdoj.gov |
| LTaeschler@crowell.com | aniello.desimone@usdoj.gov |
| Ewerkmann@crowell.com | |
| | |
| Jerome A. Murphy (D. Md. Bar No. 27678) | Thomas Corcoran |
| **CROWELL & MORING LLP** | Nicole Nardone |
| 1001 Pennsylvania Avenue NW | **U.S. ATTORNEY'S OFFICE** |

15

Washington, DC 20004
(202) 624-2895
JMurphy@crowell.com

Ian Austin Rose (D. Md. Bar No. 22079)
Amelia Dagen (D.C. Bar No. 90004838)*
**AMICA CENTER FOR IMMIGRANT RIGHTS**
1025 Connecticut Ave. NW
Suite 701
Washington, DC 20036
(202) 788-2509
Austin.rose@amicacenter.org
Amelia@amicacenter.org


Sirine Shebaya (D. Md. Bar No. 07191)
Yulie Landan (CA Bar No. 348958)*
**NATIONAL IMMIGRATION PROJECT**
1763 Columbia Rd. NW
Suite 175 #896645
Washington, DC 20009
(202) 656-4788
sirine@nipnlg.org
yulie@nipnlg.org

*Pro bono counsel for Plaintiffs*


*\* Admitted Pro Hac Vice*

District of Maryland
26 S. Charles St. 4th Floor
Baltimore, MD 21201
(410) 209-4800
Thomas.corcoran@usdoj.gov
Nicole.nardone@usdoj.gov

*Counsel for Defendants*

16

**SO ORDERED:**

Dated:  April 21, 2026        /s/ _____

　　　　　　　　　　　　　　　　　　HON. JULIE R. RUBIN
　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT JUDGE