Crowell

**Jared Levine**
JLevine@crowell.com
(212) 803-4075 direct

Crowell & Moring LLP
2 Manhattan West
New York, NY 10001

July 15, 2026

**VIA ECF**
Hon. Julie R. Rubin
USDC, District of Maryland
101 West Lombard Street
Baltimore, MD 21201

**Re:** ***D.N.N. et al. v. Liggins et al., 1:25-cv-01613-JRR – Request for Discovery Conference***

Dear Judge Rubin:

Pursuant to § 4(a) of Your Honor's Discovery Order (ECF #174), Plaintiffs respectfully request a discovery conference with the Court. Despite multiple meet-and-confers, Defendants have not produced a single document responsive to Plaintiffs' April 16, 2026 document requests, no depositions have taken place, and Plaintiffs will be unable to make expert disclosures by the August 14, 2026 deadline. Defendants have categorically failed to collect and produce non-custodial documents and have impeded agreement on custodians and search terms for custodial documents. Despite Plaintiffs' best efforts to resolve these issues through email and multiple meetings, Court intervention is now necessary for this litigation to proceed.

## I. Defendants' Failure to Produce Non-Custodial Documents

**Defendants have failed to produce a single document in response to Plaintiffs' April 16, 2026 documents requests (RFPs 1 to 13).** Responsive non-custodial materials (*e.g.* compliance logs, food service records, bedding and hygiene records, medication logs, 911/sick call records, incident reports, and cleaning records) were due by June 15, 2026 and are not contingent on custodian or search term negotiations. Defendants have neither committed to a production timeline nor explained their failure to produce any documents.

**Defendants Have Produced Virtually no Documents in Response to Plaintiffs May 8, 2026 Request for Detention Data:** Shortly before the preliminary injunction hearing, Defendants revealed that their contractor, PPS, had destroyed cell head count sheets and maintained an undisclosed electronic database. The only data produced at that time was inexplicably converted to PDFs rather than native Excel and impermissibly redacted. When merits discovery opened, Plaintiffs requested supplemental production in usable format, but Defendants refused, insisting Plaintiffs serve a new RFP. Plaintiffs served RFP No. 14 on May 8, 2026 to avoid burdening the Court with this singular issue. To date, Defendants have produced only one month of data (January 2025) with no explanation for the piecemeal approach or timeline for full production.

**PPS Contractor Documents:** Defendants refuse to collect all responsive documents from their contractor, PPS. In their May 17, 2026 General Objections, Defendants objected to producing internal PPS communications and PPS policies the Government purportedly did not commission or know about. To the extent Defendants are contending that such PPS documents are beyond their custody and control, the Court has already rejected this argument during prior discovery

conferences. *See* Transcript of February 25, 2026 Status Conference at 8 (PPS is "obviously a contractor of the executive," and "by extension, your client . . . is responsible for preserving the documentary evidence that would be essential in this case."); *See* Transcript of February 27, 2026 Status Conference at 7 ("to the extent your client has access, possession, custody, control, et cetera of that information through its contractor, government shall produce them."). Furthermore, Defendants have demonstrated that they do in fact have access to PPS logs and other databases, as they have previously produced cell logs that are maintained by PPS and accessible by Defendants. Plaintiffs asked Defendants to withdraw their general objections but they have not done so.

Plaintiffs have repeatedly advised Defendants that they seek production of messages from a publicly reported WhatsApp group chat used by PPS contractors at the facility as a formal operational channel. Defendants contend these communications "may not be within Defendants' control" and that Plaintiffs must serve subpoenas to retrieve them. This position is untenable given the Court's prior ruling and the Performance Work Statement ("PWS") governing PPS's operations, providing that "[a]ll records and logs, required for operation and performance of work under this contract, shall be made available to ICE upon [] request," PWS § 5.2, and that "[a]ll deliverables (including all data and records) under the contract are the property of the U.S. Government and are considered federal records," PWS § 7.3.9. *See* Attachment A.

## II. Defendants' Failure to Produce Custodial Documents

Plaintiffs understand that day-to-day Hold Room operations are performed primarily by PPS contract officers, who report to the Supervisory Detention and Deportation Officers ("SDDOs") on shift, who in turn report to the Assistant Field Office Director ("AFOD") responsible for the Hold Rooms. From the outset of the meet-and-confer process, it has been apparent that Defendants failed to conduct adequate internal diligence to identify relevant custodians; across multiple conferences, Defendants were unable to confirm the names of all pertinent individuals or the dates during which they held their respective positions, and they remain unable or unwilling to do so for PPS officers.

