# Exhibit H

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

**DECLARATION OF CRESENCIO GOMEZ**

I, Cresencio Gomez, make this declaration based on my personal knowledge and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

**My Background**

1. I am Cresencio Gomez from El Salvador. I have a common-law wife, Ana, in the United States, and a stepdaughter who is in asylum proceedings. My stepdaughter has three daughters who are lawful permanent residents and U.S. citizens.

2. Before my detention, I worked as warehouse laborer at a fish warehouse. My responsibilities included cleaning and packaging seafood items. I was the sole provider and financially supported my common-law wife and stepdaughter and my stepdaughter's three children.

3. I have medical conditions, specifically diabetes, high blood pressure, and high cholesterol, which require me to take daily medications.

4. ICE arrested me on Saturday, April 4, 2026, in Brooklyn Park, Maryland. I was driving my car and then all of a sudden four cars blocked me and made me stop. An ICE officer asked me to lower my window and asked for my ID. I produced my driver's license and was told I could not be in this country before they handcuffed me and put me in their truck. ICE never showed me a warrant for my arrest. I was taken to the Baltimore ICE Field Office holding room and was detained for approximately four days. When ICE decided to detain me, they did not inform me of their decision or tell me where I would be held.

**Conditions at the Baltimore ICE Field Office Holding Rooms**

5. I was detained in the holding rooms at the Baltimore ICE Field Office from April 4, 2026 at approximately 12:00 pm to Tuesday, April 7, 2026, at approximately 8:00 pm, for approximately four days. The room I was held in was about 6'x8' in size and it was always very cold inside.

6. When I was detained and processed, I got paperwork in English about my rights to appeal and securing legal representation. That was the only paperwork I received during my time in the Baltimore hold rooms.

7. I was asked screening questions about my current health and medical history. I was asked if I take any medication. I was asked about my mental health. I was not asked if I require any specific diet or food. When the screening happened, the answers were written down, and I received a copy of the screening/intake form.

8. I did not receive any medications for my diabetes, high blood pressure, or high cholesterol during the first two days of detention. Finally, on the third day, I was asked to call my wife to bring me the medications to the detention center as I was informed the detention center did not have any medications.

9. In the holding room, I was held with only men. There were 10 men in the room I was in. Every now and then they would bring in two additional men, but they would be relocated to another holding room soon after.

10. Both the holding room and toilet were cleaned upon my arrival. ICE would transfer us to another room during the afternoons while they were cleaning the toilet and the holding room they kept us in.

11. I had access to hygiene items, such as soap, toilet paper, and a toothbrush and small toothpaste. These items were available in the holding cell, but we were only allowed one per person. If I requested any of these items, sometimes the officers would give them out and other times they would tell us that there were none available. We were allowed to keep these items with us in our holding room.

12. I was given a small mattress to sleep on from 8:00 pm to 5:00 am, at which time they would take the mattresses from us. I was never given a blanket. I was given the mattress every night. The holding room I was in was very cold all the time.

13. In the holding room, we had access to a water jug that contained drinking water. The water jug would last half a day and it was replaced with a full jug twice a day. When the water jug was empty and we informed the officer on duty, we were provided with a new jug full of drinking water.

14. We were given meals three times a day. In the mornings we were given a small packet of cookies, beans, and sliced plantains. For lunch, we were given a cup of noodles, and for dinner, we were given two slices of bread with a slice of ham. The quality of the food was very low quality as it was cold and did not taste good. I did not receive or observe anyone else receive special meals based on religion or medical needs. I lost about 11 pounds while detained at the Baltimore hold room.

15. I was given access to three phone calls to friends/family during my time at the Baltimore hold room. I did not observe that any detained people were given access to people like clergy or consulate staff.

16. I did not have an attorney when I was detained, but was able to speak to an attorney from Amica Center by telephone while I was detained at the Baltimore hold room. I was never visited by legal counsel at the Baltimore ICE detention center.

17. I am a native Spanish-speaking person. There was a Spanish speaking officer available during detention in the holding room, but I never received paperwork in Spanish.

18. I was transferred from the Baltimore ICE Field Office to Caroline Detention Facility in Virginia at approximately 8:00 pm on April 7, 2026.

Executed this 21st day of April 2026, in Caroline County, Virginia.

/s/ Cresencio Gomez____
Name: Cresencio Gomez

I, Louis Suazo, of Crowell & Moring LLP, affirm that my client, Cresencio Gomez, authorized me to sign this declaration on his behalf. Due to the urgency of the situation, I have not been able to visit Cresencio Gomez in person to obtain his signature. I spoke with Cresencio Gomez by phone, documented his statement, and drafted this declaration accordingly. At 1:20 pm on April 21, 2026, I read the declaration back to Cresencio Gomez word for word to confirm its accuracy, and Cresencio Gomez affirmed that it was accurate.
.

Executed this 21st day of April 2026, in Forney, Kaufman County, Texas.

/s/ Louis Suazo_______
Louis Suazo
Crowell & Moring LLP