# Exhibit J

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

**DECLARATION OF E.A.M.**

I, E.A.M., make this declaration based on my personal knowledge and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following is true and correct.

**My Background**

1. I am E.A.M. from Honduras. I have family here in the United States, including my wife, two sons, two stepdaughters, and one brother and two sisters. My sons and stepdaughters are U.S. Citizens.

2. Before my detention, I worked as a plumber in Maryland. My responsibilities included connecting and servicing sewer and water pipes in commercial and residential areas. I was the sole provider and financially supported all of my family members.

3. I have high blood pressure as a medical condition, which requires me taking medications.

4. ICE arrested me on May 27, 2026 at approximately 6:15 a.m. in Annapolis, Maryland. ICE never showed me a warrant for my arrest. After my arrest, I was taken to the Baltimore ICE Field Office Detention Center holding room and was processed for approximately 3 days. When ICE decided to detain me, they did not inform me of their decision or tell me where I would be held. I was given some documents in English during processing related to an upcoming detention hearing.

**Conditions at the Baltimore ICE Field Office Holding Rooms**

5. I was detained in the holding room at the Baltimore ICE Field Office from May 27, 2026 at approximately 7:30 am to May 30, 2026 until approximately 8:00 a.m., for approximately 3 days. The room I was in was 4'x20' in size.

6. When I was detained, I did get paperwork in English about an upcoming detention hearing but I did not get any paperwork about my rights during my time in the Baltimore hold rooms.

7. I was not asked screening questions about my current health and medical history. I was not asked if I take any medication. I was not asked about my mental health. I was not asked if I require any specific diets or food.

8. I didn't feel well at the holding room, but I was denied access to medications and had no access to necessary medical services, including addressing my high blood pressure. It wasn't until I was transferred to Louisiana that I received medical care for my high blood pressure.

9. In the holding room, I was held with only men. There were 20 people in the room I was in.

10. Both the holding room and toilet were unclean as a result of the continuous use by the other men in the holding room. Every morning, ICE would transfer us to another room while they were cleaning the holding room and toilet where we were being held in. Once they cleaned up the holding room, they would then transfer us back there.

11. I was given a small mattress to sleep in from 8:00 p.m. to 4:00 a.m. at which time they would take the mattresses from us. I was never given a regular blanket just a foil, Mylar one. The holding room I was in was very cold.

12. I had access to water which was provided in a cooler. If water ran out and we asked for more, it was provided to us.

13. We were given meals three times a day. In the mornings we were given two slices of bread with a slice of turkey. For lunch, we were given a cup of noodles, and for dinner, we were given two slices of bread with a slice of turkey. The quality of the food was very low and it was served cold and did not taste well. I did not receive or observe anyone else receive special meals based on religion or medical needs. I lost about 5 pounds while detained at the Baltimore holding room.

14. During my detention at the Baltimore ICE Detention Center Holding Room, I was given access to one phone call to my family. I did not observe access given to other detained people of someone like clergy or consulate staff.

15. I did not have an attorney and was never able to speak to one while I was detained at the Baltimore holding room. I was never visited by legal counsel at the Baltimore Holding Room ICE detention center.

16. I am a native Spanish-speaking person, and there was never a Spanish speaking interpreter available during my detention in the Baltimore holding room. I only received paperwork in English related to an upcoming detention hearing and was never provided with any paperwork related to my rights or my right for legal counsel.

17. I never received or was subject to mistreatment, either physical or verbal, while at the Baltimore ICE Detention Center holding room.

18. I was transferred from the Baltimore ICE Field Office to LaSalle Correctional Center in Louisiana at approximately 8:00 a.m. May 30, 2026. I was never informed of the transfer by the ICE officials prior to same.

Executed this 11th day of August 2026, in Jena, Louisiana.

/s/ E.A.M.

Name: E.A.M.

I, Louis Suazo, of Crowell & Moring LLP, affirm that my client, E.A.M., authorized me to sign this declaration on his behalf. Due to the urgency of the situation, I have not been able to visit E.A.M. in person to obtain his signature. I spoke with E.A.M. by phone, documented his statement, and drafted this declaration accordingly. At 12:20 a.m. EST on August 11, 2026, I read the declaration back to E.A.M. word for word to confirm its accuracy, and E.A.M. affirmed that it was accurate.

.

Executed this 11th day of August 2026, in Forney, Texas.

/s/ Louis Suazo________
Louis Suazo
Crowell & Moring LLP