**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**NORTHERN DIVISION**

D.N.N. *et al.,*

*Plaintiffs*,

v.

VERNON LIGGINS, et al.

*Defendants*.

Case No. 1:25-cv-1613-JRR

**PLAINTIFFS' BRIEF IN SUPPORT OF APPOINTMENT OF A SPECIAL MASTER**

Plaintiffs respectfully submit this brief in support of appointing a Special Master to monitor Defendants' compliance with the Court's March 6, 2026 Preliminary Injunction Order (ECF No. 171, the "PI Order") and September 28, 2026 Enforcement Order (ECF No. 197). A Special Master is necessary to (1) safeguard detained individuals' constitutional and statutory rights at the Baltimore Hold Rooms and (2) conserve judicial resources that would otherwise be consumed by direct compliance monitoring and resolution of ongoing disputes between the Parties. A Special Master can independently verify Defendants' representations, assess concerns raised by class counsel, and resolve compliance disputes promptly—without requiring repeated intervention by this Court.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 53(a)(1)(C) authorizes appointment of a Special Master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge." Appointing a master to oversee institutional-reform injunctions is well established. *See, e.g., Brown* v. *Plata,* 563 U.S. 493, 511 (2011) (affirming special master to oversee prison conditions); *Ruiz* v. *Estelle*, 679 F.2d 1115, 1161–62 (5th Cir. 1982) (same). Appointment is committed to the district court's sound discretion and is common where the record reflects persistent noncompliance with a detention conditions injunction. *See Inmates of Occoquan* v. *Barry*, 844 F.2d 828, 841 (D.C. Cir. 1988). Rule 53 further requires that the appointment order specify the master's duties, powers, compensation, and procedures for party review of the master's orders or reports. Fed. R. Civ. P. 53(b)(2), (c)(1). These procedural mechanics are well-suited to this case and present no obstacle to appointment.

## II. ARGUMENT

The PI Order imposed clear and concrete obligations on Defendants to protect detained noncitizens at the Baltimore Hold Rooms. Despite that binding order, Defendants repeatedly failed

to comply. Following a September 17, 2026 evidentiary hearing, the Court granted Plaintiffs' Motion to Enforce (ECF No. 197) on September 28, 2026, finding "clear and convincing evidence that the Government operated the Baltimore Hold Rooms in violation of the Court's March 6th order during the period March 7 to June 30 in multiple aspects to include cell capacity, medical screening, provision of over-the-counter medication, provision of prescription medication, and provision of a notice of rights; and that its SOP [Standard Operating Procedures] fails entirely to reflect actual practice, which places the Government's certification in dubious regard by the Court." Tr. 51:2–10.

The Court's findings were unsparing: Defendants "violated the Court-ordered maximum cell capacity as a regular feature of its operations. Not occasionally. Regularly. And materially." Tr. 19:15–17. The toilet-exclusion mandate of the PI Order "was never done and it was never followed. Ever." Tr. 29:11–12. The Court characterized Defendants' own records as "unreliable" and "sloppy," Tr. 9:3–4, and concluded that "[f]rom day 1, the Government materially and continually violated a cornerstone of the Court's order, a critical directive of the Court, with zero explanation," calling Defendants' compliance record "a spectacular failure." Tr. 36:15–23. In sum, the Court found that "[t]he Government's violations of the Court's order are a feature, not a bug, of the conditions of confinement at the Baltimore Hold Rooms." Tr. 51:17–19.

A pattern of systemic noncompliance with an active preliminary injunction is precisely the condition Rule 53(a)(1)(C) was designed to address. Where a court has already held an evidentiary hearing to enforce its own order—and must still rely on biweekly sworn declarations of uncertain reliability to assess ongoing compliance—self-monitoring is inadequate. While Plaintiffs welcome the reporting obligation imposed by the Court's September 28, 2026 Enforcement Order, after-the-fact declarations with no independent verification cannot provide the real-time oversight necessary

to protect detained individuals whose liberty and safety are measured in hours and days, not weeks.

Assessing compliance with these obligations is not a legal question amenable to resolution on briefing alone—it requires on-the-ground expertise, access to facility records and logs, and the ability to reconcile government-reported data against observed conditions. These are precisely the circumstances that courts have recognized warrant appointment of a master under Rule 53. A Special Master can perform these functions efficiently and report to the Court at intervals sufficient to detect and remediate violations before detained individuals suffer serious harm.

The record further demonstrates that, absent independent oversight, Defendants will continue to resist Plaintiffs' counsel's efforts to obtain the information necessary to investigate compliance concerns and test the veracity of Defendants' representations. This pattern is already well established in the record. On July 2, 2026, Plaintiffs' counsel notified Defendants of reported failures to provide the required statement of rights and access to medication and requested confirmation of compliance by July 9. *See* ECF No. 197-1, Ex. D. Defendants responded with a single conclusory sentence—"Defendants are in compliance with the Preliminary Injunction"—without providing any supporting evidence or addressing the systemic nature of the reported violations. *Id*. On July 30, 2026, Plaintiffs' counsel sent a detailed letter documenting pervasive overcrowding violations; Defendants' August 11 response offered only vague methodological objections without denying the violations or producing any contrary data. *Id*., Exs. B, C.

