**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

D.N.N. and V.R.G., *on behalf themselves and all others similarlv situated*,

*Plaintiffs*,

v.

Vernon Liggins *as Field Office Director of the Immigration and Customs Enforcement, Enforcement and Removal Operations Baltimore Field Office,* et al.,

*Defendants*.

**DEFENDANTS' OPPOSITION TO APPOINTMENT OF A SPECIAL MASTER UNDER F.R.C.P. 53(a)(1)(C)**

Civil Action No.: 1:25-cv-01613

**DEFENDANTS' OPPOSITION TO APPOINTMENT OF A SPECIAL MASTER UNDER F.R.C.P. 53(a)(1)(C)**

## I. INTRODUCTION

This Court requested briefing on whether the appointment of a master under Federal Rule of Civil Procedure 53(a)(1)(C) is warranted to monitor Defendants' compliance with the March 6, 2026, Preliminary Injunction. Such an appointment is neither necessary nor appropriate under Rule 53, which authorizes masters in circumstances presenting exceptional conditions. The present record, even viewed through the Court's recent enforcement ruling, does not establish the intractable factual complexity to justify placing ongoing federal agency operations under third-party monitoring.

## II. LEGAL STANDARD FOR APPOINTMENT OF A SPECIAL MASTER

Rule 53(a)(1)(C) permits appointment of a master to "address pretrial and posttrial matters that cannot be effectively and timely addressed by an available district judge or magistrate judge."

Fed. R. Civ. P. 53(a)(1). This standard is intentionally narrow. Courts routinely hold that a master is not warranted absent extraordinary complexity, unmanageable evidentiary burdens, or where judicial resources are demonstrably insufficient. *La. Buy v. Howes Leather Co.*, 352 U.S. 249, 259 (1957) (discussion of "exceptional circumstance[s] as to warrant a reference to a master") and *Glover v. Wells Fargo Home Mortg.* 629 Fed. Appx. 331, 338 (3rd Cir. 2015) (appointment of master to aid in "managing complex litigation" that "could not be effectively or timely addressed by the Magistrate Judge or District Judge," due to "the numerous disputes and the vitriol with which they were presented," including, *inter alia*, one party's filing of twenty-one discovery related motions.)

Where appointment of a master is "the exception and not the rule" the Court must remain mindful that "[d]irect judicial performance of judicial functions may be particularly important in cases that involve important public issues or many parties" while also considering that "[a]t the extreme, a broad delegation of pretrial responsibility as well as a delegation of trial responsibilities can run afoul of Article III." See Fed. R. Civ. P. 53 (Advisory Committee Notes to 2003 amendment).

Here, the Court has already exercised its "inherent power to enforce compliance with [its] lawful orders" through tailored reporting obligations without identifying any factual or legal matter exceeding the Court's capacity to manage without a master.

## III. THE COURT'S EXISTING REPORTING FRAMEWORK DOES NOT NECESSITATE A SPECIAL MASTER

The Court has ordered Defendants to produce biweekly sworn declarations providing detailed information on maximum cell counts for each hold room; timing and provision of prescription and OTC medication; completion of medical screenings; and provision of notice-of-rights forms.

These obligations imposed on Defendants are both targeted and robust, directly addressing the compliance gaps the Court identified. The reporting requirements permit the Court to intervene promptly if it deems necessary. Master appointments are unnecessary when less-intrusive tools, such as reporting and contempt powers are adequate. See *Hutto v. Finney*, 437 U.S. 678, 683-687 (1978).

Ultimately, a special master is not necessary as the Court is already exercising the tools it has at its disposal to supervise compliance of its preliminary injunction order.

## IV. A SPECIAL MASTER WOULD UNDERMINE AGENCY DISCRETION AND BURDEN OPERATIONS

The Court emphasized that any master's role would be limited to *monitoring* rather than supervising "the mode or manner of compliance." *DNN v. Liggins*-Oral Ruling on Plaintiffs' motion to enforce preliminary injunction ("Tr.") at 53. But in practice, inserting a third-party monitor into the daily functioning of a high-volume federal intake facility risks: interfering with operational decision-making that must adapt to fluctuating arrest volumes and security needs; imposing reporting redundancies on ICE personnel already tasked with implementing revised SOPs; and generating parallel factual records inconsistent with the evidentiary standards the Court deemed necessary in its enforcement ruling.

The Court ordered data preservation and reporting protocol that Defendants have now implemented creates the very record structure the Court found lacking, making a master unnecessary. Further, the Supreme Court has repeatedly warned against remedies that improperly displace executive discretion or place day-to-day administration of federal programs under judicially appointed officers. See *Bell v. Wolfish*, 441 U.S. 520, 547 (1979), *Rufo v. Inmates of Suffolk Cnty. Jail*, 502 U.S. 367, 392 (1992) and *Lewis v. Casey*, 518 U.S. 343, 362-363 (1996).

Even limited "monitoring" carries potential operational consequences. ICE's intake processes involve rapidly changing detainee volumes, medical judgments, security needs, and coordination with hospitals and transport teams. A third-party monitor embedded in these processes would risk interfering with case-by-case operational decisions, slowing intake and transfer processes, and generating competing factual records that conflict with the sworn framework the Court now requires.

The Court itself recognized this distinction by specifying that any master would "not… oversee or supervise the mode or manner of compliance." Tr. At 53. But because monitoring compliance inherently touches daily operations, the risk of overreach is substantial, and unnecessary given existing reporting tools.

## V. A SPECIAL MASTER WILL NOT FACILITATE EFFECTIVE OR EFFICIENT COMPLIANCE WITH THE COURT'S ORDER

As noted above, situations in which courts appoint special masters typically involve structural constitutional violations persisting over long durations, voluminous or technically complex evidence, or administrative systems so fundamentally deficient the court cannot evaluate compliance without an external agent. *See* supra, section II.

By contrast, this case involves discrete compliance metrics such as cell counts, medication timing, medical screenings, and document provision. The Court itself extensively analyzed these issues using the parties' expert submissions, detainee declarations, and ICE records. There is nothing inherently complex about continued monitoring under the Court's new reporting protocol, and nothing beyond what the Court can itself "effectively and timely address" under Rule 53(a)(1)(C).

Moreover, the Court found that noncompliance was largely attributable to recordkeeping deficiencies, not willful obstruction or systemic impossibility. Those deficiencies are already being

addressed by the Court's order requiring standardized, verifiable reporting. A master is not needed to cure issues the Court has already remedied through less intrusive means. Further, a master would impose financial and administrative burdens on federal operations while providing little incremental benefit to the Court. Given these considerations, a master would not enhance enforceability, but rather risk unnecessary expense and operational friction.

## VI. CONCLUSION

Because the requisite conditions FRCP 53(a)(1)(C) sets forth for appointment of a special master are not present/applicable here; the Court's enhanced reporting requirements provide a mechanism for ongoing compliance oversight; and a special master would add cost and complexity without corresponding enforcement value, the Court should decline to appoint a master. Defendants respectfully submit that the appropriate course is to allow the new reporting framework to operate, evaluate compliance based on sworn submissions, and consider any more intrusive remedies only if future evidence demonstrates the Government cannot meet its obligations without them.

Dated: October 13, 2026

Respectfully submitted,

BRETT A. SCHUMATE
Assistant Attorney General

WILLIAM C. SILVIS
Assistant Director

*s/Andrew Abrams* ___
ANDREW ABRAMS
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
202.305.9107
Attorney for Defendants