**The Parties Have Agreed on Production for all Relevant AFODs But Defendants Have Prevented an Agreement on Search Terms**: Defendants' initial May 11 proposed custodian list included only a single AFOD whose tenure began in February 2026, meaning he possesses neither relevant documents nor knowledge concerning Hold Room conditions from January 2025 to January 2026. Defendants' counsel could not answer basic questions about other AFODs during the May 11, 2026 meet-and-confer and took several weeks to provide a full accounting of their names and tenures. Defendants ultimately disclosed six different AFODs assigned to the Hold Rooms over consecutive periods from January 2025 to present. The parties agreed that Defendants will collect and produce documents for all relevant AFODs, limited to each individual's tenure.

The parties, however, have not reached agreement on search terms. Although both sides proposed competing terms between May 11 and May 14, 2026, Defendants did not produce comparative hit reports until June 30, 2026. Those reports confirmed Defendants' terms were grossly underinclusive — zero hits for the preliminary injunction order and only 16 to 33 hits across core conditions categories including food, hygiene, clothing, and medication. Plaintiffs' terms yielded 58,662 hits. Recognizing that certain of Plaintiffs' strings were overbroad, Plaintiffs proposed a narrowed compromise set on July 2, 2026 that yielded 25,783 hits. On July 8, 2026, Plaintiffs

asked Defendants to provide a production timeline. Defendants have not responded.

**Defendants Have Refused to Designate SDDOs as Custodians**: Defendants' initial May 11, 2026 proposed custodian list identified two SDDOs. In a subsequent meet-and-confer, Defendants could not provide the tenure dates for these SDDOs or dates for other relevant SDDOs referenced in AFOD Guerrero's testimony during his December 2025 deposition. Reflecting a lack of diligent investigation, Defendants withdrew one of their proposed SDDOs after confirming she had never worked in the Hold Rooms. Despite Plaintiffs' repeated requests, Defendants initially refused to provide a complete list of SDDOs with tenure dates, insisting the information be sought through formal discovery. On June 29, 2026, however, Defendants produced a list disclosing eight different SDDOs assigned over different months throughout the discovery period. Defendants have repeatedly objected to designating any SDDOs as custodians, arguing without factual basis that their ESI is duplicative of AFOD communications. Because only one SDDO is on duty at any given time, each individual has unique knowledge and communications warranting custodian designation. At most, Defendants have proposed a single SDDO custodian, and opposed adding more SDDOs as custodians, despite the non-duplicative nature of their work.

**Defendants Have Impeded the Designation of PPS Custodians**: Defendants initially declined to identify any specific PPS employees as custodians and directed Plaintiffs to issue formal written discovery for the identities of these individuals. To avoid a dispute, Plaintiffs served Interrogatory No. 1 on June 26, 2026, seeking the identity, assignment dates, and contact information of PPS contractors assigned to the Hold Rooms. Defendants responded on July 1, 2026 with a list of 63 different PPS employees and general employment dates spanning 2019 to the present — without specifying which individuals worked at the Hold Rooms at what times during the discovery period. Defendants' July 1, 2026 response also failed to provide last-known addresses for individuals who no longer work for PPS. Plaintiffs identified this deficiency to Defendants, who acknowledged the response was incomplete and committed to providing a supplemental response specifying Hold Room assignments by July 13, 2026, but failed to do so. Plaintiffs thus still lack information needed to identify PPS custodians or serve subpoenas on pertinent former PPS employees.

**Defendants have Resisted Agreement on Custodians Based on the Default Ten-Custodian Cap:** Defendants have insisted that the default ten-custodian cap applies and will consider only narrow "proportionality-based" exceptions. But the default is plainly inapplicable given the extraordinary turnover among Defendants' employees. Six different AFODs held that role during the discovery period — meaning Plaintiffs must designate six individuals to obtain eighteen months of documents. The same is true for SDDOs: eight different individuals are needed just to cover the discovery period. Based on the information currently available to Plaintiffs, there appear to have been three different PPS supervisors, though it is unclear which—if any—of these supervisors were present at the Hold Rooms during the discovery period. Many of these custodians will have relevant tenures of only a month or two, meaning their volume of documents will be minimal. Defendants' proportionality objections are entirely abstract: they have not collected a single document from any SDDO or PPS custodian, have not run search terms, and therefore have no basis to quantify burden or justify leaving material time periods unrepresented in the record.

For the foregoing reasons, Plaintiffs respectfully submit that the Court's intervention is necessary to resolve these disputes and advance this litigation, and respectfully request that the Court schedule a discovery conference at its earliest convenience.

Respectfully Submitted,

*Jared A. Levine*