A Special Master vested with independent authority to access facility records, interview staff, and conduct site visits eliminates Defendants' ability to control the flow of compliance information. Equally important, a Special Master provides a mechanism for the prompt resolution of compliance disputes between the Parties without requiring this Court to adjudicate each disagreement through full briefing and hearing, thereby conserving judicial resources that would

otherwise be consumed by the recurring enforcement proceedings this case has already required.

The Court's September 28, 2026 Order placed the parties "on notice that further violation of the PI Order, or violation of this order, may be subject to a *sua sponte* show cause order and associated contempt proceeding." That warning is apt, but its deterrent force depends on the Court receiving timely, reliable, and independently verified information about conditions at the Baltimore Hold Rooms. Without a Special Master, by the time a violation surfaces through biweekly government declarations, detained individuals will already have suffered the very harms the PI Order was designed to prevent.

An independent master eliminates this gap. Armed with authority to conduct unannounced site visits and review facility records in real time, a Special Master provides the early-warning function essential to making the PI Order's protections meaningful in practice. The alternative—waiting for biweekly declarations, then multi-week briefing on noncompliance, then scheduling yet another evidentiary hearing—is precisely the cycle of reactive enforcement that this Court's September 28 Order was designed to interrupt.

## III. PROPOSED SCOPE OF THE MASTER'S AUTHORITY

Plaintiffs respectfully propose that the Court's appointment order vest the Special Master with authority to:

1. Conduct unannounced site visits to all Baltimore Hold Room facilities subject to the PI Order, at the Master's discretion;
2. Review and audit booking logs, cell-count records, medical screening records, prescription access logs, over-the-counter medication logs, rights-notice documentation, cleaning logs, and any other records bearing on compliance with the PI Order;
3. Interview facility staff, medical personnel, and, with appropriate consent and privacy protections, detained individuals;
4. Retain experts or consultants in correctional health, sanitation, and facility operations, subject to reasonable cost controls;

5. Issue interim directives to Defendants regarding compliance deficiencies, subject to the Court's review on seven days' notice;

6. File reports with the Court on a schedule the Court deems appropriate; and

7. Communicate *ex parte* with the Court on urgent matters requiring immediate attention, with notice to counsel as soon as practicable.

Plaintiffs propose that Defendants bear the master's compensation costs, given that the appointment is necessitated by Defendants' own compliance failures. *See* Fed. R. Civ. P. 53(g)(3) ("A court may order the parties to pay the master's fees and expenses in the proportion it determines to be just.").

## IV. PROPOSED CANDIDATES FOR APPOINTMENT

Should the Court determine to exercise its authority under Rule 53, Plaintiffs respectfully suggest the following candidates for the Court's consideration: Hon. Paul W. Grimm, Hon. George J. Hazel, and Brian Frosh.[1] Plaintiffs can suggest additional candidates if helpful to the Court.

## V. CONCLUSION

The Defendants' repeated noncompliance with the PI Order has exposed vulnerable detained individuals to ongoing constitutional deprivations and has demonstrated that self-reporting is an insufficient safeguard. Plaintiffs respectfully urge the Court to exercise its Rule 53 authority and appoint a qualified, independent master to monitor compliance with the PI Order and Enforcement Order at the Baltimore Hold Rooms.

[1] https://www.jamsadr.com/neutrals/grimm; https://www.gibsondunn.com/lawyer/hazel-george-j/; https://stateimpactcenter.org/about/center-staff/brian-frosh.

Respectfully submitted,

Dated: October 13, 2026

*/s/ Jared A. Levine*
Jared A. Levine (NY Bar No. 4897211)*
Daniella A. Schmidt (NY Bar No. 5186283)*
**CROWELL & MORING LLP**
375 9th Ave, 44th Floor
New York, NY 10001
(212) 223-4000
JLevine@crowell.com
DSchmidt@crowell.com

Jerome A. Murphy (D. Md. Bar No. 27678)
Kenneth Dintzer (DC Bar No. 90031556)*
**CROWELL & MORING LLP**
1001 Pennsylvania Avenue NW
Washington, DC 20004
(202) 624-2895
JMurphy@crowell.com
KDintzer@crowell.com

Ian Austin Rose (D. Md. Bar No. 22079)
Amelia Dagen (D. Md. Bar No. 32279)
**AMICA CENTER FOR IMMIGRANT RIGHTS**
1025 Connecticut Ave. NW
Suite 701
Washington, DC 20036
(202) 788-2509
Austin.rose@amicacenter.org
Amelia@amicacenter.org

Sirine Shebaya (D. Md. Bar No. 07191)
Yulie Landan (CA Bar No. 348958)*
**NATIONAL IMMIGRATION PROJECT**
1763 Columbia Rd. NW
Suite 175 #896645
Washington, DC 20009
(202) 656-4788
sirine@nipnlg.org
yulie@nipnlg.org

*Pro bono counsel for Plaintiffs*

* *Admitted Pro Hac Vice*